IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 21-cr-000116 |
| | ) | |
| WILLIAM MCCALL CALHOUN, JR | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MOTION FOR RECONSIDERATION OF DETENTION**
_____

COMES NOW, Defendant, William McCall Calhoun, by and through undersigned counsel, and respectfully requests that the Court reconsider the previous decision granting the government's Motion to Detain (5:21-mj-00008-CHW, ECF Doc. 2). In support thereof, he shows as follows:

**Procedural History**

A complaint, affidavit in support, arrest warrant and Motion for Detention were filed against Mr. Calhoun on January 15, 2021 in the U.S. District Court for the Middle District of Georgia (Macon). Mr. Calhoun was arrested that same day, and he made his first appearance before the U.S. District Court for the Middle District of Georgia (Macon). A detention hearing was held on January 21, 2021 and an order was issued that same day granting the government's motion for detention and ordering Mr. Calhoun to be detained pending final resolution of the case (5:21-mj-00008-CHW, ECF

Doc. 10). An order of transfer/commitment to another district was subsequently entered on January 25, 2021.

Mr. Calhoun remained detained in Georgia until he was transferred to Oklahoma on January 31, 2021. On February 8, 2021 Mr. Calhoun was then transferred to Northern Neck Regional Jail in Warsaw, VA. Then on February 10, 2021 Mr. Calhoun was transferred to Washington, DC, where he is currently detained at the Correctional Treatment Facility. As of this filing, Mr. Calhoun has been detained for almost 2 months.

**Jurisdiction to Review and Reconsider the Previous Detention Decision**

Initially, 18 U.S.C. § 3141 establishes who has authority to decide if a criminal defendant in federal court should be taken into custody, or not, as the case is prosecuted.  For a pretrial defendant, § 3141(a) establishes that a judicial officer who has authority to order an arrest pursuant to 18 U.S.C. § 3041 has authority to determine whether an arrested defendant should be detained, or not, during the prosecution of the case.

There is a clearly defined procedural mechanism through which this court can reconsider a previous decision to detain, and instead order the release of Mr. Calhoun. 18 U.S.C. § 3142(i) states that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another

appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." It would be Mr. Calhoun's burden to show a compelling reason.

**Mr. Calhoun's Medical History Places Him at Greater Risk of COVID-19**

Mr. Calhoun has prostate cancer. *See* Exhibit A – Emory Medical Center Records. He also has high blood pressure and requires daily medication, which he has not been given while incarcerated. These health conditions place Mr. Calhoun at a much greater risk of contracting COVID-19. Additionally, and most importantly, Mr. Calhoun has scheduled cancer treatment at The Emory Clinic in Atlanta, Georgia on April 12, 2021. Mr. Calhoun has been seen and treated at The Emory Clinic since the diagnosis of his cancer in 2019. His life is dependent upon his continued cancer treatments.

Mr. Calhoun is currently being held in a cell with black mold, and he has not been given his prescribed blood pressure medication since his transfer from Georgia. Due to Mr. Calhoun's previous health conditions unrelated in any way to this case, is both at greater risk of catching COVID-19, suffering more severe complications should he do so, and becoming a medical liability to the detention center due to his prostate cancer.

Federal courts have long recognized that there is no greater necessity than keeping a defendant alive, no matter the charge. *United States v. Scarpa*, 815 F. Supp. 88

(E.D. N.Y. 1993) (pretrial defendant with AIDS facing murder charges released on bail because of the "unacceptably high risk of infection and death on a daily basis inside the MCC"); *United States v. Adams*, No. 6:19-mj-00087-MK, 2019 WL 3037042 (D. Or. July 10, 2019) (defendant charged with violation of the Mann Act and possession of child pornography and suffering from diabetes, heart conditions and open sores released on home detention because of his medical conditions); *United States v. Johnston*, No. 17-00046 (RMM) 2017 WL 4277140 (D.D.C. Sept. 27, 2017) (defendant charged with violation of the Mann Act and in need of colon surgery released to custody of his wife for 21 days); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (badly wounded defendant released to custody of his relatives). Furthermore, Mr. Calhoun's continued detention is a violation of his due process right to be free of deliberate indifference to his medical needs.

Mr. Calhoun's due process rights as a pretrial detainee are at least as great as those of convicted persons, whose rights are governed by the Eighth Amendment. Given his underlying health conditions, Mr. Calhoun's ongoing detention during the current pandemic creates a threat "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 33, 36 (1993) (The Amendment, as we have said, requires that inmates be furnished with the basic human needs, one of which is "reasonable safety." . . . . It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition

in their prison on the ground that nothing yet had happened to them.). The release of Mr. Calhoun is the only way to ensure his safety.

**Mr. Calhoun is not a Flight Risk**

Previously the government argues that Mr. Calhoun was a flight risk. Mr. Calhoun is not a flight risk. Mr. Calhoun is a Georgia license attorney, in good standing, with a private practice and caseload of client's that are actively being represented by him and relying upon him. *See* Exhibit B – W. McCall Calhoun, Jr. Georgia State Bar Profile. Many of Mr. Calhoun's clients have requested continuances of their cases with the hope that Mr. Calhoun will be granted bond and will be able to continue to represent them. *See* Exhibit C – List of Active Clients and Cases (permission given by clients).

Mr. Calhoun has substantial ties to the community, along with an extensive family in Georgia, colleagues, and long-standing friends. He owns a home in Americus, GA, as well as an office for his law practice. He has been a licensed attorney for over 30 years and is well-respected in his community and among the Courts in which he practices. He has many people supporting him and hoping for his release. *See* Exhibit D – Affidavits from Family, Colleagues, Friends & Clients.

Mr. Calhoun's health, medical and cancer treatment is dependent upon his continued health insurance coverage. His health insurance plan premium is paid for

through his earnings as a practicing attorney with a solo private practice. His home, office, and all other financial obligations are dependent upon him being able to return to work and represent his clients. Without his income, his financial livelihood, along with his medical care and cancer treatment, will be in shambles.

**Mr. Calhoun is not a Danger to the Community**

Previously the government argued that Mr. Calhoun is a danger to the community. This is not true. Mr. Calhoun is not a danger to the community. Mr. Calhoun has no prior criminal history. He is an active, charitable and helpful member of his community. As can be read from the affidavits provided in Exhibit D, he is well thought of and respected. He has never done harm to anyone, and never shown or had violent tendencies.

All of Mr. Calhoun's firearms have been confiscated. There are no more at his home, office, or his sister's homes. *See* Exhibit E – FBI Receipt of Property. His home, his office and his sister Anne Davis's home were subjected to extensive search warrants. Additionally, when Mr. Calhoun was in Washington, DC on January 6, 2021, he did not have any firearms or weapons with him. He knew that it was illegal to be carrying a weapon of any type onto the Capital grounds, and he followed the law and did not bring anything of that nature with him.

**Proposed Release Plan**

Since Mr. Calhoun's arrest he has received numerous hateful and threatening phone calls, voicemails emails, and letters. *See* Exhibit F – Affidavits and Evidence of Threats & Harassment. Many of these calls, emails and letters have come directly to his home or office. His address has been highly publicized in several news and media forums and is very accessible. He would prefer to be released and allowed to live at either of his sister's, Mary Calhoun's, two residences:

1. 2949 Malvern Hill Drive, Macon, GA 31204

2. Andersonville, GA – Sumter County (Mr. Calhoun's county of residence and where he practices and has clients.)

Neither of Ms. Mary Calhoun's residences have firearms or any other weapon.

Upon inquiry, it is undersigned counsel's understanding that the Middle District of Georgia US Probation office (Albany, GA division) would be able, and well equipped, to handle Mr. Calhoun's pretrial supervision, including facilitating GPS monitoring if the Court were to require.

Mr. Calhoun is amenable to home supervision, but respectfully asks the Court to allow him to go to and from work and medical appointments.

**Memorandum of Law and Argument**

Defendant submits that the previous order of detention should be vacated and

that this Court should set conditions of release in this case. The Bail Reform Act ("the Act"), 18 U.S.C. §§ 3142, *et.seq.*, creates four bail options: release on personal recognizance, release on conditions, temporary detention and pretrial detention. The Act mandates pretrial release on personal recognizance or unsecured bond ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(b)) unless the court determines that release will not reasonably assure the person's appearance or will endanger the safety of any person or the community. When personal recognizance or an unsecured bond is determined to be inadequate to guarantee appearance or safety, the Act still mandates release ("shall order the pretrial release. . . .", 18 U.S.C. § 3142(c)) subject to specified conditions. The conditions must be the least restrictive conditions necessary to reasonably assure the defendant's appearance and the community's safety. *United States v. Fortna*, 769 F.2d 243 (5th Cir. 1985), cert. denied, 479 U.S. 950 (1986).

Congress enacted the Bail Reform Act of 1984 to give courts the authority to consider factors such as the likelihood of flight and community safety in making release determinations. In passing the Act, however, Congress did not intend to authorize the wholesale pretrial incarceration of all persons accused of criminal offenses. Indeed, the Act expressly provides that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S. Code Section 3142(j). To the contrary, the passage of the pretrial detention provision of the 1984 Act bespeaks a recognition that "there is a small but identifiable group of particularly dangerous [persons] as to

whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group ... that the courts must be given the power to deny release pending trial." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted

in U.S. Code Cong. & Ad. News 3189 (emphasis supplied). Notwithstanding the charge at issue, defendant should not be considered to be within that limited group. It is apparent from the Act's legislative history, as well as the statutorily mandated consideration of the least restrictive alternatives to detention, that Congress contemplated pretrial detention of only a small percentage of the individuals awaiting trial.

> The legislative history of the Act also stresses that '[t]he decision to provide for pretrial detention is in no way a derogation of the importance of the [accused's] interest in remaining at liberty prior to trial. It is anticipated that [pretrial release] will continue to be appropriate for the majority of federal defendants." Id. at 7, 12, reprinted in, 1984 U.S. Code Cong. & Ad. News 3189. Mr. Calhoun is among that majority for whom a combination of conditions short of detention without bond can be fashioned to "reasonably assure" the safety of the community and his appearance for trial. *United States v. Orta*, 760 F.2d 887 (8th Cir. 1985). See also 18 U.S.C. § 3142(c)(1)(B) (judicial officer shall order the pretrial release of an accused "subject to the least restrictive further condition or combination of conditions, that such judicial officer shall

determines will reasonably assure the appearance of the person as required and the safety of any other person and the community") (emphasis supplied). Courts have recognized that, consistent with the intent expressed in the 1984 Act's legislative history, the statutory scheme of Section 3142 continues to favor release over pretrial detention. *See United States v. Orta*, 760 F.2d 887, 890-892 (8th Cir. 1985); *United States v. Miller*, 625 F. Supp. 513, 516-17 (D.Kan. 1985). In the instant case defendant's continued detention without bond is not the least restrictive alternative case; there are conditions available that will assure the community's safety and his return for future court dates. *See U.S. v. Xulam*, 84 F.3d 441 (D.C. Cir. 1996).

Title 18 U.S.C. Section 3142(e) provides for pretrial detention if the government is able to show that no condition of release will reasonably assure the accused's appearance as required and the safety of any other person or the community. *See United States v. Salerno*, 481 U.S. 739, 741 (1987). Here there are conditions available which will reasonably assure Mr. Calhoun's presence and safety of the community. There is no reason to believe that a fifty-seven-year-old licensed attorney, who is gainfully employed and actively working to decrease violence in his community as a criminal defense attorney, with no history of violence nor flight, must be preventively detained because his release poses an unreasonable risk of flight or danger to the community.

Notwithstanding that the defendant has been indicted he is still presumed innocent. The defendant's ability to prepare a defense will be hampered by his pretrial

incarceration.

## Conclusion

WHEREFORE for the foregoing reasons, and any others which may appear at a full hearing on this matter, and any others this Court deems just and proper, defendant through counsel, respectfully requests consideration of this motion, and that he be released on personal recognizance, with conditions appropriate to ensure his appearance when required.  If that request is denied defendant requests as an alternative that he be placed into the High Intensive Supervision Program of the Pretrial Services Agency conditioned on reasonable conditions including but not limited to work release and curfew.

Dated: March 3, 2021

Respectfully Submitted,

    /s/ *Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 760-7612
Fax: (540) 572-4272
Email: jessica@sslawgroupva.com

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 21-cr-000116 |
| ) | |
| WILLIAM MCCALL CALHOUN, JR ) | |
| ) | |
| Defendant. ) | |

_____

**MOTION FOR RECONSIDERATION OF DETENTION – EXHIBIT LIST**
_____

1. Exhibit A – Emory Medical Center Records

2. Exhibit B – W. McCall Calhoun, Jr. Georgia State Bar Profile

3. Exhibit C – List of Active Clients and Cases

4. Exhibit D – Affidavits from Family, Colleagues, Friends & Clients

5. Exhibit E – FBI Receipt of Property

6. Exhibit F – Affidavits and Evidence of Threats & Harassment

## CERTIFICATE OF SERVICE

I hereby CERTIFY that on this, the 3rd day of March 2021, a true copy of the foregoing Motion for Reconsideration of Detention, and Exhibits, was emailed to:

Mr. Jonathan Hopkins, Courtroom Deputy
Email: Jonathan_Hopkins@dcd.uscourts.gov

Chambers for the Honorable Judge Dabney L. Friedrich
Email: Lauren.Goddard@usdoj.gov

Assistant U.S. Attorney Adam Alexander
Email: Adam.Alexander@usdoj.gov

Until such time that it can be filed via CM/ECF, which will send an additional notification of filing to all the parties.

                                                  /s/ *Jessica N. Sherman-Stoltz*
                                            Jessica N. Sherman-Stoltz, Esq.
                                            Virginia State Bar #90172
                                            Sherman-Stoltz Law Group, PLLC.
                                            P.O. Box 69, Gum Spring, VA 23065
                                            Phone: (540) 760-7612
                                            Fax: (540) 572-4272
                                            Email: jessica@sslawgroupva.com