## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-CR-116 (DLF)** |
| | : | |
| WILLIAM McCALL CALHOUN, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
## IN SUPPORT OF PRE-TRIAL DETENTION

The United States files this Supplemental Memorandum in Support of Pre-Trial Detention to address the Court's questions concerning the applicable Bail Reform Act pretrial detention provisions under 18 U.S.C. § 3142 and additional information regarding the location and activities of the defendant within the Capitol on January 6, 2021.

## PROCEDURAL POSTURE

Before the Court is defendant William McCall Calhoun's motion for reconsideration of the Order of detention entered in the Middle District of Georgia (Macon Division) following a preliminary examination and detention hearing on January 21, 2021 in case 5:21-mj-8-CHW. Ex. 1. The order of the Magistrate Judge in that matter found probable cause to believe that the defendant committed each offense charged by the complaint dated January 12, 2021 (ECF No. 1); violations of 18 U.S.C. § 152(a) (unlawful entry in a restricted building); 40 U.S.C. 5104(e)(2) (violent entry and disorderly conduct in the Capitol building); and 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding). Those allegations were subsequently presented to the Grand Jury sitting in the District of Columbia, which returned a true bill of indictment on each count on February 12, 2012. ECF No. 6.

None of those offenses are subject to the rebuttal presumption enumerated under section 18 U.S.C. § 3142(e)(3), and as a result the government bore the burden of establishing either: (1) that, beyond a preponderance of the evidence, defendant poses a risk of flight, *United States v. Xulam*, 84 F.3d 441, 443 (D.C. Cir. 1996); or (2) that, by clear and convincing evidence, the defendant had been shown to pose a risk to the safety of any person or the community, 18 U.S.C. § 3142(f); United States v. Peralta, 849 F.2d 625, 626 (D.C. Cir. 1988).

After hearing the sworn testimony of witnesses, exhibits, and the arguments of counsel, the detaining Magistrate "found by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of the community and by a preponderance of the evidence that no condition or combination of conditions of release would reasonably assure the Defendant's appearance as required."  ECF No. 14, Ex. 1 at p.1.  The detaining Magistrate further found that the nature of the alleged offenses were the most significant factor considered under 18 U.S.C. § 3142(g) because they involved "credible threats of violence against political opponents and intentional participation in violent civil insurrection," and that the "weight of the evidence is likely to be strong and indicates an ongoing and escalating pattern of threats and threatening behavior culminating in the violent entry of a mob on the United States Capitol." Id. at p. 2.

Mr. Calhoun now moves for reconsideration of that order of detention. ECF 13. That motion for reconsideration cites to the provisions of the Bail Reform Act at 18 U.S.C. § 3142(i) permitting temporary release on the grounds of a compelling reason in support of an application for indefinite release. ECF No. 13, at 2-3. The "compelling need" cited in the defendant's motion for reconsideration was the precatory and largely unsupported assertion that his medical history places him at a higher risk of contracting COVID-19 while in custody. ECF No. 13, at 3.

That argument was abandoned completely during the evidentiary hearing and oral argument held on the defendant's motion on Friday, March 5, 2021, perhaps because the government had provided a text message exchange between the defendant and another individual shortly before his arrest where he decried epidemiological concerns related to the COVID-19 pandemic, and asserted that not only had he already had the disease, but that it was "no big deal for healthy people" (like him), calling into question the good faith basis for the requested relief:



**BACKGROUND**

By his own admission during his sworn testimony on March 5, 2021, the defendant participated in the Capitol riot on January 6, 2021. His participation was pre-meditated and intentional if the court credits his testimony that he submitted notice of his leave shortly after Christmas for a three-day period spanning January 5-7.

The defendant's intention surpassed the lawful expression of his rights under the First Amendment from the outset. His contemporaneous narrative, published live to various social media accounts, was consistent with his intent (excerpted below from ECF No. 14, Ex. 2):



4

The defendant wrote, "we overran multiple police barricades and swarmed the building . . . there was a last police barricade inside, and we packed in right up to them . . . somebody yelled 'push through', so we did and the shock of our momentum brushed them [Capitol Police Officers] aside . . . [a]fter we had overrun that last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members." ECF 14 ex. 2-5 (copied above).

A careful review of footage from within the Capitol proves the defendant to be a reliable narrator, in this regard at least. As seen in the still images below, the defendant was in fact part of the crowd that forced its way past the barricade in the crypt; pursued retreating Capitol Police officers "down halls" as the defendant shouted; and "stormed" the rotunda:











As depicted above, video footage and still images from a variety of sources corroborate the defendant's statements and actions on January 6, 2021. The detaining magistrate in the Middle District of Georgia had both the video excerpted above of the defendant's actions in the crypt (exhibits 34 and 30), but not the additional date/time stamped images of the defendant forming the group pushing by officers in the hallway depicted above, which were identified by Capitol Police following the defendant's testimony on Friday March 5, 2012. This also underscores the fact that the defendant was indeed part of the first wave of individuals who invaded the Capitol on that date, a critical fact bolstering the government's original request for detention.

## ARGUMENT

"A court may reconsider its decision regarding pretrial detention 'at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time and that has a material bearing on the issue' of whether there exist conditions for release that would reasonably assure the appearance of such person as required," *United States v. Bikundi,* 73 F. Supp. 3d 51, 54 (D.D.C. 2014) (quoting 18 U.S.C. § 3142(f)(2)(B)), and "the safety of any other person and the community," 18 U.S.C. § 3142(f)(2)(B). Even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention. *See United States v. Salerno*, 481 U.S. 739, 755 (1987). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

"New and material information ... consists of something other than a defendant's own evaluation of his character or the strength of the case against him"; instead, it must consist of "truly

changed circumstances, something unexpected, or a significant event." *United States v. Esposito*, 354 F. Supp. 3d 354, 359 (S.D.N.Y. 2019) (internal quotation marks and citation omitted). "Previously unavailable information has no material bearing on the factors that must be considered to establish the propriety of pretrial detention unless that new information casts different light on any of those factors. Cf. Black's Law Dictionary (11th ed. 2019) (defining "material" as "[h]aving some logical connection with the consequential facts" or "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential."). *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020).

Neither the Federal Criminal Rules nor the Local Criminal Rules of this district explicitly provide for motions for reconsideration. Courts in this district and others, however, regularly and appropriately entertain motions for reconsideration of interlocutory decisions, and "'the Supreme Court has recognized ... the utility of such motions.'" *United States v. Coughlin*, 821 F. Supp. 2d 8, 17 (D.D.C. 2011) (quoting United States v. Ferguson, 574 F. Supp. 2d 111, 113 (D.D.C. 2008)). Judges in this district have applied the standard contained in Rule 59(e) of the Federal Rules of Civil Procedure to motions for reconsideration of final orders in criminal cases. *United States v. Cabrera*, 699 F. Supp. 2d 35, 40 (D.D.C. 2010); *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006).

To motions for reconsideration of interlocutory orders, however, they have applied the "as justice requires" standard normally applied to motions under Rule 54(b) of the Federal Rules of Civil Procedure. *Coughlin*, 821 F. Supp. 2d at 18; *United States v. Bloch*, 794 F. Supp. 2d 15, 19 (D.D.C. 2011); *United States v. Sunia*, 643 F. Supp. 2d 51, 61 (D.D.C. 2009).

Mr. Calhoun's motion addresses an interlocutory pretrial detention order rather than a final order in his case. Accordingly, it appears that his motion should be assessed under the "as justice requires" standard.

"[A]sking 'what justice requires' amounts to determining, within the court's discretion, whether reconsideration is necessary under the relevant circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Those circumstances include when a court has "'patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data, or [where] a controlling or significant change in the law has occurred.'" *Arias v. DynCorp*, 856 F. Supp. 2d 46, 52 (D.D.C. 2012) (quoting *Negley v. FBI*, 825 F. Supp. 2d 58, 60 (D.D.C.2011)).

As discussed above, a court may reconsider a decision regarding pretrial detention "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time and that has a material bearing on the issue" of whether there exist conditions for release that would "reasonably assure the appearance of such person as required." 18 U.S.C. § 3142(f)(2)(B); accord *United States v. Moore*, No. 13–330, 2014 WL 1273439, at *1 (D.D.C. Mar. 31, 2014).

But "where litigants have once battled for the court's decision, they should [not] be ... permitted[ ] to battle for it again." *United States v. Hong Vo*, 978 F. Supp. 2d 41, 47–48 (D.D.C. 2013) (citing *Arias*, 856 F. Supp. 2d at 52 (internal quotation marks and citation omitted)). "[W]hile the law of the case doctrine does not necessarily apply to interlocutory orders, district courts generally consider the doctrine's underlying rationale when deciding whether to reconsider an earlier decision." Malewicz v. City of Amsterdam, 517 F. Supp. 2d 322, 328 (D.D.C. 2007). Moreover, motions for reconsideration "cannot be used as an opportunity to reargue facts and

theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (internal quotation marks omitted) (quoting SEC v. Bilzerian, 729 F. Supp. 2d 9, 14 (D.D.C. 2010)).

The defendant has never made the claim that his pending motion for reconsideration presents material information not known at the time of the January 21, 2021 preliminary examination and detention hearing, as required by 18 U.S.C. § 3142(f)(2)(B), and has abandoned the unsupported argument that there is a compelling reason for his release pursuant to 18 U.S.C. § 3142(i). Nor has there been any claim that the detaining Magistrate "patently misunderstood the parties, made a decision beyond the adversarial issues presented, [or] made an error in failing to consider controlling decisions or data, " or that a "controlling or significant change in the law has occurred" as required by the common law doctrine regarding interlocutory motions for reconsideration under the "as justice requires" standard. *Negley v. FBI*, 825 F. Supp. 2d 58, 60 (D.D.C.2011).

All that remains is the opportunity to "reargue facts and theories" considered previously by the detaining Magistrate in light of the defendant's sworn testimony at the March 5, 2021 oral argument on the motion for reconsideration. While the government was not able to secure an official transcript between the Friday hearing and the Sunday deadline for supplementary briefing, the following points (drawn from rough contemporaneous notes) are worth considering.

First, the defendant admitted that his participation in the events of January 6, 2021 was planned and premeditated to the extent that he submitted leave for January 5 through January 7. He admitted that he had become increasingly radicalized online through his social media postings on platforms such as Twitter, Facebook, and Parler.

When asked on direct examination why he wrote in the post following his illegal entry into the Capitol that "we're all going back armed for war and the Deep State is about to get run out of DC," the defendant replied with words to the effect that "I was not saying we are in fact coming back armed for war, just that different people in the crowd were talking about coming back armed." When asked if he had authored another post post where he wrote "Crazy Nancy probably would have been torn into little pieces, but she was nowhere to be seen," the defendant replied "I did write that, but you've got to understand I had a fairly significant following on social media" and that the comment was a "satirical reference" to prior, presumably equally violent comments on social media, and that what he meant was that an "antifa mob" was going "tear Nancy" into "little pieces."  The defendant also stated that he had been "very meticulous not to commit terroristic threats," presumably referencing an offense under Georgia state law.

Perhaps most troubling in light of the images depicting the defendant's position in regards to the retreating and overwhelmed Capitol Police officers, the defendant testified, under oath, "there were no police [in the Capitol] to speak of," and the "few that were ran off."  Far from demonstrating any remorse or contrition for his conduct, the defendant asserted that he in fact was both a victim of "cyberstalking;" that there was "definitely" a plan to "get" him; and that he was "shook to the core" that he had been imprisoned for his "political positions."

Our Circuit's pattern criminal jury instruction regarding witness credibility instructs finders of fact to consider "whether the witness has any interest in the outcome of this case, stands to gain anything by testifying, or has friendship or hostility toward other people concerned with this case," as well as the "reasonableness or unreasonableness, the probability or improbability of a witness in determining whether to accept it as true and accurate."  The government submits that

the defendant's statements prior to being charged and detained are more credible than those made after the fact, and should be given more weight accordingly.

Mr. Calhoun's obvious, unrepentant, and delusional sense of martyrdom in the context of his online radicalization and escalating pattern of violent, threats against perceived political opponents leading up to his up to his uncontested participation in the early stages of the Capitol riot represents both a continuing threat to the safety of individuals in his community that he apparently believes are out to "get him" and a very real risk of flight.

In the context of his belief that he is in effect a political prisoner, the defendant's contempt for the authority of the court and the legitimacy of these proceedings was clear through the course of his testimony, and as a result there can be little question of his willingness to abide by any conditions of release imposed by this Court, particularly in light of the absence of any meaningful release conditions proposed by the defense.

## CONCLUSION

In consideration of the 3142(g) factors and given the gravity of the threat posed by the defendant, and in the absence of new information, a compelling need, or the requirements of justice dictating otherwise, the government respectfully submits that the defendant should continue to be detained in this matter.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY


/s/ Adam Alexander
ADAM ALEXANDER
Assistant United States Attorney
AK Bar No. 1011057
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2021, I sent a copy of the foregoing via the Court's electronic filing system to Jessica Sherman-Stoltz, Esq., counsel for the defendant.


/s/ Adam Alexander
ADAM ALEXANDER
Assistant United States Attorney