IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 21-cr-00116 |
| ) | |
| WILLIAM MCCALL CALHOUN, JR ) | |
| *Defendant.* ) | |

**MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

COMES NOW, Defendant, William McCall Calhoun, Jr., by and through counsel, Jessica N. Sherman-Stoltz, Esq., and respectfully moves this Court to dismiss Count One of the Superseding Indictment, and in support of his Motion, sets forth the following facts and argument.

### I.   BACKGROUND

Defendant's charges before this Court arise out of the events that took place at the United States Capital on January 6, 2021. On January 15, 2021 a complaint, affidavit in support, arrest warrant and motion for detention were filed against Mr. Calhoun in the U.S. District Court for the Middle District of Georgia (Macon). The complaint charged Mr. Calhoun with one count of entry to Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a), one count of Violent Entry or Disorderly Conduct in violation of 40 U.S.C. § 5104(e)(2), and one count of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). Mr. Calhoun was arrested that same day, and he made his first appearance

before the U.S. District Court for the Middle District of Georgia (Macon).

The Defendant was subsequently charged by Indictment in the District of Columbia in the instant matter on February 12, 2021, and arraigned before this Court on Monday, March 1, 2021.

On January 12, 2022, the Government filed a superseding Indictment in the District of Columbia, charging Mr. Calhoun with one count of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2, one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), one count of disorderly conduct in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading demonstrating, or picketing in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

## II.   LEGAL STANDARDS OF REVIEW

### A. Motion to Dismiss

A defendant may raise by pretrial motion any defenses and objections which "the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). These include "a defect in the indictment," including a "failure to state an offense" and "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii) & (v). In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true." *United States v. Syring*, 522 F. Supp. 2d. 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S.

75, 78 (1962). Additionally, "the Court cannot consider facts beyond the four corners of the indictment." *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (*internal quotations omitted*).

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment "must provide the defendant sufficient detail to allow him to prepare a defense, to defend against a subsequent prosecution of the same offense, and to ensure that he be prosecuted upon facts presented to the grand jury." *United States v. Apodaca*, 275 F. Supp. 3d 123, 153 (D.D.C. 2017) (citing *Russell v. United States*, 369 U.S. 749 (1962), and *Stirone v. United States*, 361 U.S. 212 (1960)).

B. **Statutory Interpretation**

To determine the legislative intent of a law, courts "always, [ ] begin with the text of the statute." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3669 v. Shinseki*, 709 F.3d 29, 33 (D.C. Cir. 2013). "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain . . . the sole function of the courts is to enforce it according to its terms." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917) (internal quotes omitted)). "The search for the meaning of the statute must also include an examination of the statute's context and history." *Hite*, 769 F.3d at 1160 (citing *Bailey v. United States*, 516 U.S. 137, 144-45 (1995)). Importantly, "due process bars

courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

### C. Vagueness

A criminal statute is unconstitutionally vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *United States v. Bronstein*, 849 F.3d 1101, 1106 (D.C. Cir. 2017) (quoting *Johnson v. United States*, 576 U.S. 591, 595 (2015)). "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259 (1997). The void-for-vagueness doctrine protects against arbitrary or discriminatory law enforcement. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

### III.   ARGUMENT

Count One of the superseding indictment charges Mr. Calhoun with a violation of 18 U.S.C. § 1512(c)(2) and 2, as follows:

> "On or about January 6, 2021, within the District of Columbia and elsewhere, WILLIAM McCALL CALHOUN, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18." ECF Document Number 83, p. 1.

Section 1512(c) falls under Chapter 73 of Title 18, which deals with "Obstruction of Justice." *See generally*, 18 U.S.C. §§ 1501-1521. As the Ninth Circuit has carefully considered and recognized, based on the plain language of the statute, an offense under §1512(c) does not prohibit the obstruction of every governmental function; it only prohibits the obstruction of proceedings such as a hearing that takes place before a tribunal. *United States v. Ermoian*, 752 F.3d 1165, 1179 (9th Cir. 2013). Stated differently, Section 1512(c), by its plain language, does not criminalize the obstruction of legislative action by Congress. Any alleged obstruction of the certification of the Electoral College vote is simply outside the scope of §1512(c). Alternatively, on its face §1512 is constitutionally infirm because of its inherent vagueness and arbitrary enforcement in the panoply of January 6th cases.

### A. Failure to State an Offense

Count One of the Indictment charges that Mr. Calhoun obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2), and it identifies that "proceeding" as "Congress's certification of the Electoral College vote." However, as discussed below, the Electoral College certification before Congress does not constitute an "official proceeding" for purposes of the application of 18 U.S.C. § 1512(c)(2).

The legal issue is whether Congress' certification of the electoral vote count of the Presidential election on January 6th was an "official proceeding" under 18 U.S.C. §1512. It was not.

### 1. Section 1512 Must be Strictly Construed

18 U.S.C. § 1512 prohibits "corruptly. . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." Id. (emphasis added). Section 1515(a)(1) of Chapter 73 of Title 18 defines an official proceeding as:

   a. a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

   b. *a proceeding before the Congress*;

   c. a proceeding before a Federal Government agency which is authorized by law; or

   d. a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agen tor examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1). Count One of the Indictment against Mr. Calhoun concerns "a proceeding before the Congress" as set forth in §1515(a)(1)(B).

With respect to 18 U.S.C. § 1512, the Supreme Court has instructed lower courts to "exercise[] restraint in assessing the reach of [the] . . . statute both out of deference to the prerogatives of Congress . . . and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *United States v. Arthur Anderson, LLP*, 544 U.S. 696, 703 (2005) (internal citations and quotations omitted) (strictly construing § 1512(b)(2)'s broadly worded language in finding that jury instructions failed to instruct that knowledge of wrongdoing and proof of a nexus between the alleged obstruction and an official proceeding were required elements of the offense).

2. **An "Official Proceeding" under § 1512(c) Concerns the Administration of Justice**

A review of the text, history, and judicial interpretations of § 1512, especially in light of the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that § 1512(c), which punishes obstruction of "official proceedings," does not apply to the Electoral College certification.[1]

---

[1] Congress counts the electoral votes pursuant to the Twelfth Amendment to the United States Constitution and the Electoral Count Act of 1887, later codified in 3 U.S.C. § 15.  Congress counts the electoral votes after the states have already heard any disputes and certified the vote.  See Bush v. Gore, 531 U.S. 98, 154 (2000) (Breyer, J., dissenting).  Members of Congress may make an objection, in writing, and without argument.  3 U.S.C. § 15.  According to the statute, there is no testimony, no witnesses, no argument, and no evidence introduced at the electoral count.  The event is merely ceremonial.  See Stephen A. Siegel, The Conscientious Congressman's Guide to the Electoral Count Act of 1887, 56 FLLR 541, 585 (2004).

*Ermoian* was one of the first appellate decisions to consider the meaning of "official proceeding" as that term is used in § 1512(c) and defined in § 1515. *See Ermoian*, 752 F.3d at 1168 ("Our circuit has never before addressed the meaning of the term 'official proceeding' as used in the obstruction of justice statute at 18 U.S.C. § 1512"). The *Ermoian* court, tasked with deciding whether a criminal investigation by the FBI was considered an "official proceeding" for purposes of § 1512(c), noted that "the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding.'" *Id*. at 1169.

Reviewing the plain language of § 1515, the *Ermoian* court explained that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal – rather than lay – understanding of the term 'proceeding' is implicated in the statute." *Id*. at 1170. The court noted that "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id*. (citing "*Proceeding*," Oxford English Dictionary, *available at* http://www.oed.com). The court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id*.

> The Ninth Circuit further observed that
>
> > Examining the term 'proceeding' within the grammatical structure of the definition at issue, it becomes clear that the term connotes some type of formal hearing. [Section 1515(a)(1)(C)] refers to proceedings "before a Federal Government agency" – a choice of phrase that would be odd if it

were referring to criminal investigations. The use of the preposition "before" suggests an appearance in front of the agency *sitting as a tribunal*.

*Id*. at 1170-71 (internal citation omitted) (emphasis added); see also *United States v. Ramos*, 537 F.3d 439, 462-63 (5th Cir. 2008) ("use [of] the preposition 'before' in connection with the term 'Federal Government agency' . . . implies that an 'official proceeding involves some formal convocation of the agency in which parties are directed to appear.'"). The court also considered that § 1512 uses the terms "attendance," "testimony," "production" and "summon[]" when describing an official proceeding, and found the use of these terms "strongly implie[d] that some formal hearing before a tribunal is contemplated." *Id*. at 1172.

The logic and reasoning used by the *Ermoian* court in considering whether an FBI investigation fell under the scope of § 1512(c) applies with equal force to interpreting the term "proceedings before the Congress." Taking § 1512 and the definitions contained in § 1515 as a whole, it is plain that the statute is directed at conduct that interferes with the administration of justice.² Even the title of the statute, "Tampering

---

² *See McAndrew v. Lockheed Martin Corp*., 206 F.3d 1031, 1039 (11th Cir. 2000)("Section 1512 . . . applies to attempts to *prevent or influence testimony* not only in federal courts but also *before Congress*, federal agencies, and insurance regulators.")(emphasis added); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (MD. Ga. 2006)(" . . . § 1515(a)(1) . . . describe[s] events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, *Congressional testimony*, and insurance regulatory hearings.")(emphasis added); *United States v. Georgia*, 2014 WL 2084891 (N.D. Georgia 2014) ("official proceeding" for purposes of §1512(c) did not include a FBI investigation); *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) (the term "proceeding" implies 'some formal convocation . . . in which parties are directed to appear") (quoting *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019)).

with a witness, victim, or an informant," suggests an adversarial proceeding related to the administration of justice.[3] History shows that section 1512 has only criminalized the obstructive conduct that is related to a hearing before a tribunal that is affecting the administrative of justice, and the ceremonial certification of the Electoral College votes is not that, and does not qualify as an "official proceeding" under the statute.[4] Congress was not acting in a proceeding in which sworn testimony was taken, witnesses and documents were subpoenaed, or adjudicative power was exercised.  Therefore, on January 6th there was not an "official proceeding" as to which Congress intended § 1512 to apply.

3. **The Legislative History Demonstrates that § 1512(c) Concerns the Administration of Justice**

Section 1512(c)(2) was enacted as part of the Sarbanes-Oxley Act of 2002, which was titled "Corporate Fraud Accountability," and had the express purpose of targeting "corporate malfeasance."  Pub. L. No. 107-204, 116 Stat. 745.  Nothing in the legislative history of the Sarbanes-Oxley Act supports the notion that Congress enacted §

---

[3] See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc., 502 U.S. 183, 189 (1991)("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

[4] This interpretation is consistent with the case law that has clarified the meaning of the statutory language at issue here.  See e.g. Arthur Anderson, LLP,  544 U.S. at 708 (interpreting §1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a]judicial proceeding" in order to have the "requisite intent to obstruct'); United States v. Burge, 711 F.3d 803, 809 (7th Cir. 2013) (considering the application of §1512 and noting that "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries.") cert. denied, 571 U.S. 888 (2014); United States v. Sampson, 898 F.3d 287, 300 (2d Cir. 2018)(noting that §1512 "broadly criminalizes various forms of witness tampering").

1512(c)(2) to criminalize the disruption of a ceremony before Congress by persons engaged in a political rally, no matter how large the crowd or how disorderly the activities of some in the crowd may have become.  Rather, the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535-36 (2015). The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," S. REP. NO. 107-146, at 2 (2002) (emphasis added).

In *Yates*, the Supreme Court narrowly construed the term "tangible object" as set forth in 18 U.S.C. § 1519, which penalized a person who

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . .

18 U.S.C. § 1519.  Congress designed the Sarbanes-Oxley Act with a "trained [] attention on corporate and accounting deception and cover-ups." *Id*. at 532.  In the context of the statute's purpose, a "tangible object" must be one used to record or preserve information. *Id*. In rendering the *Yates* decision, the Supreme Court clearly

telegraphed that legal terms are to be narrowly construed given the legislative history and purpose of the Sarbanes-Oxley Act.

When considering the Act's preamble and legislative history, it is clear that § 1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice. Given this context, the certification of the Electoral College votes does not qualify as an "official proceeding" under the statute.

### 4. Congress Has Used Other Terms to Describe Interference with Electoral College Certification

Mr. Calhoun submits that the government incorrectly conflated an "official proceeding" under § 1512 with a "federally protected function[5]" under 18 U.S.C. § 231(a)(3) or the "official business" of Congress under 40 U.S.C. § 5104(e)(2)(c). For example, in Counts four and five of the Indictment, the government charged Mr. Calhoun with violating 40 U.S.C. § 5104(e), which prohibits entering "any of the Capitol Building[s]" intending "to disrupt the orderly conduct of official business[.]" 40 U.S.C. § 5104(e)(2)(c) (emphasis added). Mr. Calhoun submits that the ceremonial certification of the Electoral College by Congress may be more appropriately considered the "official

---

[5] The term "federally protected function" is defined as: [A]ny function, operation or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails. 18 U.S.C. § 232(3).

business" of Congress or a "federally protected function" rather than an "official proceeding before the Congress" as captured by 18 U.S.C. §§ 1512(c) and 1515.

B. **Alternatively, Section 1512(c)(2) is Unconstitutionally Vague**

How is the ordinary citizen supposed to know whether his conduct runs afoul of § 1512 (c)(2) and punishment for a felony or falls under the category of a misdemeanor offense of disorderly conduct under 40 U.S.C. § 5104 which limits the punishment to six months in prison? Under the same principles of *United States v. Johnson*, 576 U.S. 591 (2015) and its progeny, 18 U.S.C. § 1512(c)(2) violates due process because it is vague and does not provide fair notice to Mr. Calhoun as to the conduct it punishes. Section 1512(c)(2) provides that:

> Whoever *corruptly* –
> 
> 1. alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> 
> 2. Otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, . . . shall be fined . . . or imprisoned . . .

18 U.S.C. §§ 1512(c)(1) and (2).

First, § 1512(c) uses words throughout both subsections that require courts to speculate as to their meaning in the context of the defendant's particular actions. To wit, courts must speculate as to the meaning of the word "corruptly" and the phrase

"official proceeding." Perhaps more problematic is the residual clause of subsection (c)(2), one that is so ambiguous, requiring courts to line-draw when determining if a defendant has "otherwise" obstructed, impeded, or influenced an official proceeding before Congress.

In *Johnson*, the Supreme Court considered the constitutionality of residual clause of the Armed Career Criminal Act, which enhanced a defendant's sentence if the defendant had a conviction for a prior felony that "otherwise involved conduct that presented a serious potential risk of physical injury to another." *Johnson*, 576 U.S. at 591. In finding a due process violation, the Supreme Court explained that the residual clause required a "wide-ranging inquiry" in each case as to what could potentially cause injury in each set of circumstances. *Johnson*, 576 U.S. at 597. Observing that the ambiguity of the residual clause resulted in disparate interpretations, the Supreme Court acknowledged that the "failure of persistent efforts to establish a standard can provide evidence of vagueness." *Id*. at 598.

Similarly, in the case at hand, the residual clause of § 1512(c) is constitutionally vague, requiring courts to speculate and line-draw when distinguishing "official proceedings" from mere ancillary proceedings or investigations. As discussed above, courts have generally interpreted "official proceeding" to mean something more formal than an investigation.

The vagueness of the statute is not limited to the confusion that surrounds what constitutes an "official proceeding." The D.C. Circuit has acknowledged that the word "corruptly" is vague on its face as used in a similar statute, 18 U.S.C. § 1505, that prohibits obstruction of a proceeding before departments, agencies, or congressional investigations. The court held that "in the absence of some narrowing gloss, people must guess at its meaning and application." *United States v. Poindexter*, 951 F.2d 369, 398 (D.C. Cir. 1991). Previously, in *Ricks v. District of Columbia*, 414 F.2d 1097 (D.C. Cir. 1968), the court had held that a statute that criminalized "leading an immoral or profligate life" vague because it found "immoral" to be synonymous with "corrupt, depraved, indecent, dissolute, all of which would result in 'an almost boundless area for the individual assessment of another's behavior.'" *Poindexter*, 951 F.2d at 399 (quoting *Ricks*, 414 F.2d at 1097). The court explained that various dictionary definitions of the word "corrupt" did not reduce the confusion as to its meaning for purposes of the statute. *Id*. After similar assessment of the legislative history and judicial interpretation, as has been done here, the court concluded that neither of those inquiries provided defendants with the constitutionally required notice that the statute requires, and found the term vague as applied to the defendant making false statements. *Id*. at 406.

Following *Poindexter*, Congress amended § 1515 to define "corruptly" for purposes of § 1505 only to mean "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding,

concealing, altering, or destroying a document or other information." § 1515(b). However, this amendment did not resolve the vagueness that still exists in § 1512 as Congress did not amend § 1515 as it applies to § 1512.

Even though the D.C. Circuit later held that the word "corruptly" was not vague as applied, it was because in that case the defendant influenced a witness, which fits squarely within the non-vague category that *Poindexter* established. *See United States v. Morrison*, 98 F.3d 619, 630 (D.C. Cir. 1996). In *Morrison*, the defendant tried to influence a witness's testimony and "exhorted her to violate her legal duty to testify truthfully in court." *Id*. The *Poindexter* Court explained that influencing another to "violate their legal duty" was not vague because "it would both take account of the context in which the term 'corruptly' appears and avoid the vagueness inherent in words like 'immorally.'" *Poindexter*, 951 F.2d at 379. However, *Morrison* was not faced with the question of what "corruptly" means in the context of § 1512(c) and does not resolve the ambiguity that the word presents in conjunction with the rest of the statute. Even taking "corruptly influences" together is still vague because "influence" alone is another vague word and means something different than "influencing another to violate their legal duty" as described in § 1515.

Analyzing the government's approach to charging defendants with a violation of § 1512(c)(2) arising out of events on January 6, 2021, illustrates how vague and arbitrary the enforcement of this statute can be. Initially, it seemed that the government was only

charging those individuals who had entered the Senate chamber[6] with a § 1512(c)(2) violation, however, a brief look of some of defendants that have been charged with a violation of § 1512(c)(2) clearly shows the government's charging inconsistencies.

1. *United States v. Isaac Sturgeon*, 21-cr-91, Mr. Sturgeon is alleged to have assisted in pushing a barricade outside the Capitol building but never entered the Senate chamber, never went inside the Capitol building, and never made any threats to law enforcement or on social media suggesting he wished to disrupt the vote.  Mr. Sturgeon is not alleged to be part of the Oath Keepers or the Proud Boys.

2. *United States v. Kenneth Grayson*, 21-cr-224, Mr. Grayson is alleged to have entered the Capitol building, but not alleged to have entered the Senate chamber.  Prior to January 6, 2021, he allegedly wrote in a private message, "I am there for the greatest celebration of all time after Pence leads the Senate flip!  OR IM THERE IF TRUMP TELLS US TO STORM THE FUKIN CAPITOL IME DO THAT THEN!"

3. *United States v. Benjamin Larocca*, 21-cr-317, Mr. Larocca allegedly entered the Capitol building while screaming "Our House!"  He was with an individual who was allegedly yelling, "You fucking oath breakers!"  Mr. Larocca is not

---

[6] The ceremonial Electoral College certification took place in the Senate Chamber.

alleged to have entered the Senate floor and is not a member of the Proud Boys or Oath Keepers.

4. *United States v. Sean Michael McHugh*, 21-cr-436, Mr. McHugh allegedly employed bear spray in direction of officers and yelled insults at officers. He also allegedly used a megaphone and engaged the crowd with chant, such as "our house!" There is no evidence he entered the Capitol building or the Senate floor.

5. *United States v. Dale Jeremiah Shalvey*, 21-cr-334, Mr. Shalvey allegedly entered the Senate chamber and is captured on video rummaging through Senator Cruz's notes. However, he is not alleged to be a part of the Oath Keepers or the Proud Boys.

As illustrated by these cases, the facts and circumstances of each vary drastically from one another, and clearly show that the government's charging decisions are inconsistent. Some cases allege entry into the Capitol building while others do not. The government does not specify what "influence" these defendants had or how exactly they "impeded." With respect to Mr. Calhoun, he was originally charged via criminal complaint and indicted in February of 2021. Mr. Calhoun is alleged to have entered the Capitol building, but not the Senate chamber, and made statements on social media similar to many of the other political statements that have been uttered by several defendants. The inconsistent charging decisions along with the inherently vague words

of the statute, as well as the "residual clause" that is the basis for charging Mr. Calhoun all show that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague and does not provide fair notice to Mr. Calhoun.

## IV.    CONCLUSION

Based upon the foregoing, this Court can see that the government has taken liberties with the application of 18 U.S.C. § 1512(c).  No court has ever interpreted an "official proceeding," as that term is used in §1512(c), so broadly as to encompass an event such as the certification of the Electoral College vote.  While the Electoral College certification is arguably a "federally protected function" and certainly part of the "official business" of Congress, it clearly was not an evidence-gathering, formal, judicial or quasi-judicial event contemplated as "official proceeding" under § 1512(c).

In the case of Mr. Calhoun, the government has stretched 18 U.S.C. § 1512(c) beyond its plain meaning and beyond the intent of Congress when it was enacted. Count One as charged in the Indictment fails to state an offense and should be dismissed.

Dated: March 21, 2022.

Respectfully Submitted,

WILLIAM MCCALL CALHOUN, JR.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.

P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslawgroupva.com

## CERTIFICATE OF SERVICE

I hereby CERTIFY that on this the 21st day of March 2022, a true and correct copy of the foregoing *Defendant's Motion to Transfer Venue and Memorandum of Law in Support Thereof* with the Clerk of Court via the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

/s/ Jessica N. Sherman-Stoltz_____
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.