**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Cr. No. 1:21-CR-00116 DLF** |
| **v.** | : | |
| | : | |
| **WILLIAM McCALL CALHOUN,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' RESPONSE TO DEFENDANT WILLIAM MCCALL CALHOUN'S**
**MOTION TO DISMISS COUNT ONE OF THE SUPERSEDING INDICTMENT**

The United States respectfully submits its Response to Defendant William McCall

Calhoun's Motion to Dismiss Count One of the Superseding Indictment (ECF No. 101). The

Government respectfully opposes Defendant's motion and asks this Court to deny it in its

entirety.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and

the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S.

Presidential Election.  While the certification process was proceeding, a large crowd gathered

outside the United States Capitol, entered the restricted grounds, and forced entry into the

Capitol building.  As a result, the Joint Session and the entire official proceeding of the Congress

was halted until law enforcement was able to clear the Capitol of hundreds of unlawful

occupants and ensure the safety of elected officials.

Calhoun and his co-defendant Verden Andrew Nalley entered the United States Capitol

as part of the large crowd that had gathered to protest the 2020 election on January 6, 2021. The

two had travelled together from Georgia having known each other from playing in the same local

band. Calhoun was outspoken on social media in the weeks and months leading up to January

1

6th, as well as after the fact.  Both men entered the Capitol building on January 6, 2021 and spent time inside the building.

Based on his actions on January 6, 2021, Calhoun is charged with violations of 18 U.S.C. §§ 1512(c)(2) and 2, Obstruction of an Official Proceeding; 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds; 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds; 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building; and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

Calhoun now moves for dismissal of Count 1 of the Superseding Indictment. ECF No. 101. He contends that the Electoral College vote on January 6, 2021 was not an "official proceeding" as that term is contemplated under 18 U.S.C. § 1512(c).  He argues alternatively that the statute is unconstitutionally vague.  Defendant's arguments lack merit and his motion should be denied.

## ARGUMENT

### I.     The Court Should Deny Calhoun's Motion to Dismiss Count One (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512).

Calhoun argues that Count One, charging a violation of 18 U.S.C. § 1512(c)(2), should be dismissed because Congress's certification of the Electoral College vote is not an "official proceeding," and because the statute is unconstitutionally vague as applied. As set forth below, and as other judges, including this Court, in this district have held, these arguments lack merit.

#### A.     The certification of the Electoral College vote is an official proceeding.

Section 1512(c)(2) of Title 18 of the U.S. Code provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." The defendant argues that

Congress's certification of the Electoral College vote on January 6, 2021, does not qualify as an "official proceeding" for purposes of 18 U.S.C. § 1512(c)(2) because it does not concern the "administration of justice." ECF No. 101, 7-13. His argument is contrary to the plain text of the statute and recent decisions in this district, and in this particular Court, considering the issue. *See United States v. Sandlin*, 21-cr-88 (DLF), 2021 WL 5865006, at *3–*10 (D.D.C. Dec. 10, 2021; *United States v. Caldwell*, 21-cr-28 (APM), 2021 WL 6062718, at *4–*7 (D.D.C. Dec. 20, 2021); *United States v. Mostofsky*, 21-cr-138 (JEB), 2021 WL 6049891, at *9–*10 (D.D.C. Dec. 21, 2021); *United States v. Montgomery*, 21-cr-46 (RDM), 2021 WL 6134591, at *4–*10 (D.D.C. Dec. 28, 2021); *United States v. Nordea*n, 21-cr-175 (TJK), 2021 WL 6134595, at *4– *6 (D.D.C. Dec. 28, 2021); *United States v. McHugh,* 21-cr-453, ECF No. 51, at 7–18 (Feb. 1, 2022); *United States v. Griffin*, No. 21-cr-92 (TNM), 2021 WL 2778557 (D.D.C. July 2, 2021).

## 1.    Background

The Constitution and federal statutory law require that both Houses of Congress meet to certify the results of the Electoral College vote. Two separate provisions in the Constitution mandate that the Vice President while acting as the President of Senate "shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted." U.S. Const. art. II, § 1, cl. 3; U.S. Const amend. XII. Under the Electoral Act of 1887, a Joint Session of the Senate and the House of Representatives must meet at "the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors." 3 U.S.C. § 15. Section 15 details the steps to be followed: the President of the Senate opens the votes, hands them to two tellers from each House (who are required to read them "in the presence and the hearing of the two Houses"), ensures the votes are properly counted, and then opens the floor for written objections, which must be signed "by at least one Senator and one

Member of the House of Representatives." *Id*. The President of the Senate is empowered to

"preserve order" during the Joint Session. 3 U.S.C. § 18. Upon a properly made objection, the

Senate and House of Representatives withdraw to consider the objection; each Senator and

Representative "may speak to such objection . . . five minutes, and not more than once." 3 U.S.C.

§ 17. The Electoral Act, which specifies where within the chamber Members of Congress are to

sit, requires that the Joint Session "not be dissolved until the count of electoral votes shall be

completed and the result declared." 3 U.S.C. § 16.

The obstruction statute with which the defendant is charged prohibits corruptly

obstructing, influencing, or impeding any official proceeding. 18 U.S.C. § 1512(c)(2). An

official proceeding for purposes of § 1512(c)(2) is defined, in relevant part, as "a proceeding

before the Congress." 18 U.S.C. § 1515(a)(1)(B) (emphasis added).

> **2.    Certification of the Electoral College vote is a proceeding before the
> Congress.**

The certification of the Electoral College vote as set out in the Constitution and federal

statute is a "proceeding before the Congress," 18 U.S.C. § 1515(a)(1)(B), and, therefore, an

"official proceeding" for purposes of 18 U.S.C. § 1512(c)(2). That conclusion flows principally

from the obstruction statute's plain text. *See Caldwell*, 2021 WL 6062718 at * 4 ("A

straightforward reading of that definition easily reaches the Certification of the Electoral College

vote."). Skipping past the text, the defendant argues that Congress's intent and other language

and structural features of the obstruction statute import a requirement that the proceeding be

"adversarial" in nature and related to the administration of justice. ECF No. 101 at 10. That

argument is incorrect.

Understanding what qualifies as an official proceeding "depends heavily on the meaning

of the word 'proceeding'" because "official proceeding" is defined "somewhat circularly" as,

among other things, a congressional "proceeding." *See United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The certification of the Electoral College vote constitutes a "proceeding" under any interpretation of that term. In its broadest and most "general sense," a proceeding refers to "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior." *Id*. (quoting Proceeding, Oxford English Dictionary, available at http://www.oed.com). The defendant does not meaningfully contend that the certification of the Electoral College vote, which involves a detailed "series of actions" outlining how the vote is opened, counted, potentially objected to, and ultimately certified, is not a proceeding—and indeed an official proceeding—under that broad definition. And there is good reason to construe "proceeding" as used in 18 U.S.C. § 1515 broadly. While subsection (B) refers only to proceedings "before the Congress," other subsections encompass judicial proceedings, grand jury proceedings, any legally authorized proceedings before federal government agencies, and proceedings "involving the business of insurance." 18 U.S.C. § 1515(a)(1); *see* S. Rep. No. 97-532, at 17 (1982) (noting that the "term 'official proceeding'" in the obstruction statute is "defined broadly").

But even if the "legal—rather than the lay—understanding" of proceeding governs Section 1515's interpretation, *see Ermoian*, 752 F.3d at 1170, the Electoral College vote certification qualifies. This narrower definition includes the "business conducted by a court or other official body; a hearing." Black's Law Dictionary, "proceeding" (11th ed. 2019). Taken with its modifier "official," the term proceeding thus "connotes some type of formal hearing." *Ermoian*, 752 F.3d at 1170; *see United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008) (the "more formal sense" of "official proceeding" is "correct in the context of § 1512"). For example, in cases assessing whether a law enforcement investigation amounts to an "official proceeding"

as defined in Section 1515—including the cases relied upon by the defendant—courts analyze the degree of formality involved in an investigation. *See, e.g., United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (holding that FBI investigation was not an "official proceeding" because that term "implies something more formal than a mere investigation"), cert. denied, 140 S. Ct. 1106 (2020); *Ermoian*, 752 F.3d at 1170–72 (same); *United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (holding that internal investigation conducted by a review panel within the Bureau of Prisons was an "official proceeding" because the review panel's "work [was] sufficiently formal"); *Ramos*, 537 F.3d at 463 (holding that internal investigation conducted by Customs and Border Patrol was not an "official proceeding" because that term "contemplates a formal environment"); *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) (holding that investigation conducted by Bureau of Alcohol, Tobacco, and Firearms was not an "official proceeding" because that term encompasses "events that are best thought of as hearings (or something akin to hearings)"); *see also United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (holding that a "formal investigation" conducted by the Officer of the Inspector General at the Agency for International Development qualified as a "proceeding" for purposes of 18 U.S.C. § 1505) (emphasis added); *Montgomery*, 2021 WL 6134591, at *9 (concluding that "the most sensible reading of Section 1515 is that the term 'official proceeding' refers to "the business conducted by an official body that has formally convened for the purpose of conducting that business") (citation omitted).

Calhoun cites *Ermoian* and *Ramos*, but claims that what these cases actually require is that the conduct interfere with the "administration of justice" (ECF No. 101 at 9). Calhoun misinterprets his own citations, which hold that ongoing law-enforcement or internal agency investigations are not "official proceedings" not because they do not involve the "administration

of justice," but because "[t]hey are not formal hearings conducted before official bodies."
*Sandlin*, 2021 WL 5865006, at *3. Moreover, neither of these cases involved "a proceeding
before the Congress," and they do not undermine the government's position because "an ongoing
law enforcement investigation of a criminal enterprise bears no resemblance, as a matter of form
or content, to the official process mandated by the Twelfth Amendment and the Electoral Count
Act for certifying the electoral vote for President and Vice President." *Montgomery*, 2021 WL
6134591, at *6.

      The formality involved in the certification of the Electoral College vote places it
"comfortably within the category" of an official proceeding. *See Perez*, 575 F.3d at 169. Few
events are as solemn and formal as a Joint Session of the Congress. That is particularly true of
the certification of the Electoral College vote, which is expressly mandated by the Constitution
and federal statute.

      Required by law to begin at 1 p.m. on the January 6 following a presidential election, the
certification of the Electoral College vote is both a "hearing" and "business conducted by . . .
[an] official body." *See* Black's Law Dictionary, supra. The Vice President, as the President of
the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors
throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may
object, which in turn causes the Senate and House of Representatives to "withdraw" to their
respective chambers so each House can render "its decision" on the objection. *Id*. And just as the
judge and parties occupy specific locations in a courtroom, so too do the Members within the
"Hall." *See* 3 U.S.C. § 16 (describing where various officials must sit). The certification,
moreover, must terminate with a decision: no recess is permitted until the "the count of electoral
votes" is "completed," and the "result declared." *Id*. In short, the certification of the Electoral

College vote is a "proceeding before the Congress." *See* 18 U.S.C. § 1515(a)(1)(B).  Judges in this district have accordingly concurred. *See*, *e.g., Montgomery*, 2021 WL 6134591, at *10; *Sandlin*, 2021 WL 5865006, at *3–*4; *Mostofsky*, 2021 WL 6049891, at *10 (concluding that the certification of the Electoral College is an official proceeding within the meaning of 18 U.S.C. §§ 1515, 1512(c)(2)); *Caldwell*, 2021 WL 6062718 at * 4 ("The Certification of the Electoral College vote thus meets the definition of an 'official proceeding.'"); *Nordean*, 2021 WL 6134595 at *5 ("the certification is therefore a 'series of actions' that requires 'some formal convocation,' making it a 'proceeding before the Congress,' 18 U.S.C. §1515(a)(1)(B), and thus an 'official proceeding.'")

### 3.    The proceeding before the Congress is not limited to proceedings "affecting the administration of justice."

The defendant improperly asks this Court to add a limitation to the definition and interpret "official proceeding" to mean only proceedings related "to a hearing before a tribunal that is affecting the administrative of justice." ECF No. 101 at 10. As an initial matter, it is difficult to imagine a proceeding more "official" than a constitutionally and statutorily prescribed Joint Session of Congress.

Calhoun claims that the statute's title, "Tampering with a victim, witness, or informant" (ECF No. 101 at 9-10), supports his position, but that title pre-dates the passage of Section 1512(c)(2) by almost 20 years. *See* Victim and Witness Protection Act of 1982 (VWPA), Pub. L. No. 97-291, § 4(a), 96 Stat. 1248, 1249–50. "When Congress enacted Section 1512(c)(2), that title was already included in the codification." *Montgomery*, 2021 WL 6134591, at *15 (citing 18 U.S.C. § 1512 (2000)). "The title of the section of the legislation that added Section 1512(c), in contrast, was 'Tampering with a record or otherwise impeding an official proceeding.'" *Id*. (citing Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 1102, 116 Stat. 745, 807 (emphasis

added)). As Judge Moss found, "Section 1512(c)(2)'s title in the U.S. Code is unenlightening, and the title under which it was enacted arguably supports a broader reading of the statute." *Id*.

Defendant's argument finds no textual support when applied to Section 1515(a)(1)(B), moreover, which speaks broadly of a proceeding "before the Congress." Had Congress wanted to import a definition that more closely resembled a quasi-adjudicative setting, it needed look only a few provisions away to 18 U.S.C. § 1505, which criminalizes obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency. Further, Section 1505 expressly criminalizes obstruction of "any inquiry or investigation [that] is being had by" Congress, including by congressional committees and subcommittees. 18 U.S.C. § 1505; *see United States v. Bowser*, 964 F.3d 26, 31 (D.C. Cir. 2020). If Congress wished to limit the obstruction prohibition under Section 1505 to congressional investigations, it could have done so in the text of Section 1515(a)(1)(B). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.") But "Congress did not select this narrow construct when it enacted section 1512(c)." *Caldwell,* 2021 WL 6062718, at *5. Instead, Congress enacted broader language— "a proceeding before the Congress"—to cover a broader range of proceedings than the "inquir[ies] and investigation[s]" envisioned in Section 1505. "That Congress decided to incorporate into section 1512(c) an existing definition of 'official proceeding' that broadly includes 'a proceeding before Congress,' as opposed to one limited to its 'power of inquiry,' is therefore consequential." *Id*.

Calhoun's arguments cannot overcome the plain and unambiguous meaning of the statute.

The broader reference to a "proceeding before the Congress" in Section 1515 includes the Electoral College vote certification. All the courts in this district who have recently considered the issue have so held. *See*, *e.g.*, *Caldwell*, 2021 WL 6062718 at *5 ("Congress did not intend to limit the congressional proceedings protected under section 1512(c) to only those involving its adjudicatory, investigative, or legislative functions. And the court will not add a requirement to the statute that Congress did not see fit to include."); *Sandlin*, 2021 WL 5865006, at *4 ("[T]he Court will not read an "administration of justice" requirement into "official proceeding.").

4.     *Yates v. United States* **and legislative history do not limit the meaning of Section 1512(c)(2) to proceedings involving document destruction or "the administration of justice."**

The defendant relies on flawed legislative history and misreads *Yates v. United States* to argue that the Electoral College vote is not an "official proceeding" under the misguided belief that Section 1512(c), in its entirety, is aimed at "preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." ECF No. 101 at 12. Defendant again errs by avoiding Section 1515's text. To determine the meaning of a statute, the Court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). In ordinary parlance, a gathering of the full Congress to certify the Electoral College vote is "a proceeding before the Congress." Because Section 1515(a)(1)(B)'s words "are unambiguous, the judicial inquiry is complete." *See Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation marks omitted). And because construing Section 1512(c)(2) to reach defendant's conduct would neither "frustrate Congress's clear intention" nor "yield patent absurdity," this Court's "obligation is to apply the statute as Congress wrote it." *Hubbard v. United States*, 514 U.S. 695, 703 (1995) (internal quotation marks omitted). The defendant offers

no rationale for looking past the statute's plain text to reach for other interpretive tools. *See McHugh*, 21-cr-453, ECF No. 51, at 16 (declining to use "vague notions of a statute's basic purpose" or Congress's "expectations" to impose an "extra-textual limitation" on the actual text of Section 1515 and 1512(c)(2)).

One of those tools is legislative history, which should be given little weight here, and which defendant mischaracterizes, in any event. Calhoun quotes from the Senate Judiciary Committee's description of the "Act's purpose," as punishing persons "who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations," ECF No. 101 at 11 (quoting S. Rep. No. 107-146, at 2 (2002)), but fails to mention that the version of the legislation the committee was discussing did not include Section 1512(c)(2) (which was added two months after the act was reported out of committee, as a floor amendment). *Montgomery*, 2021 WL 6134591, at *15–*16 (citing 148 Cong. Rec. S6542 (daily ed. July 10, 2002)). Relatedly, Calhoun argues that "nothing in the legislative history" supports that Section 1512(c)(2) applies to "the disruption of a ceremony before Congress by persons engaged in a political rally," ECF No. 101 at 11, but he fails to mention that the legislative history regarding Section 1512(c)(2), regarding any of its applications, is scant in general and of little value here, given that Section 1512(c)(2) was not added until after the bill was reported out of committee. *See Montgomery*, 2021 WL 6134591, at *15 (observing that "[b]ecause Section 1512(c)(2) did not originate in a committee, there is little legislative history that sheds light on the purposes of that particular provision. And what little history exists should not be given much weight"). After Senator Lott offered the floor amendment that included Section 1512(c), Senator Hatch observed that the legislation "broaden[ed]" Section 1512 by permitting prosecution of "an individual who

acts alone in destroying evidence." 148 Cong. Rec. S6550 (daily ed. July 10, 2002) (statement of Sen. Hatch). This passing reference is not a basis to limit the statute.

Relying on the Supreme Court's decision in *Yates*, Calhoun also contends that Section 1512(c)(2) targets only "corporate malfeasance" and is "aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice." ECF No. 101 at 10, 12. As Judge Moss recently found, *Yates* is "inapt." *Montgomery*, 2021 WL 6134591, at *13–*15 (distinguishing *Yates*). The statute at issue in *Yates* was 18 U.S.C. § 1519, which prohibits altering, destroying, and concealing records, documents, and tangible objects. *See Yates*, 574 U.S. at 532 (plurality opinion). *Yates* held that the term "tangible object" as used in Section 1519 included only an object "used to record or preserve information," and thus did not encompass the undersize red grouper that the defendant in *Yates* had discarded. *Id*. In reaching that conclusion, the plurality compared Section 1519 with Section 1512(c)(1), which similarly prohibits altering, destroying, or concealing evidence in connection with an official proceeding. Congress enacted both Sections 1519 and 1512(c) as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745, but drafted Section 1512(c)(1) to reach more broadly than Section 1519. *See Yates*, 574 at 543–45; *see also id*. at 545 n.7 ("Congress designed § 1519 to be interpreted apart from § 1512, not in lockstep with it."); *Caldwell*, 2021 WL 6062718 at *15–*18 (rejecting defendants' arguments that *Yates* narrows the reach of Section 1512(c) based, in part, on the statute's legislative history, title, and placement within Chapter 73 of Title 18)).

The statute with which the defendant is charged, Section 1512(c)(2), expands the obstruction prohibition beyond the focus on document destruction in Sections 1519 and Section 1512(c)(1). *See United States v. Ring*, 628 F. Supp. 2d 195, 225 (D.D.C. 2009) ("[Section] 1512(c)(2)'s application is not limited to the destruction of documents."). Its application to a

defendant who "corruptly . . . otherwise obstructs, influences, or impedes any official proceeding," § 1512(c)(2), "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction, which is listed in (c)(1)." *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (affirming conviction under Section 1512(c)(2) for false statements) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)). Courts have repeatedly upheld its application to obstructive acts that reach beyond the impairment of financial records. *See id.* (collecting cases concerning violations of Section § 1512(c)(2) by virtue of the use of false statements); *United States v. Phillips*, 583 F.3d 1261, 1265 (10th Cir. 2009) (upholding conviction under Section 1512(c)(2) for disclosing the identity of an undercover federal agent to thwart a grand jury investigation); *United States v. Carson*, 560 F.3d 566, 584 (6th Cir. 2009) (upholding conviction under Section 1512(c)(2) for providing false testimony to a grand jury); *United States v. Cervantes*, No. 16-10508, 2021 WL 2666684, at *6 (9th Cir. June 29, 2021) (upholding conviction under Section 1512(c)(2) for the burning of building to conceal two bodies of murder victims).

Moreover, to the extent that Calhoun suggests that the outcome in *Yates* was dictated by the general purpose of the Sarbanes-Oxley Act (to stem "corporate and accounting deception and cover-ups"), ECF No. 101 at 11, that is incorrect: the plurality used a range of tools of construction to narrow the statute at issue, of which legislative history was only one, and Justice Alito, the decisive fifth vote, did not refer to Sarbanes-Oxley's purpose at all.  As Judges Mehta and Moss have recently explained, the contextual features, including legislative history, that influenced the *Yates* plurality to narrow Section 1519, are absent in Section 1512(c)(2). *See Caldwell*, 2021 WL 6062718, at *15–*18; *Montgomery*, 2021 WL 6134591, at *13–*18.

Furthermore, while Section 1512(c) may have been enacted due to concerns over document destruction and corporate malfeasance, this Court has pointed out that "[s]tatutes often reach beyond the principal evil that animated them." *Sandlin*, 2021 WL 5865006, at \*9 (finding that Section 1512(c)(2) may apply to defendants who attempted to stop the certification of the Electoral College on January 6, 2021); *see also Mostofsky*, 2021 WL 6049891 at \*11 (rejecting defendant's argument that Section 1512 only applies to conduct similar to document destruction and explaining that the defendant's position "would have the Court ignore the plain meaning of the words contained in (c)(2)—to wit, 'obstructs, influences, or impedes'—which cannot be read so narrowly. The use of 'otherwise' is better understood as 'clarif[ying] that the latter prohibits obstruction by means other than document destruction.'") (emphasis in original); *Caldwell*, 2021 WL 6062718 at \* 14 ("The natural reading of the two sections is that section 1512(c)(2) 'operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction'").

## 5.   Defendant's violation of multiple statutes does not bar a prosecution under Section 1512(c)(2).

The defendant suggests (ECF No. 101 at 12-13) that, the United States has "conflated" an "official proceeding" under 18 U.S.C. § 1512 with a "federal protected function" under 18 U.S.C. § 231 and 40 U.S.C. § 5104 because his actions interfered with a "federally protected function" and "official business of Congress," not an "official proceeding." This claim is meritless. First, each of the offenses that he cites contains different elements that the Government must prove beyond a reasonable doubt. Moreover, the mere fact that multiple criminal statutes apply to an individual's conduct does not render prosecution under one (or more) of those statute suspect; indeed, "overlap" is "not uncommon in [federal] criminal statutes." *Loughrin v. United States*, 573 U.S. 351, 358 n.4 (2014); *accord Hubbard v. United States*, 514 U.S. 695, 714 n.14

14

(1995) (opinion of Stevens, J.) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."); *see also United States v. Batchelder*, 442 U.S. 114, 123 (1979) ("So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.").

### B.    18 U.S.C. § 1512(c)(2) is not unconstitutionally vague and the defendant had fair notice that his actions are punishable under 18 U.S.C. § 1512(c)(2).

The defendant argues (ECF No. 101 at 13–20) that Section 1512(c) is unconstitutionally vague because of the terms "otherwise," "corruptly," and "official proceeding." Again, several other judges in this district, including this Court, have recently rejected this same argument. *Sandlin*, 2021 WL 5865006, *Caldwell*, 2021 WL 6062718, *Mostofsky*, 2021 WL 6049891; *Montgomery*, 2021 WL 6134591; *Nordean*, 2021 WL 6134595; *McHugh*, 21-cr-453, ECF No. 51, at 19–28.  In light of Calhoun's claims, though, a response is warranted.

An outgrowth of the Due Process Clause of the Fifth and Fourteenth Amendments, the "void for vagueness" doctrine prevents the enforcement of a criminal statute that is "so vague that it fails to give ordinary people fair notice of the conduct it punishes" or is "so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). To ensure fair notice, "generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply."  *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017) (citation omitted).

A statute is not unconstitutionally vague simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because reasonable jurists might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). A provision is impermissibly

vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). A statutory provision is "not rendered unconstitutionally vague because it 'do[es] not mean the same thing to all people, all the time, everywhere.'" *Bronstein*, 849 F.3d at 1107 (quoting *Roth v. United States*, 354 U.S. 476, 491 (1957)). A statute is instead vague where it fails to specify any "standard of conduct . . . at all." *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971). A law is not vague because it "call[s] for the application of a qualitative standard . . . to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree.'" *Johnson*, 576 U.S. at 603–04 (quoting *Nash v. United States*, 229 U.S. 373, 377 (1913)).

There is a strong presumption that a statute is not vague. *See United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). Other courts in this district have recognized that high bar. *See United States v. Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342948, at *7 (D.D.C. Oct. 29, 2020); *see also United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (finding that the defendant did not meet the "stringent standard" to prevail on a Rule 12 vagueness motion).

Facial overbreadth challenges—in which a defendant asserts that a statute, constitutionally applied to him, is nevertheless invalid because it would be unconstitutional in a "substantial number" of *other* cases, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)—are even more exceptional. Overbreadth can invalidate a criminal law only if "'a substantial number' of its applications are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep,'" and no limiting construction is available. *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 769–771 (1982)); *see also City of Houston v. Hill*, 482 U.S. 451,

16

458 (1987). The Supreme Court has "vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.

"[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, a defendant must show a "realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court . . . ." *Id.* at 801. "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Invalidating a statute for overbreadth is "strong medicine" to be applied "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). If the statute is "readily susceptible" to a narrowing construction that would make it constitutional, it must be upheld. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613; *United States v. Rundo*, 990 F.3d 709, 714 (9th Cir. 2021) ("we construe [the riot statute, 18 U.S.C. §§ 2101–2102] as constitutional if we can reasonably do so").

The void for vagueness doctrine is narrow, and does not apply here, where the statute gives Calhoun fair notice and is not "so standardless that it invites arbitrary enforcement." Johnson, 576 U.S. at 595.

### 1.    The "otherwise" catch-all clause is not unconstitutionally vague as applied here.

The defendant argues that the "otherwise" in Section 1512(c)(2) ("otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so") makes the statute

17

unconstitutionally vague. ECF No. 101at 14. It does not. "Section 1512(c)(2) gives defendants

fair warning in plain language that a crime will occur in a different ("otherwise") manner

compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official

proceeding' without regard to whether the action relates to documents or records." *Sandlin*, 2021

WL 5865006, at *5 (*quoting United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015)

(emphasis added)).

      Section 1512(c) consists of two provisions, which both require the defendant to act

"corruptly" and are separated by both a semicolon and line break. First, Section 1512(c)(1)

criminalizes "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other

object . . . with the intent to impair the object's integrity or availability for use in an official

proceeding." Section 1512(c)(2), by contrast, applies more generally to any acts that "otherwise

obstruct[], influence[], or impede[]" an official proceeding. The term "otherwise," consistent

with its ordinary meaning, conveys that Section 1512(c)(2) encompasses misconduct that

threatens an official proceeding "beyond [the] simple document destruction" that Section

1512(c)(1) proscribes. *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013); *Petruk*, 781

F.3d at 446–47 (noting that "otherwise" in Section 1512(c)(2), understood to mean "in another

manner" or "differently," implies that the obstruction prohibition in that statute applies "without

regard to whether the action relates to documents or records") (internal quotation marks

omitted); see also Ring, 628 F. Supp. 2d at 224 n.17 (noting that Section 1512(c)(2) is "plainly

separate and independent of" Section 1512(c)(1), and declining to read "otherwise" in Section

1512(c)(2) "as limited by § 1512 (c)(1)'s separate and independent prohibition on evidence-

tampering"); Otherwise, Oxford English Dictionary, available at http://www.oed.com (defining

otherwise as "in another way" or "in any other way"); *see also Collazos v. United States*, 368

F.3d 190, 200 (2d Cir. 2004) (construing "otherwise" in 28 U.S.C. § 2466 (1)(C) to reach beyond the "specific examples" listed in prior subsections, thereby covering the "myriad means that human ingenuity might devise to permit a person to avoid the jurisdiction of a court").

In this way, Section 1512(c)(2) criminalizes the same result prohibited by Section 1512(c)(1)—obstruction of an official proceeding—when that result is accomplished by a different means, i.e., by conduct other than destruction of a document, record, or other object. *Cf. United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir. 1978) (explaining that 18 U.S.C. § 1503, which criminalizes the result of obstructing the due administration of justice, provides specific means of accomplishing that result and then a separate catch-all clause designed to capture other means). Section 1512(c)(2) "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense involving documents or records under Section 1512(c)(1). *Petruk*, 781 F.3d at 447 (quoting *Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014); *cf. United States v. Aguilar*, 515 U.S. 593, 598 (1995) (describing similar "[o]mnibus" clause in 18 U.S.C. § 1503 as a catchall that is "far more general in scope than the earlier clauses of the statute").

Defendant's citation to *Johnson* does not demonstrate that "otherwise" is vague here. ECF No. 101 at 13–14 (quoting *Johnson*, 576 U.S. at 591). *Johnson* invalidated the residual clause of the Armed Career Criminal Act (ACCA) (which enhanced a sentence if a defendant's conduct "otherwise involved conduct that presented a serious potential risk of physical injury to another"), but not because it included the term "otherwise." Rather, the Court decided that applying the categorical approach to determine whether a hypothetical crime "involves conduct" that at some point created a "risk of injury," as the residual clause required, was too

indeterminate. 576 U.S. at 596–97. Concerns about the application of the categorical approach are inapposite here.

>    2.    **The word "corruptly" is not unconstitutionally vague as applied here.**

Section 1512(c)(2) applies only where an individual "corruptly" performs one of the enumerated acts. Calhoun argues that the term "corruptly" is unconstitutionally vague. ECF No. 101 at 15-16. As this Court and others have recognized, that argument is without merit. *See Caldwell*, 2021 WL 6062718, at *8–*13; *Sandlin*, 2021 WL 5865006 at *10–14; *Mostofsky*, 2021 WL 604891 at *11; *Montgomery*, 2021 WL 6134591 at *18–*22; *Nordean*, 2021 WL 9134595, at *9.

The defendant relies on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which addressed a separate statute, 18 U.S.C. § 1505, that prohibited "corruptly" obstructing a congressional inquiry. *Poindexter* is inapposite, and does not show that Section 1512(c)(2) is vague as applied here, as Judge Mehta explained in depth in *Caldwell*. *See Caldwell*, 2021 WL 60626718, at *8–*11. First, the D.C. Circuit narrowly confined *Poindexter*'s analysis to Section 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. Five years later, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction of a defendant for "corruptly" influencing the testimony of a potential witness at trial. Id. at 629–30. Moreover, "[i]n the 30 years it has been on the books, courts have not applied *Poindexter* widely to render impotent the many obstruction statues that use the word 'corruptly.' Rather . . . courts have recognized 'the narrow reasoning used in *Poindexter*' and 'cabined that vagueness holding to its unusual circumstances.'" *Nordean*, 2021 WL 6134595, at *10 (quoting *United States v. Edwards*, 869 F.3d 490, 502 (7th

Cir. 2017)); see also, e.g., *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (rejecting

vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d

1289, 1300 (11th Cir. 1998) (same for 18 U.S.C. § 1512(b)); *United States v. Brenson*, 104 F.3d

1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503). They have not "read *Poindexter* to

mean, as Defendants seem to urge, that the term 'corruptly' in any obstruction statute is fatally

vague." *Caldwell*, 2021 WL 6062718, at *9.

      *Poindexter* also predated the Supreme Court's decision in *Arthur Andersen v. United

States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt' and 'corruptly'

are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705 (citation omitted).

In doing so, the Court "did not imply that the term was too vague." *Edwards*, 869 F.3d at 502.

      Courts have encountered little difficulty when addressing Section 1512(c)'s elements

following *Arthur Andersen. See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011);

*United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*,

717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with

"consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007)

(upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding

the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512

("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due

administration of justice."); *see also Mostofsky*, supra, at 23 ("corruptly" requires that a

defendant act "'unlawfully, and with the intent to obstruct[,]' impede, or influence an official

proceeding") (citing *Sandlin*, *supra*, at 26); *Caldwell*, *supra*, at 23 (noting that, "at the very

least," corruptly "requires Defendants to have acted with consciousness of wrongdoing"). The

reach of the term "corruptly" in Section 1512(c)(2) is also limited by the "nexus" requirement,

namely, that the "the obstructive conduct be connected to a specific official proceeding." *United States v. Young*, 916 F.3d 368, 386 (4th Cir.), cert. denied, 140 S. Ct. 113 (2019) (citation omitted). Such efforts demonstrate that the statute's "corruptly" element does not invite arbitrary or wholly subjective application by either courts or juries.

### 3. The word "official proceeding" is not unconstitutionally vague as applied here.

The defendant further contends (ECF No. 101 at 13-14) that the Court must speculate as to the meaning of the term "official proceeding" in Section 1512(c). As explained above, no indeterminacy exists. The Joint Session of Congress qualifies as an "official proceeding" under both the "lay" and "legal" definitions of the term. See Section (I)(C)(1)(ii), supra. It also contains the necessary "adjudicatory" features to satisfy the defendant's extra-textual construction. For that reason, Section 1512(c) provided him with more than "a fair warning … of what the law intends to do if a certain line [was] passed" on January 6, 2021. *Arthur Andersen*, 544 U.S. at 703 (citation omitted); *see also Caldwell*, 2021 WL 6062718 at *7 (rejecting vagueness challenge to the term "official proceeding"). "It is difficult to fathom that a reasonable person would not believe the Electoral College certification was an official proceeding . . . ; indeed, this is precisely the reason why the January 6 rioters wished to stop it." *Mostofsky*, 2021 WL 6049891, at *11.

### 4. The exercise of prosecutorial discretion does not render a statute vague.

Calhoun singles out five January 6 defendants charged with violations of Section 1512 (out of hundreds) and argues that their cases "illustrate[] how vague and arbitrary the enforcement of the statute can be." ECF No. 101 at 17-18. Defendant's effort is flawed, and several courts in this district have recently rebuffed similar invitations to compare charging

22

decisions as part of the vagueness inquiry. *See Montgomery*, 2021 WL 6134591, at *22; *Caldwell*, 2021 WL 6062718, at *8; *Nordean*, 2021 WL 6134595 at *12. "Discretionary prosecutorial decisions cannot render vague as applied a statute that by its plain terms provides fair notice." *Caldwell*, 2021 WL 6062718 at *8; *see also Montgomery*, 2021 WL 6134591, at *22 ("the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague") (quoting *Kincaid v. District of Columbia*, 854 F.3d 721, 729 (D.C. Cir. 2017) (Kavanaugh, J.)). The vagueness doctrine asks whether "the statute … provide[s] a person of ordinary intelligence fair notice of what is prohibited." *Williams*, 553 U.S. at 304 (emphasis added). The defendant cites no authority, and the government has found none, showing that charging decisions postdating the offense have any bearing on this inquiry.

While the Court need not delve into the specifics of defendant's five citations, they do not suggest that 1512(c)(2) is arbitrary. There is no indication that any of the defendants lacked the intent to "corruptly"—through wrongdoing, whether by violence, force, or other means— obstruct, interfere with, and impede the certification of the Electoral College vote count. Their obstructive methods varied: some defendants assaulted officers outside the Capitol while others entered the Senate Chamber and rifled through Senators' paperwork. But such factual distinctions lack salience under the statute. Each type of conduct "corruptly" "obstruct[ed], influence[d], or impede[d]" a proceeding before Congress, and accordingly, comes within the statute's scope. 18 U.S.C. § 1512(c). The fact that a criminal statute could encompass varied fact patterns is hardly unusual: take the wire and mail fraud statutes, for example.

Calhoun further states, "the government does not specify what 'influence' these defendants had or how exactly they 'impeded.'" ECF No. 101 at 18. But the government does not have to describe in the charging instrument how it will prove the elements at trial. *See United*

23

*States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976) (en banc) ("[N]either the Constitution, the Federal Rules of Criminal Procedure, nor any other authority suggests that an indictment must put the defendants on notice as to every means by which the prosecution hopes to prove that the crime was committed."). The question here is whether Section 1512(c)'s text provided the defendant with adequate notice.

Finally, the Court should reject Calhoun's contention that the indictment is vague as applied to him because, whatever the "uncertainty around the edges," *Edwards*, 869 F.3d at 502, Section 1512(c)'s "corruptly" element provided ample notice to Calhoun that this conduct was criminal. "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974). Calhoun is accused of multiple felonies for his conduct during the January 6 Capitol riot. His "conduct on January 6th was just as independently unlawful and thus just as obviously covered by § 1512(c)(2)." *McHugh*, 21-cr-453, ECF No. 51, at 26.

WHEREFORE, the United States respectfully requests that the Court deny Defendant Calhoun's Motion to Dismiss Count One of the Indictment.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney
D.C. Bar No. 481052

By:  _____/s/_____
JENNIFER M. ROZZONI
NM Bar No. 14703
Assistant United States Attorney - Detailee
201 3rd Street, Suite 900
Albuquerque, NM 87102
Tel. No. 505-350-6818
jennifer.m.rozzoni@usdoj.gov

24