IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                      ) | Case No. 21-cr-00116 |
| ) | |
| WILLIAM MCCALL CALHOUN, JR  ) | |
| *Defendant.*                                    ) | |

_____

**MOTION *IN LIMINE* TO EXCLUDE THE ENTRY OF EVIDENCE AND/OR ARGUMENT REGARDING DEFENDANT'S SOCIAL MEDIA POSTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

_____

COMES NOW, Defendant, William McCall Calhoun, Jr., by and through counsel, Jessica N. Sherman-Stoltz, Esq., and respectfully moves this court to enter an order excluding the entry of evidence and/or argument at trial regarding Defendant's social media posts leading up to, and through, January 6, 2021, and the days thereafter, and in support of his Motion, sets forth the following facts and argument.

## I.     BACKGROUND

On January 5, 2021, upon his friend and co-defendant's invitation, Mr. Calhoun traveled to Washington, D.C. to attend a rally on January 6, 2021, where former President Donald Trump was the featured speaker. Mr. Nalley drove them to Washington, D.C. from their homes in Georgia, and rented and paid for the hotel room. On January 6, 2021, Mr. Calhoun and Mr. Nalley were together throughout the entirety of the day. They attended the rally, followed the crowd to the Capital Building, and around 2:19 PM they entered the

Capital Building through an open door. After walking around the Capital Building for less than thirty (30) minutes, and upon information and belief, only remaining between the velvet ropes and not entering any of the publicly restricted areas (remaining primarily in the Rotunda area), Mr. Calhoun and Mr. Nalley exited the Capital Building, and left Washington, D.C. shortly thereafter.

Later, while on the drive home, Mr. Calhoun made numerous social media posts, to include pictures, giving his narrative of the events that had taken place that day. Screenshots and recordings of these posts were later provided to the FBI by a "concerned citizen" (*See* ECF Document 1-2 – Affidavit in Support of Criminal Complaint and Arrest Warrant, pp. 3-4). "According to the caller, CALHOUN had posted a message encouraging people to storm Washington D.C. and peacefully protest while openly carrying firearms." *Id*. The caller then read some of these social media posts that Mr. Calhoun had allegedly written, to include a post that said, "we are going to kill every last communist who stands in Trump's way." *Id*. Those statements made by the "concerned citizen" (most of which were false), and the screenshots of Mr. Calhoun's social media posts, were used as the probable cause for the issuance of the arrest warrant for Mr. Calhoun.

On January 15, 2021, a complaint, affidavit in support, arrest warrant and motion for detention were filed against Mr. Calhoun in the U.S. District Court for the Middle District of Georgia (Macon). The complaint charged Mr. Calhoun with one count of entry to Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a), one count of Violent Entry or

Disorderly Conduct in violation of 40 U.S.C. § 5104(e)(2), and one count of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). Mr. Calhoun was arrested that same day, and he made his first appearance before the U.S. District Court for the Middle District of Georgia (Macon). The Defendant was subsequently charged by Indictment in the District of Columbia in the instant matter on February 12, 2021, and arraigned before this Court on March 1, 2021.

On January 12, 2022, the Government filed a superseding Indictment in the District of Columbia, charging Mr. Calhoun with one count of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2, one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), one count of disorderly conduct in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading demonstrating, or picketing in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Mr. Calhoun's codefendant in this case, Mr. Nalley, was arrested and charged with the same three initial counts that Mr. Calhoun was charged with. However, almost ten (10) months ago, Mr. Nalley was offered, and accepted, a misdemeanor plea from the Government. Interestingly, Mr. Nalley's somewhat controversial social media presence was greater than Mr. Calhoun's is alleged to have been, however, in the month leading up to the January 6th events, Mr. Nalley was in the midst of a thirty-day ban/suspension from

Facebook. Being that Mr. Calhoun and Mr. Nalley were together through the entirety of January 6th, specifically within the Capital Building, the only difference in the basis of their charges, and that Mr. Calhoun hasn't been offered the same misdemeanor plea, would be Mr. Calhoun's social media posts leading up to, and including, January 6, 2021. This implies that in addition to peacefully entering the Capital Building on January 6, 2021, Mr. Calhoun is being prosecuted on the content of his public posts.

## II.     LEGAL STANDARD OF REVIEW

Federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 (1984); see also *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1503 (11th Cir. 1985) (stating that consideration of a motion *in limine* is a matter within the discretion of the District Court); *Arnold v. Nobartis Pharm. Corp.*, 28 F. Supp. 3d 1268 (M.D. Fla. 2014) (ruling on an "omnibus motion *in limine*" and granting a series of evidentiary exclusions).  The purpose of a motion *in limine* is "to exclude anticipated prejudicial evidence before the evidence is actually offered."  *Luce*, 469 U.S. at 40 n. 2 (1984); see also *Stewart v. Hooters of Am., Inc.*, 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) (the purpose is to provide the Court notice of the movant's position to avoid damaging evidence, "which may irretrievably affect the fairness of the trial.").  The court may exclude evidence if it is inadmissible. *Luce v. United States*, 469 U.S. 38, 41 (1984) (federal district courts have authority to make *in limine* rulings pursuant to their authority to manage

trials). This includes prohibiting irrelevant and prejudicial arguments or references at trial. *Id*.

Relevant evidence is that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice'" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Note. "In balancing the probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion." *United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976).

### III. ARGUMENT

**A. Use of Mr. Calhoun's Social Media Posts Will Violate His First Amendment Right to Free Speech and Expression**

Posting on social media is a form of speech and artistic expression, both of which are Protected under the First Amendment. Moreover, the social media posts at issue here merit "special protection" under the First Amendment because they contain

"speech on public issues." *Snyder v. Phelps*, 131 S. Ct. 1207, 125 (2011). Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," *Connick, supra,* at 146, 103 S. Ct. 1684, 75 L. Ed. 2d 708, or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public," *San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 160 L. Ed. 2d 410. See *Cox Broadcasting Corp.* v. *Cohn*, 420 U.S. 469, 492-494, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975).

"The First Amendment protects speech even when the subject or manner of expression is uncomfortable and challenges conventional religious beliefs, political attitudes or standards of good taste." *United States v. Cassidy*, 814 F.Supp.2d 574, 582 (D. Md. 2011); citing *United States v. Stevens*, 559 U.S. 460, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010). Further, the Supreme Court has "consistently classified emotionally distressing or outrageous speech as protected, especially where that speech touches on matters of political, religious or public concern. This is because 'in public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide "adequate breathing space" to the freedoms protected by the First Amendment.'" *Id.*

Mr. Calhoun's writings within his social media posts may be "fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder*, at 1216. His commentary, expressed through his writings in his social media posts, therefore "occupies the highest rung of the hierarchy of First Amendment values." *Id*. at

1215. The arguably "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin* v. *McPherson*, 483 U.S. 378, 387, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987). "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas* v. *Johnson*, 491 U.S. 397, 414, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989).

While the internet did not exist when our founders contemplated First Amendment protections in 1791, courts have routinely recognized that the internet is just the "newest medium for . . . uncomfortable expression touching on political matters" and that the "First Amendment's command [does] not vary when a new and different medium for communication appears." *United States v. Cassidy*, 814 F.Supp.2d 574, 582 (D. Md. 2011); citing *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997); *Cassidy* also citing *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 131 S. Ct. 2729, 2733, 180 L. Ed. 2d 708 (2011).

Mr. Calhoun's social media posts are often delivered in first-person narrative and often incorporate the experiences of another person, or a group of people, collectively, either in whole or in part. His social media posts are a form of creative writing and artistic expression and they are entitled to protection under the First

Amendment and their admission at trial would therefore violate his right to free speech and expression.

B. **Rule 403 Prohibits the Introduction of the Social Media Posts**

Mr. Calhoun's social media posts should be excluded under Rule 403 because their minimal probative value is "substantially outweighed by the danger of unfair prejudice to the defendant." *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985). It is highly likely that the content, writings, arguments and narratives contained in Mr. Calhoun's social media posts will inflame the jurors and lead them to reach a decision based on their emotions, rather than on the evidence before them. *See State v. Skinner*, 218 N.J. 496, 251 (N.J. 2014); *see also* Fed. R. Evid. 403 advisory committee's notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

The "underlying premise of our criminal justice system [is] that the defendant must be tried for what he did, not for who he is." *Hodges*, 770 F.2d at 1479. Admission of the social media posts at trial would draw the focus away from the legitimate facts in dispute and towards prejudicial, inflammatory questions about Mr. Calhoun's "bad" character. The evidence will "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *Old Chief v. United States*, 519 U.S. 172, 180 (1997), and therefore the Court should exclude it under Rule 403.

**C. The Defendant's Social Media Posts Do Not Relate to Any of the Overt Acts Alleged in the Indictment**

Mr. Calhoun's social media posts, whether they pertain to the events of January 6, 2021 or not, do not relate to, or provide the basis for, the acts alleged in the January 12, 2022 superseding indictment. The Government does not need to rely upon, or introduce into evidence, Mr. Calhoun's social media posts, in order to prove the elemental acts and conduct required of the five charges he's facing as a result of his alleged acts on January 6, 2021.

## IV.    CONCLUSION

WHEREFORE, Defendant, William Calhoun, moves this Honorable Court to grant his Motion and enter an order precluding the Government from entering any evidence and/or argument related to his social media posts leading up to, and through, January 6, 2021, and the days thereafter.

Dated: September 5, 2022.

Respectfully Submitted,

WILLIAM MCCALL CALHOUN, JR.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslawgroupva.com

**CERTIFICATE OF SERVICE**

I hereby CERTIFY that on this the 5th day of September 2022, a true and correct copy of the foregoing *Motion in Limine to Exclude the Entry of Evidence and/or Argument Regarding Defendant's Social Media Posts and Memorandum of Law in Support Thereof* with the Clerk of Court via the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

      /s/ *Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.