UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 21-cr-00116 DLF |
| v. : | |
| : | |
| WILLIAM McCALL CALHOUN, JR. : | |
| : | |
| Defendant. : | |

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE ENTRY OF EVIDENCE AND/OR ARGUMENT REGARDING DEFENDANT'S SOCIAL MEDIA POSTS

Defendant William McCall Calhoun, Jr., who is charged in connection with events at the U.S. Capitol on January 6, 2021, has moved in limine to exclude the entry of evidence and/or argument regarding his social media posts at trial. For the reasons set forth, this Court should deny his motion.

BACKGROUND

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification proceeding was occurring, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

On January 6, 2021, Calhoun and his co-defendant Verden Andrew Nalley unlawfully entered the United States Capitol as part of the large crowd that had gathered to protest the 2020 election certification. The two had travelled together from Georgia the day prior having known each other from playing in the same local band. They were a part of the first wave of rioters to

1

enter the building, having first broken through the line of officers on the west side of the Capitol building. As this Court is likely aware, the initial breach of the Capitol building on January 6 was at approximately 2:13 p.m. through the Senate wing doors. It is undisputed that Calhoun and Nalley entered the building approximately six minutes later, at 2:19 p.m. The two men were in the building for approximately 26 minutes. They walked down and through a number of hallways, eventually making their way upstairs to the rotunda. They walked through the rotunda and, although they had access to the east rotunda doors to leave, they walked back into the rotunda again. Finally, the two men returned to the east rotunda doors and left the building at approximately 2:44 p.m.

In the weeks and months leading up to January 6, as well as after, Calhoun was outspoken on social media about the fact that he believed that the 2020 presidential election had been stolen. For instance, on November 6, 2020, three days after the presidential election, Calhoun posted on the social media site Parler, "If you believe America elected Creepy Joe and his fake Negro bitch running mate, then put on your mask and STFU because we're coming for you motherfuckers! This stolen election is a fraud. Trump won!"

On November 7, 2020, Calhoun commented on a post from a user of the social media site Facebook:

> George, the communists are trying to steal the election- it's obvious. We go to bed and Trump is winning, then wake up to magically find hundreds of thousands of "only Biden" votes. Normally a candidate who is honest wants transparency. We are on the verge of civil war snd [sic] the battleground will be ATL. We're going to go door to door and execute the fucking communists. I want to make that clear.

He then included a second comment to the same user, "I'm serious."

Also on November 7, 2020, Calhoun commented on a different Facebook user's comment:

> Like good lawyers we will wait for the Supremes to fix this, and then we'll find out whether America is too stupid to exist. It may be. Way too many low information dumbasses out there voting, dead people voting, more than 100% of registered voters voting, etc. Yet we have a solid 5-4 majority no thanks to Chief Justice

"Epstein Island" Roberts, but a solid majority nonetheless. If America is too stupid to exist, and the decision becomes final in favor of the communists, then I say we hasten the destruction of our new communist country masquerading as America. We fuck them up every way possible. We refuse to pay taxes. We block the streets. We "peacefully protest" and make it impossible for the government to function. That's what we do. We shut this shit down. And when the communists try to use force against us for "peacefully protesting" we kill the hell out of them until the ones left beg for mercy. That's what we do. And if Americans are to effete and decadent to rise up, then these fat ass, rich republicans who are too afraid to save themselves much less their country, can go die by themselves sitting in their houses with a gun surrounded by Antifa-BLM - and that is exactly what is coming at Conservatives like a freight train. The fools that allow this to happen are going to lose it all - their wealth, their integrity and their very lives in some cases - the ones that survive will be little better than slaves deserving of punishment from the commie SJW. "Truth and Reconciliation Commissions" will be the first means of erasing conservatives.

On November 21, 2020, Calhoun posted the following photo to his Parler account:



The caption to the photo read, "Me hanging with the Leader of the Proud Boys, Enrique Tarrio! He's a Great American. A real Boss! And a super nice guy!"

On December 21, 2020, Calhoun posted on Parler, "The Supreme Court, Barr, McConnell and the rest of the swamp think we will roll over - instead they have 75 million ungovernable Patriots to face." Five days later, again on Parler, he wrote:

> Trump is moving forward with a citizen army of 75,000,000 Patriotic Americans at his back, we're not conceding and we categorically reject Communism and stolen elections.
>
> McConnell and Pelosi have given assurances to the Swamp to ignore the above and that the corruption will continue to fill their coffers.
>
> So who has the most staying power in this epic contest of the Will?
>
> Opportunistic and spineless Politicians for sale to the highest bidder?
>
> Or Patriots fanatically motivated by the reality that anything less than victory means their civilization will be destroyed?
>
> This won't even be close.
>
> Never bet against Trump and never bet against America!

On January 4, 2021, Calhoun posted on Parler about his intentions in traveling to Washington D.C. on January 6, 2021:

> Headed to D.C. to give the GOP some back bone - to let them know this is their last chance to Stop the Steal - or they are going to have bigger problems than these coddled Antifa burning down their safe spaces.
>
> DC announced it is "banning guns" when we storm the Capitol tomorrow. LoL - guns are already banned in DC. Very illegal.
>
> Whether the police can enforce their gun laws depends on how many armed Patriots show up.
>
> Ironically, in the long list of firearms and weapons banned by the DC ordinance, tomahawks are not mentioned, meaning there is no prohibition against carrying a tomahawk as long as it is not used offensively!

      The tomahawk revolution- real 1776!

On January 6, 2021, Calhoun posted the following on Facebook around 4:08 p.m.:

> Patriots have taken the Capitol building. We overran multiple police barricades and swarmed the building. We busted through - thousands of us swarmed in. There was a last police barricade inside, and we had packed in right up to them. Somebody yelled "push through", so we did and the shock of our momentum brushed them aside - some people we're bleeding pretty badly by that point. After we had overrun that last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members. Then we stormed upstairs through the rotunda admiring the amazing art work but at the same time looking for members of Congress, as by this time we physically owned the Capitol - all law enforcement had retreated to the perimeter and even more thousands were trying to push in! And get this - the first of us who got upstairs kicked in Nancy Pelosi's office door and pushed down the hall towards her inner sanctum, the mob howling with rage - Crazy Nancy probably would have been torn into little pieces, but she was nowhere to be seen - then a swat team showed, and we retreated back to the rotunda and continued our hostile take over of the Capitol Building. There was such a push of even more Patriots coming into the Capitol that we couldn't get out for about 20 minutes. If this steal doesn't get fixed there's talk of Patriots coming back - this time fully armed for war. We mean business. We proved today that we're in control and we outnumber the deep state 10,000 to 1 - they can't stop us.

Calhoun also messaged another Facebook user that same day, "I was there George. We took the Capitol in hostile hand to hand confrontation with the police. I was in the wave that broke through the cops and took it. There were thousands and thousands of us."

      Finally, on January 10, 2021, Calhoun wrote on Parler, "This is totalitarianism – we will fight them until we are victorious! We will never surrender!"

      Based on his intent evidenced by his social media posts, as well as his actions on January 6, 2021, Calhoun is charged with violations of 18 U.S.C. §§ 1512(c)(2) and 2, Obstruction of an Official Proceeding; 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds; 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds; 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building; and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building.

Calhoun now moves to exclude the statements he made in his social media posts. ECF 121. He contends that, because his co-defendant was offered and accepted a misdemeanor plea and he has not "been offered the same misdemeanor plea," he is only being prosecuted as a result of "the content of his public posts," in violation of the First Amendment. He also argues that the statements should be excluded under Rule 403 and that they don't support any of the elements of the charged crimes. Defendant's arguments are without merit, and the motion should be denied.

## ARGUMENT

**I.   The Statements in Calhoun's Social Media Posts are Evidence Relevant to Prove his Corrupt Intent, a Required Element of 18 U.S.C. § 1512(c)(2).**

As explained above, Defendant Calhoun is charged with one count of a violation of 18 U.S.C. §§ 1512(c)(2) and (2), obstruction of an official proceeding. In this case, the official proceeding was the certification of the 2020 U.S. Presidential Election. To prove Calhoun guilty of a violation of § 1512(c)(2), the Government must prove the following four elements beyond a reasonable doubt:

1) The defendant attempted to or did obstruct or impede an official proceeding;
2) The defendant intended to obstruct or impede the official proceeding;
3) The defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and
4) The defendant acted corruptly.

To act "corruptly," the defendant must use unlawful means or have an unlawful purpose, or both.

As this Court is aware, and as the standard jury instruction provides, a person's "knowledge and intent ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but [the trier of fact] may infer someone's knowledge and intent from the surrounding circumstances." Proof of State of Mind, Redbook 3.101. The fact finder "may

consider any statement made or acts done by the defendant and all other facts and circumstances received in evidence which indicate the defendant's intent [and/or] knowledge." *Id*. Indeed, courts and juries "pass every day upon the reasonable import of a defendant's statements – whether, for example, they fairly convey a false representation, *see, e.g.*, 18 U.S.C. § 1621 (criminalizing perjury), or a threat of physical injury, *see, e.g.*, § 115(a)(1) (criminalizing threats to assault federal officials)." *United States v. Williams*, 553 U.S. 285, 306-07 (2008).

Here, prior to January 6, 2021, Calhoun posted multiple statements on various social media platforms indicative of his intent to "stop the steal" and prevent the final certification of the 2020 presidential election. He then followed through on his intent and traveled from his home in the state of Georgia to Washington, D.C. On January 6th, Calhoun was one of the very first rioters to unlawfully enter the Capitol grounds and eventually the building, itself. In doing so, he participated with a mob of individuals who ultimately were able to stop and delay the vote certification. Calhoun now finds himself facing five criminal charges as a result of his behavior on January 6.

In his motion, Calhoun contends that his social media posts "are a form of creative writing and artistic expression and they are entitled to protection under the First Amendment. ECF 121 at 7-8. While certainly creative, Calhoun's argument lacks merit. In support of his claim, Calhoun relies primarily on a case from the District of Maryland, *United States v. Cassidy*, 814 F. Supp. 574 (D. Md. 2011). His reliance on *Cassidy* is misplaced. In *Cassidy*, the defendant was charged with one count of 18 U.S.C. § 2261A(2)(A), an interstate stalking statute. *Id*. at 576. Specifically, the defendant was accused of using an interactive computer service "to engage in a course of conduct that caused substantial emotional distress to a person," and that he intended to do so. *Id*. Cassidy filed a motion to dismiss the indictment arguing that the statute violated the First Amendment because (1) it was overbroad; (2) it was unconstitutional as applied to the defendant;

and (3) it was unconstitutionally vague. *Id*. at 581. The district court dismissed the indictment holding that the statute was unconstitutional as applied to the defendant, *id*. at 587, and, having reached that conclusion, declined to address the facial challenges. *Id*.

Here, Calhoun has already filed a motion to dismiss the § 1512(c)(2) charge that included facial challenges and, unlike the *Cassidy* court, this Court has denied Calhoun's motion. *See* July 11, 2022 Minute Entry. Further, Calhoun's § 1512(c)(2) charge is *not* the result of the statements that he made on social media before, during, and after his entry into the Capitol building on January 6, 2021. His statements, in and of themselves, are not criminal, but would be introduced "to establish the elements of a crime or to prove motive or intent" as "commonly" occurs during criminal trials. *Wisconsin v. Mitchell*, 508 U.S. 476 (1993). Calhoun is charged because he knowingly attempted to and did obstruct and impede the 2020 election certification on January 6, 2021, and his social media posts underscore both his intent to stop the certification and his motive—namely, his belief that the election results were fraudulent—for doing so. Calhoun was one of the very first rioters to unlawfully enter the United States Capitol and he walked around for nearly 30 minutes before finally leaving the building. Calhoun used unlawful means to achieve his goal of stopping what he believed was a fraudulent election and the fact finder should properly be permitted to consider his social media posts to reach this conclusion beyond a reasonable doubt.

**II.     The Probative Value of Calhoun's Social Media Posts Far Outweighs Any Unfair Prejudice Pursuant to Rule 403.**

Calhoun next argues that, even if this Court is inclined to permit the fact finder to consider his social media posts, "the content, writings, arguments and narratives . . . will inflame the jurors and lead them to reach a decision based on their emotions, rather than on the evidence before them." ECF No. 121 at 8. Thus, he argues, the statements should be excluded pursuant to Rule

403. However, the probative value of Calhoun's posts significantly outweigh any perceived unfair prejudice and should properly be presented to the trier of fact.

The decision to admit evidence pursuant to Rule 403 "should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Johnson*, 802 F.2d 1459, 1464 (D.C. Cir. 1986) (quotations omitted). Judge Contreras' opinion in *United States v. Fitzsimons*, --F.Supp.3d --, 2022 WL 1658846, is instructive on this issue. In *Fitzsimons*, the defendant, like Calhoun, was charged with a violation of 18 U.S.C. § 1512(c)(2). *Id*. at *1. In December 2020, Fitzsimons made a series of four phone calls to Congressional offices that referenced his belief that the 2020 presidential election was illegitimate and fraudulent. *Id*. Judge Contreras found that the calls "directly link[ed] Fitzsimons's beliefs about election fraud to his decision to travel to D.C. on January 6 and show[ed] that . . . he was there because of the certification of the electoral college vote." *Id*. at *6. He also found that the "statements were directly relevant to what the Government claims is Fitzsimons's motive and purpose that day: to obstruct the certification of the electoral college vote, by violence if necessary." *Id*. In balancing the admission of Fitzsimons's statements during the phone calls, Judge Contreras held that the evidence was not unfairly prejudicial. *Id*. The court explained, "[m]erely demonstrating Fitzsimons's politics is not enough to be unfairly prejudicial or substantially outweigh the probative value." *Id*.

Here, Calhoun's social media posts were made within two months of his trip to Washington D.C. in January 2021. Like Fitzsimons, the statements relate to Calhoun's strongly held belief that the 2020 election was fraudulent and stolen. They further help explain why Calhoun was in Washington, D.C. on January 6, 2021, as well as why he found himself inside the Capitol building.

…

…

There is further nothing particularly disturbing or shocking about Calhoun's statements. Therefore, any prejudicial effect will not "substantially outweigh" the probative value of the statements.

In any case, any prejudice that may result from introduction of Calhoun's statements may be cured by a proper limiting instruction. As this Court has recognized, "[t]he D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, No. 12-CR-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider evidence of Calhoun's social media posts only in relation to his motive, intent, and lack of mistake or accident. When a clear limiting instruction is provided to a jury, "'it must be presumed that the jury conscientiously observed it.'" *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 367 (1963) (quoting *United States v. Harris*, 211 F.2d 656, 659 (7th Cir. 1954)). Accordingly, the Government submits that the Court should – consistent with the general rule of inclusion in such instances – permit testimony regarding this probative, relevant evidence, and can guard against any undue prejudice by providing a limiting instruction.

**III.    Calhoun's Social Media Posts Relate Directly to Calhoun's Knowledge and Intent are Necessary to Prove Count 1 of the Indictment.**

Finally, Calhoun argues that his social media posts "do not relate to, or provide the basis for, the acts alleged in the January 12, 2022 superseding indictment." ECF No. 121 at 9. As explained above, as to his violation of 18 U.S.C. § 1512(c)(2), Calhoun's social media posts go directly to his corrupt intent, as well as his knowledge of the 2020 presidential election certification on January 6, 2021—necessary elements of the § 1512 charge. The social media posts should not be excluded at trial.

There is further nothing particularly disturbing or shocking about Calhoun's statements. Therefore, any prejudicial effect will not "substantially outweigh" the probative value of the statements.

In any case, any prejudice that may result from introduction of Calhoun's statements may be cured by a proper limiting instruction. As this Court has recognized, "[t]he D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury." *United States v. Young*, No. 12-CR-0042 (BAH), 2013 WL 12430550, at *6 (D.D.C. July 22, 2013) (citing cases). The Court can instruct the jury to consider evidence of Calhoun's social media posts only in relation to his motive, intent, and lack of mistake or accident. When a clear limiting instruction is provided to a jury, "'it must be presumed that the jury conscientiously observed it.'" *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 367 (1963) (quoting *United States v. Harris*, 211 F.2d 656, 659 (7th Cir. 1954)). Accordingly, the Government submits that the Court should – consistent with the general rule of inclusion in such instances – permit testimony regarding this probative, relevant evidence, and can guard against any undue prejudice by providing a limiting instruction.

**III.    Calhoun's Social Media Posts Relate Directly to Calhoun's Knowledge and Intent are Necessary to Prove Count 1 of the Indictment.**

Finally, Calhoun argues that his social media posts "do not relate to, or provide the basis for, the acts alleged in the January 12, 2022 superseding indictment." ECF No. 121 at 9. As explained above, as to his violation of 18 U.S.C. § 1512(c)(2), Calhoun's social media posts go directly to his corrupt intent, as well as his knowledge of the 2020 presidential election certification on January 6, 2021—necessary elements of the § 1512 charge. The social media posts should not be excluded at trial.

## **CONCLUSION**

For the foregoing reasons, Calhoun's Motion in Limine to Exclude the Entry of Evidence and/or Argument Regarding Defendant's Social Media Posts should be denied.

                                              Respectfully submitted,

                                              MATTHEW M. GRAVES
                                              United States Attorney
                                              D.C. Bar No. 481052

By:        /s/
                                              JENNIFER M. ROZZONI
                                              NM Bar No. 14703
                                              Assistant United States Attorney - Detailee
                                              201 3rd Street, Suite 900
                                              Albuquerque, NM 87102
                                              Tel. No. 505-350-6818
                                              Email: jennifer.m.rozzoni@usdoj.gov