IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                      ) | Case No. 21-cr-00116 |
| ) | |
| WILLIAM MCCALL CALHOUN, JR ) | |
| *Defendant.*            ) | |

_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO THE UNITED STATES'
MOTION IN LIMINE TO LIMIT THE CROSS-EXAMINATION OF U.S.
SECRET SERVICE AGENCY WITNESSES**

_____

COMES NOW, Defendant, William McCall Calhoun, Jr., by and through counsel, Jessica N. Sherman-Stoltz, Esq., and respectfully files this response and memorandum in opposition to the United States' Motion in Limine to Limit the Cross-Examination of U.S. Secret Service Agency Witnesses (ECF Doc. No. 137).

I.   **INTRODUCTION AND OVERVIEW**

In a Motion in Limine (MIL) filed by the Government on December 9, 2022 (ECF Doc. No. 137), and in relation to Counts Two and Three of the Superseding Indictment charged against Mr. Calhoun on January 12, 2022, the Government ask the Court to grant their motion limiting the Defendant's cross-examination of any U.S. Secret Service witness that will testify against the Defendant in his upcoming trial proceedings. Granting the Government's MIL would effectively limit Mr. Calhoun's rights under the Sixth Amendment to confront witnesses against him. Specifically the

Government seeks to foreclose Mr. Calhoun from questioning any U.S. Secret Service witness regarding the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur; and

2. Details about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

*See* Govt's MIL, ECF Doc. No. 137, p. 2.

Among five charges, Mr. Calhoun is charged with violating 18 U.S.C. § 1752(a)(1) (Count Two of the Superseding Indictment, ECF Doc. No. 83, p. 2), and 18 U.S.C. § 1752(a)(2) (Count Three of the Superseding Indictment, *Id.*). In addition to several other elements, the Government will have to prove, beyond a reasonable doubt, the Mr. Calhoun entered a "restricted building or grounds," to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B).

Allowing the Government to present a witness, and then to limit the Defendant's cross-examination of that witness, must be scrutinized with great deference toward satisfying the Fifth and Sixth Amendments. It is important to note that Mr. Calhoun could just call that same U.S. Secret Service witness, thus allowing him direct examination of that witness. In that light, the operation of Federal Rule of Evidence

(FRE) 611(b) should be considered.

## II.     LEGAL STANDARD

### A. *The Constitutional Right of Cross-Examination*

The Sixth Amendment establishes an integrated bundle of rights that constitutes a larger right to an effective defense in our system of jurisprudence. *In re Oliver*, 333 U.S. 257, 272-73 (1948). These rights include the right to compulsory process, the right to reasonable notice of criminal charges, the right to be heard in court, the right to offer testimony, the right to counsel, and the right to examine adverse witnesses. *Id*. at 273. The Confrontation Clause of the Sixth Amendment enshrines this latter right, providing that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In crafting this provision, the founding generation drew on English common law traditions. *Crawford v. Washington*, 541 U.S. 36, 43 (2004). These traditions emphasized the importance of "live testimony in court subject to adversarial testing" as the surest path to truth. *Id*.

As stated in *Crane v. Kentucky*, 476 U.S. 683, 690-691 (1986):

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, supra, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington v. Texas*, 388 U.S. 14, 23 (1967); Davis v. Alaska, 415 U.S. 308 (1974), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." [*California v. Trombetta*, 467 U.S.479, 485 1984]; cf. *Strickland v. Washington*, 466 U.S. 668, 684-685 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment").

As stated in *Lindsey v. United States*, 133 F.2d 368, 77 U.S. App. D.C. 1 (D.C. Cir. 1942):

> ….the efficacy of cross-examination as a weapon for the discovery of truth been recognized in our system of law that cross-examination is held to be a right, not a mere privilege. It is often stated that the control of cross-examination is within the discretion of the trial judge, but it is only after a party has had an opportunity substantially to exercise the right of cross-examination that discretion becomes operative. *Id*. at 369.

The *Lindsey* Court further stated:

> . . . *A full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, not the mere privilege, of the party against whom he is called*, and a denial of this right is a prejudicial and fatal error. It is only after the right has been substantially and fairly exercised that the allowance of cross-examination becomes discretionary. [Citations Omitted] (emphasis in original) *Id* at 369.

> "Counsel often cannot know in advance what pertinent facts may be elicited on cross-examination. For that reason it is necessarily exploratory; and the rule that the examiner must indicate the purpose of his inquiry does not, in general, apply. [Citations Omitted]. *It is the essence of a fair trial that reasonable latitude be given the cross-examiner*, even though he is unable to state to the court what facts a reasonable cross-examination might develop. (emphasis in original) *Id*. at 370.

"There are few subjects, perhaps, upon which [the Supreme] Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed. 923 (1965).

B. *Motions in Limine*

Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds. *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) only for general proposition that courts use motions in limine to manage trials); *Bouchard v. American Home Products*, 213 F. Supp. 2d 802, 810 (N.D. Ohio 2002). Evidentiary rulings, especially those addressing broad classes of evidence, should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see* also *Starling v. Union Pac. R.R.*, 203 F.R.D. 468, 482 (D. Kan. 2001) ("it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there"). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Hawthorne Partners*, 813 F. Supp. at 1401.

C. *Federal Rules of Evidence*

The Government cites to Federal Rules of Evidence (FRE) 401, 403 and 611 and the motion itself mixes the provisions in the analysis. It is important to review the operation of these rules.

Under Rule 401 - Test for Relevant Evidence:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

FRE 401(b) does not depend on the subject matter of the witness testimony upon direct examination as set out as an issue under FRE 611(b). That testimony on direct examination may or may not provide an additional bridge to provide relevance. However, the "action" is the full case and all charges against Mr. Calhoun.

The Fed. R. Evid. 401 Advisory Committee Notes makes some general additional observations:

- Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.

- The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action.

- The fact to which the evidence is directed need not be in dispute.

- Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.

Under Rule 403 - Excluding Relevant Evidence for Prejudice, Confusion, Waste

of Time, or Other Reasons:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Among the points in the Fed. R. Evid. 403 Advisory Committee Notes:

> Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission. Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1, 12-15 (1956); Trautman, Logical or Legal Relevancy-A Conflict in Theory, 5 Van. L. Rev. 385, 392 (1952); McCormick §152, pp. 319-321.

Under FRE 611(b) Scope of Cross Examination:

> Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination.

Cross-examination under the first sentence of FRE 611(b) depends either on subject matter or witness's credibility. However, the second sentence of FRE 611(b) makes clear the court may allow inquiry into additional matters as if on direct examination. Such inquiry would still be subject to FRE 401 and 403 but relevant inquiry that does not violate FRE 403 is permissive. Further guidance for the court comes in FRE 611(a):

> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth;(2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment.

Similarly, FRE 102 states:

> These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the

>development of evidence law, to the end of ascertaining the truth and securing a just determination.

The rationale for full cross-examination is augmented by the proposition that Mr. Calhoun can call the Secret Service witness separately as defense witness. Moreover, under FRE 607 "Any party, including the party that called the witness, may attack the witness's credibility."

The Fed. R. Evid. 611 Advisory Committee Notes make some relevant points. The Notes state that on the one hand some of the notes suggest a practice of limited may promote orderly presentation of the case. Citing *Finch v. Weiner*, 109 Conn. 616, 145 A. 31 (1929). The Notes go on with some other points to emphasize here:

>There is another factor, however, which seems to swing the balance overwhelmingly in favor of the wide-open rule. This is the consideration of economy of time and energy. Obviously, the wide-open rule presents little or no opportunity for dispute in its application. The restrictive practice in all its forms, on the other hand, is productive in many court rooms, of continual bickering over the choice of the numerous variations of the 'scope of the direct' criterion, and of their application to particular cross-questions. These controversies are often reventilated on appeal, and reversals for error in their determination are frequent. Observance of these vague and ambiguous restrictions is a matter of constant and hampering concern to the cross-examiner.

### III.    **ARGUMENT**

Mr. Calhoun's position is that the Government's cited case law is either inapposite, or provides limited guidance to support their arguments, and their argument of relevancy is inconsistent with the statutory charges and the necessary essential allegations of fact.

A. *Matters Not in Dispute*

Mr. Calhoun is agreeable to not cross-examining any U.S. Secret Service witness on the following:

1. Secret Service protocols related to the locations where protectees or their motorcades are taken when emergencies occur;

2. The nature of Secret Service protective details, including the number or type of assigned agents on protective details, except as explained below.

B. *Cross-Examination that Should Not be Excluded*

Mr. Calhoun's position is that there are legitimate areas of cross-examination that should not be limited. The following are examples of Mr. Calhoun's cross-examination that should not be limited and could be considered as "details about the nature of Secret Service protective details" (this list is not exhaustive):

1. As it relates to the nature and extent of the Secret Service's detail within the Capitol Building;

2. The frequency of the Vice-President's "visits" to the Capitol Building;

3. What defines a protectee as a "visitor" of a specific location;

4. What constitutes a restricted area and how is that identifiable to the general public;

5. How do the Secret Service personnel identify themselves to the general

       public when they are in a position of protective detail;

6. Are all restricted areas handled in the same manner and protocol as it was in the Capitol Building;

7. How was a restricted area declared any other time that the Vice-President was visiting the Capitol Building;

8. Was the declared area of restriction on January 6th handled in the exact same manner as all prior "visits" by the Vice President to the Capitol Building; if not, why;

9. How is this area of restriction handled in other locations that the Vice-President and other protectee's visit;

10. What is a reasonable area of restriction in order to serve a legitimate purpose in protecting a Secret Service protectee.

At a minimum, any testimony regarding the establishment of a restricted area creates the subject-matter of the restricted area for purposes of FRE 811. In particular, issues concerning timing and location become important. What is relevant for a restricted area with respect to Mr. Calhoun is what were the postings, cordons, or other demarcations at the time of their alleged violations. Police cordons were changing after 2pm and the changes reflect relevant information and reflect the legal definitions. Mr. Calhoun does not know the Government's theory of the case with respect to conduct that constitutes disorderly and disruptive conduct under 18

U.S.C.§1752(a)(2) or 40 U.S.C. § 1504(e)(2)(D). Anything that disputes, questions, or explores the Government's theory of the case or lack of Government theory of the case respecting those terms is relevant.  Mr. Calhoun also does not know the Government's theory of the case with respect to conduct that constitutes to parade, demonstrate, or picket. Anything that disputes, questions, or explores the Government's theory of the case, or lack of Government theory of the case, respecting those terms is relevant. Information on the prior practices of the Secret Services may be relevant to any of those questions.  Questions regarding "protocols" would be relevant.  Accordingly, addressing whether the Government is pursuing a January 6, 2021 specific set of definitions or definitions, operations, and practices that are the same across days and events is relevant for definition and impeachment.  Such questions would be relevant to the Secret Service witnesses because the Secret Service is always relevant to the implementation of 18 U.S.C.§1751(a) and (c).  The coordination with the Secret Service and other parties both on January 6, 2021, and as a matter of practice is relevant for the same reasons. In the instant case the operation of an alleged restricted area also includes the interactions between the Secret Service and the Capitol Hill police, how any such restricted areas were or had been enforced, the role of police communication and many other relevant items as further discussed below.  As discussed here, the requested category limitations (specifically number 2), are overly broad and may impede valid and relevant cross-examination.

IV. **CONCLUSION**

For the foregoing reasons, Mr. Calhoun respectfully requests the Court deny the Government's Motion in Limine to Limit the Cross-Examination of any U.S. Secret Service witness.

Dated: December 23, 2022

Respectfully Submitted,

WILLIAM MCCALL CALHOUN, JR.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslg.law

**CERTIFICATE OF SERVICE**

I hereby CERTIFY that on this the 23rd day of December 2022, a true and correct copy of the foregoing *Defendant's Response in Opposition to the United States' Motion in Limine to Limit the Cross-Examination of U.S. Secret Service Agency Witnesses* with the Clerk of Court via the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.