**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 21-CR-116 (DLF)** |
| | **:** | |
| **WILLIAM McCALL CALHOUN,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**SECOND  MOTION FOR A BILL OF PARTICULARS**

The United States, by and through the assigned Assistant United States Attorneys, respectfully opposes the Defendant's second motion for a bill of particulars in this matter pursuant to Federal Rule of Criminal Procedure 7(f).

**BACKGROUND**

Defendant William McCall Calhoun's renewed motion is the second time he has moved for a bill of particulars.  ECF No. 139.  Defendant moved before on March 25, 2021.  ECF No. 25. The government responded to that motion on March 30, 2021, ECF No. 30, and the Court denied it on April 8, 2021.  *See* Government's Opposition (ECF 30) *and* Minute Order, dated April 8, 2021.  Beyond his acknowledgement that he has received discovery, and his claim that he cannot identify the evidence upon which the government will rely, Defendant's second motion fails to explain what has changed since the Court denied his request almost two years ago.

As set forth in the government's original opposition, this defendant has repeatedly been advised of the charges and more than once, and very directly, been confronted with the evidence against him.  Relevant to defendant's "renewed" argument now, and his incredulous assertion that he "has been unable to identify any 'conduct' that took place in the District of Columbia, or

'elsewhere,' that corruptly obstructed, influenced, impeded, disrupted, or was disorderly, while a session of Congress, official proceeding, function, or Government business was taking place …" ECF No. 139, the defendant was presented with the evidence against him in January of 2021, at a detention hearing in the Middle District of Georgia.  See Exhibit 1 to Government's Opposition to Defendant's Motion for Release (ECF No. 14).  At that time, the government presented testimony and produced 35 exhibits in support of the charges against this defendant.  ECF No. 14.  The Magistrate Judge in Georgia relied on that testimony and the evidence to find – with very explicit explanation and citations to government exhibits – that probable cause supported each of the offenses charged in the complaint dated January 12, 2021.  ECF No. 1.  The Magistrate further found that the "weight of the evidence is likely to be strong and indicates an ongoing and escalating pattern of threats and threatening behavior culminating in the violent entry of a mob on the United States Capitol."  ECF No. 14.  In other words, within days of his arrest, Defendant was on notice of the government's theory of the case and of the evidence it will use to prove his guilt.

The Magistrate Judge described the government's evidence and found in great detail that the nature of the offenses involved "credible threats of violence against political opponents and intentional participation in violent civil insurrection."  Judge Weigle also found that the "weight of the evidence is likely to be strong and indicates an ongoing and escalating pattern of threats and threatening behavior culminating in the violent entry of a mob on the United States Capitol."  Order of Detention, dated January 25, 2021, at p. 2 (ECF No. 14).  He also specifically cited the 35 exhibits produced by the government and described them in the court's order.  *Id*.

Specifically, Magistrate Judge Weigle found:

> Evidence presented by the Government showed that Defendant made a series of violent and threatening statements on social media, including threats to "storm" Washington, D.C., and wage a civil war against political opponents whom he described as Democrats, communists, the Deep State, and BLM-Antifa.  Defendant took action on those

threats by participating, intentionally and with premeditation, in the violent riot that led to the takeover of the United States Capitol Building on January 6, 2021.

*Id*.

Magistrate Judge Weigle described the exhibits produced by the government, which included "numerous social media posts between October 2020 and January 2021, indicating Defendant's intent to wage a "civil war" and "slaughter" Democrats and other political opponents." Included among those threats were statements that "I have tons of ammo. Gonna use it, too – at the range and on racist democrat communists." *Id*. The court also acknowledged that the defendant had stated, "we're loading AR15 magazines and getting range time in. My AR15 set up will do head shots at 200 meters no problem. You have no clue what's coming," and "For my part, I'll be slinging enough hot lead to stack you commies up like cordwood." Defendant also stated, "War is coming. It's the only way to deal with our domestic Communist problem. Ruthlessness is in order" and "The only remedy for BLM-Antifa communism is violent retribution against the media and the democrats." Defendant also threatened, "You won't be laughing when Patriots go door to door executing you commies" and "I won't struggle pulling a head shot at 200 meters day or night. Smoke that over commie bitch." *Id*., at 2-3.

Defendant explicitly stated his intention to invade and overtake the Capitol building. On October 20, 2020, he posted, "Patriots be ready to storm Washington! If you're willing to go to Washington in November to 'peacefully protest' with AR15 in hand, upvote this." *Id*., at 3. Then, on January 5, 2021, defendant stated that he was "Headed to D.C. to give the GOP some back bone." He encouraged "armed Patriots" to "show up" in the District of Columbia, and, on January 6, 2021, just before the mob broke into the Capitol, defendant posted a picture of himself outside the Capitol and stated, "We're going to get inside the Capitol before this ends." *Id*. Defendant made numerous additional posts and described, in his own words, the "hostile takeover" of the

nation's Capitol.  *Id*.  Specifically, this defendant described his own intent and the violent and corrupt nature of the attack:

> Patriots have taken the Capitol building.  We overran multiple police barricades and swarmed the building.  We busted through – thousands of us swarmed in.

> There was a last police barricade inside, and we had packed in right up to them.

> Somebody yelled "push through", so we did and the shock of our momentum brushed them aside – some people we're [*sic*] bleeding pretty badly by that point.

> After we had overrun the last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members.

> Then we swarmed upstairs through the rotunda admiring the amazing art work but at the same time looking for members of Congress, as by this time we physically owned the Capitol – all law enforcement had retreated to the perimeter and even more thousands were trying to push in!

> And get this – the first of us who got upstairs kicked in Nancy Pelosi's office door and pushed down the hall towards her inner sanctum, the mob howling with rage – Crazy Nancy probably would have been torn into little pieces, but she was nowhere to be seen – then a swat team showed, and we retreated back to the rotunda and continued our hostile take over of the Capitol Building.

*Id.*, at 3-4.

Defendant also posted videos that matched his descriptions and showed him as part of the "howling" mob that stormed the halls of Congress, pounding on office doors, and "looking for members of Congress."  The mob did in fact break into the Speaker's office, "howling with rage." It was only fortunate that they did not find her.  Defendant, however, continued to describe the attack and his role in it.  "We physically took control of the Capital [*sic*] building in a hand to hand hostile takeover," he stated, and "We occupied the Capitol and shut down the Government – we shut down their stolen election shenigans."  He also admitted that "I was there and saw it all.  My buddy [co-defendant] Andy Nalley and I were in the first two hundred  to rush up the steps and inside after the Vanguard had clashed hard with the police and had made them retreat.  The military

isn't going to save the Democrat Communists.  They are done."  Defendant stated very clearly, "Today we brought the Government to its knees with no weapons," and then he very ominously warned, "Now we're all going back armed for war and the Deep State is about to get run out of DC."  *Id.*, at p. 5.

More ominous still was the fact that the defendant did actually possess many weapons and ammunition at his sister's residence in Georgia.  The court, therefore, noted that defendant possessed "at least two AR15 rifles, four shotguns, a pistol, a set of brass knuckles, and hundreds of rounds of ammunition" at the time of his arrest.  *Id.*

Hence, based on the testimony and the evidence submitted by the government:

> Defendant showed that his intentions were more than mere fantasies when he participated in the violent invasion of the United States Capitol during a joint session of Congress to certify the results of a national election, an invasion that resulted in the deaths of five people, including one law enforcement officer.  Defendant indicated that he intended to participate in further, armed acts of violence.  At the time of his arrest, Defendant was evading law enforcement and was heavily armed.

*Id.*, at p. 6.

Judge Weigle's findings were bolstered by the defendant's subsequent admissions during the hearing before this Court on March 5, 2021 that he in fact made the statements relied on in the Judge Weigle's order.  *See* Transcript of the Motion Hearing, Vol. I, at pp. 15-17 (ECF No. 32). While defendant did try to offer multiple, nonsensical excuses for his words (characterizing them as "narrative," "humor," "satire," "trolling," or claiming portions had been edited), he also specifically admitted to them.  *See* 3/5/21 Transcript, at pp. 16 ("Yes.  I did write that, but you've got to understand, I had a fairly significant following on social media …") and 45 ("Look, I posted every video that I took on Facebook.").  Pertinent to defendant's motion at this time is the fact that he was, again, confronted very directly with the evidence against him on March 5, 2021 as well. ECF No. 32.

**APPLICABLE LAW**

Under the Federal Rules of Criminal Procedure, an indictment need only include "a plain, concise, and definite written statement of the essential facts constituting the offense charged," Fed. R. Crim. P. 7(c), but a "court may direct the government to file a bill of particulars" clarifying the allegations in the indictment, *id.* 7(f). Defendants are not entitled to a bill of particulars as a matter of right, because the test is whether such particulars are "necessary." Charles Alan Wright & Andrew Leipold, *Federal Practice and Procedure: Criminal* § 130 (4th ed.2008).

"A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 73–74 (D.D.C. 2019) (*citing United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987)). "[I]f the indictment is sufficiently specific," however, "or if the requested information is available in some other form, then a bill of particulars is not required." *Id.*

"A bill of particulars properly includes clarification of the indictment, not the government's proof of its case." *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 174 (D.D.C. 2015) (internal quotation marks omitted). "[A] bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). In rare circumstances, a bill of particulars might be appropriate even if what it seeks is "an identification, within reasonable limits, of information [already] in the possession of the accused" or "information" that is "evidentiary in nature." *United States v. U.S. Gypsum Co.*, 37 F. Supp. 398, 402–03 (D.D. C 1941). But a bill of particulars is inappropriate if

"by reasonable investigation in the light of information contained in the indictment, or otherwise furnished by the prosecution," the defendant could avoid "prejudicial[ ] surprise[ ]." *Id*. at 404.

In deciding whether to order a bill of particulars, "the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial." *United States v. Sanford Ltd*., 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (internal quotation marks omitted); *United States v. Martinez*, 764 F.Supp.2d 166, 174 (D.D.C. 2011); *United States v. Diaz*, 303 F.Supp.2d 84, 89 (D.CT. 2004) ("[B]ecause a bill of particulars serves to restrict how the government may present its case at trial, the question is not whether the information sought would be beneficial to the defendant, but whether it is necessary for his defense."); accord *United States v. Mahdi*, 598 F.3d 883, 891 (D.C.Cir.2010) (District Court did not err in denying request for bill of particulars since "government was not required ... to provide notice of the intrinsic evidence" of uncharged acts relevant to establishing the charged conspiracy).

Ultimately, "the determination of whether a bill of particulars is necessary rests within the sound discretion of the trial court." *Butler*, 822 F.2d at 1194.  To establish an error, the defendants must "demonstrate surprise or prejudice by the lack of particularization." *United States v. Pollack*, 534 F.2d 964, 970 (D.C.Cir.1976).  That is not this case.

## ARGUMENT

The record here is very different from much of the caselaw and is also distinguishable from instances where this Court and other Judges in our Circuit have ordered a bill of particulars, primarily because detailed information, including testimony and actual trial exhibits, has already been provided to the defendant.  That information was produced to defendant beyond the

indictments in hearings and from the government in anticipation of trial on February 1, 2023. Indeed, the defendant himself is a lawyer and has demonstrated an understanding of the charges against him, as when he testified, "I probably committed a misdemeanor trespass, and I know that was wrong, and I feel like I've already been punished for that.  I would plead guilty to that."  3/5/21 Transcript, at p. 58 (ECF No. 32).  He also testified at the March 5, 2021 hearing about his postings and videos.  He admitted that he made and wrote them.  It is not credible for him to claim now that he is "unable to identify them" or that the government should be required to show them to him again.  That has already happened, and it has happened more than once.

Chief Judge Howell denied a defendant's motion for a bill of particulars in *Sanford Ltd*., because she found "the superseding indictment and other information available to the defendants through discovery provide[d] sufficient detail regarding the nature and the details of the offenses charged to afford the defendants a full and fair opportunity to prepare for and avoid surprise at trial."  *Sanford Ltd.*, 841 F. Supp. 2d at 316 (D.D.C. 2012)  (Citing *Butler*, 822 F.2d at 1193 and noting that "if the requested information is available in some other form [apart from the indictment], then a bill of particulars is not required.").  Further, in *Martinez*, 764 F.Supp.2d 166, 174 (D.D.C. 2011), Judge Lamberth denied the defendant's motion for a bill of particulars on a similar basis, noting that the "government also summarized the factual background of this case at length in its opposition, which could indicate the facts the government deems relevant to its prosecution," and that "[a]lthough the purpose of a bill of particulars is not to provide discovery to defendant, the fact that the government has provided this information [in its opposition] shows that the requested information is available in another form." (Citing (like *Sanford*) to *Butler*, 822 F.2d at 1193).

In this way, defendant's current motion for a bill of particulars is particularly misplaced because detailed information, testimony, and trial exhibits are already in the docket. As described, this case has been the subject of a lengthy preliminary examination in the Middle District of Georgia and subsequent litigation regarding release of the defendant before this court. ECF No. 14. Those filings include transcripts of testimony and 35 government exhibits, as well as a detailed explanation and findings based on those exhibits and testimony. *Id*. The government has also provided a list of exhibits and descriptions in preparation for trial. Additionally, defendant has testified and admitted not only his planned and premeditated participation in the events of January 6, 2021, but in response to a question from the Court admitted that he "probably committed a misdemeanor trespass, and I know that was wrong" (quickly adding "I feel like I've already been punished for that . . . I would plead guilty to that."). March 5, 2021 Reporter's Transcript, at p. 58 (ECF No. 32). As stated, defendant also admitted to having posted the videos and written the messages in the exhibits. Id., at pp. 15-17, 43-45 (ECF No. 32).

Defendant's justification, that he has reviewed the discovery and the government's list of exhibits and cannot identify any conduct or where a building was restricted (ECF No. 139) is just his own nonsense. He ignores his own description of the attack on the Capitol, the assaults against law enforcement officers, threats against the Speaker of the House, the howling mob "looking for members of Congress." In his own words and the videos he recorded himself, "We physically took control of the Capital [sic] building in a hand to hand hostile takeover … We occupied the Capitol and shut down the Government – we shut down their stolen election shenigans." Defendant acknowledged, "I was there and saw it all. My buddy Andy Nalley and I were in the first two hundred  to rush up the steps and inside after the Vanguard had clashed hard with the police and had made them retreat. The military isn't going to save the Democrat Communists.

They are done." Defendant knows what he did. He described it himself, and he recorded the videos that he attached to his own words.

Magistrate Judge Weigle summarized the evidence and its import to the defendant after his arrest:

> Defendant showed that his intentions were more than mere fantasies when he participated in the violent invasion of the United States Capitol during a joint session of Congress to certify the results of a national election, an invasion that resulted in the deaths of five people, including one law enforcement officer. Defendant indicated that he intended to participate in further, armed acts of violence. At the time of his arrest, Defendant was evading law enforcement and was heavily armed.

ECF 14; Exh. 1, at p. 6.

Defendant is not entitled to a bill of particulars to tell him what has already been shown to him and what he himself has described, recorded and posted many, many times over. The motion should be denied.

## **CONCLUSION**

For the foregoing reasons, the United States, by and through the undersigned Assistant

United States Attorneys, submits that the Defendant's renewed motion for a bill of particulars should be **DENIED**.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


/s/ *Christopher Brunwin*
CHRISTOPHER BRUNWIN
California Bar No. 158939
Assistant United States Attorney Detailee
United States Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, California 90012
(213)894-4242
christopher.brunwin@usdoj.gov

SARAH MARTIN
D.C. Bar Number 1612989
Assistant United States Attorney
United States Attorney's Office
601 D Street NW
Washington, D.C. 20001
(202)538-0035
sarah.martin@usdoj.gov