**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA** : **Cr. No. 1:21-CR-00116 DLF**

**v.** :

**WILLIAM McCALL CALHOUN,** :

**Defendant.** :

**UNITED STATES' RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

The United States respectfully submits its Response to Defendant William McCall Calhoun's Motion to Dismiss the Superseding Indictment, filed on December 23, 2022. ECF No. 140. The Court should deny the motion in its entirety.

**BACKGROUND**

On January 6, 2021, a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. While the certification process was proceeding, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the Joint Session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

Defendant Calhoun and his co-defendant Verden Andrew Nalley[1] entered the United States Capitol as part of the large crowd that had gathered to protest the 2020 election on January 6, 2021. The two knew each other from playing in the same local band in Georgia, and traveled from

[1] Defendant Nalley pled guilty pursuant to a plea agreement and was sentenced on March 10, 2022. ECF No. 97.

Georgia to the District of Columbia together. Defendant Calhoun was outspoken on social media in the weeks and months leading up to January 6th about the importance of traveling to the District of Columbia to "Stop the Steal." ECF No. 1-1 at 5-7. He also posted on January 6th, "We're going to get inside the Capitol before this ends" and later "Patriots have taken the Capitol Building." *Id.* at 6-7. Defendant Calhoun entered the Capitol building on January 6th and spent approximately 30 minutes inside the building.

Based on his actions on January 6, 2021, Defendant Calhoun is charged with violations of 18 U.S.C. §§ 1512(c)(2) and 2, Obstruction of an Official Proceeding; 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds; 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds; 40 U.S.C. § 5104(e)(2)(D), Disorderly Conduct in a Capitol Building; and 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. ECF No. 83.

On March 21, 2022, Defendant filed his first Motion to Dismiss Count One of the Superseding Indictment (ECF No. 101), which the Court denied during a hearing on July 11, 2022. Defendant Calhoun now moves again for dismissal of Count One of the Superseding Indictment, raising the same arguments previously addressed by the Court. ECF No. 140 at 6-13. Defendant also moves to dismiss the remaining counts of the Superseding Indictment. ECF. 140. Defendant's arguments regarding Count One were previously rejected by this Court and his new arguments as to the remaining counts lack merit. Defendant's motion should be denied in its entirety.

## ARGUMENT

### I. The Court Should Deny Calhoun's Motion to Dismiss Count One (Obstruction of an Official Proceeding, in Violation of 18 U.S.C. § 1512).

Defendant argues that Count One, charging a violation of 18 U.S.C. § 1512(c)(2), should

be dismissed because: (1) the government has not provided sufficient evidence to support the charge; and (2) the statute is unconstitutionally vague. ECF No. 140. As set forth below, those arguments lack merit.

**A. The Superseding Indictment Sufficiently Alleges Obstruction of an Official Proceeding.**

First, Defendant argues that the government "has not provided any evidence to support Mr. Calhoun having knowingly engaged in corrupt conduct, taken a step, an action, something that constituted a substantial step toward the commission of the crime of obstructing, influencing, and impeding the official proceeding" or that "Mr. Calhoun knew his actions were likely to affect an official proceeding, or that he was even in the Capitol when an official proceeding was taking place[.]" *Id.* at 7.

As an initial matter, Defendant's sufficiency-of-the-evidence arguments are not appropriate for a pretrial motion to dismiss. Rather, the proper question is whether the indictment is valid. An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished by "echo[ing] the operative statutory text while also specifying the time and place of the offense," *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that

the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). "In deciding a motion to dismiss an indictment, the question before the Court is a narrow one," and the court will not "review the sufficiency of the evidence against the defendant[.]" *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (internal citations omitted). "When considering a challenge to the indictment, a district court is limited to reviewing the face of the indictment; the Court must presume the allegations in the indictment to be true." *United States v. Grider*, 585 F. Supp. 3d 21, 27 (D.D.C. 2022). Thus, "[t]he operative question is whether those allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *Id.* "[T]here are two ways in which an indictment can fail to state an offense: the statutory provision at issue does not apply to the charged conduct . . . or the statutory provision at issue is unconstitutional[.]" *McHugh*, 583 F. Supp. 3d at 10 (internal citations omitted). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 does not authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (explaining that motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40 (BAH), 2020 WL 6342940, at *5 (D.D.C. Oct. 29, 2020)

(collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence).

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See United States v. Bingert*, --- F.Supp.3d ---, 2022 WL 1659163, at *3 (D.D.C. May 25, 2022) (citing *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).)); *United States v. McHugh*, No. 21-cr-453 (JDB), 2022 WL 1302880, at *2 (D.D.C. May 2, 2022); *United States v. Puma*, No. 21-cr-454 (PLF), 2020 WL 823079, at *4 (D.D.C. Mar. 19, 2022) (quoting *United States v. Sunia*, 643 F.Supp. 2d 51, 60 (D.D.C. 2009)). The narrow analysis required by the defense motion is whether the indictment states an offense and provides fair notice to the defendant of the charge against which he must defend. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *Haldeman*, 559 F.2d at 123 ("The validity of alleging the elements of an offense in the language of the statute is, of course, well established."). Only in the rare case where "guilt depends so crucially upon . . . a specific identification of fact" not included in the statutory language will an indictment that restates the statute's language be insufficient. *Id.* at 125 (quoting *Russell v. United States*, 369 U.S. 749, 764 (1962)). The government has met this low bar by stating the date and location of the offense, as well as the statutory elements. *Williamson*, 903 F.3d at 130. Nothing else is required.

While Defendant's position is that the government "has not provided any evidence" to support Count One, ECF No. 140 at 7, the government has produced voluminous discovery, including evidence related to the background facts of January 6th; defendant's conduct and statements prior to, during, and after January 6th via social media search warrant returns; and video footage and pictures depicting Defendant's conduct on January 6th. The underlying dispute

Defendant presents is whether Defendant's conduct on January 6th qualifies as Obstruction of an Official Proceeding. That question can only be resolved by a trial on the merits. Any questions regarding the sufficiency of the evidence are properly raised at that trial, during Defendant's Rule 29 motion. *See* Fed. R. Crim. P. 29; *United States v. Pettaway*, 297 F. Supp. 3d 137, 143 (D.D.C. 2018); *Yakou*, 428 F.3d at 247.

**B. The Court Has Already Ruled that 18 U.S.C. § 1512(c)(2) is Not Unconstitutionally Vague on its Face.**

Second, the Defendant repeats the argument raised in his first Motion to Dismiss, that 18 U.S.C. § 1512(c)(2) is unconstitutionally vague. *Compare* ECF No. 140 at 7-13, *with* ECF No. 101 at 14-19. The parties previously litigated this exact issue, and the Court thoroughly addressed Defendant's arguments and denied his motion on those grounds. 7/11/2022 Transcript at 20:16-24:4. The government will therefore not repeat its response here, but will rely on the arguments in its prior opposition. ECF No. 110.

**II. The Court should also deny Defendant's motion as to Counts Two and Three, alleging violations of 18 U.S.C. § 1752(a)(1) and (2), respectively.**

For the first time, Defendant moves for dismissal of Counts Two and Three of the Superseding Indictment. ECF No. 140 at 13. Defendant argues dismissal is appropriate because (1) "the conduct alleged . . . all arise out of the same criminal conduct without any indication that Congress intended that conduct be punishable under multiple subsections"; (2) "the evidence against Mr. Calhoun . . . is insufficient to support a conviction"; (3) the barriers placed at the Capitol were created by Capitol Police and therefore not "restricted grounds" for purposes of 18 U.S.C. § 1752; and (4) Section 1752 is unconstitutionally vague as applied to Defendant. ECF No. 140 at 13-22.

**A. Counts two and three are not multiplicitous under *Blockburger*.**

Defendant argues that Counts Two and Three, which allege violations of 18 U.S.C. § 1752(a)(1) and (2) respectively, are multiplicitous under *Blockburger* and that Congress did not intend to punish violations of 1752's subsections individually. ECF No. 140 at 15. Not so. Counts Two and Three easily overcome the *Blockburger* test, and Congress clearly intended Section 1752 to establish multiple criminal violations.

Case law explains that "[t]he law protects an individual against multiplicitous indictments to avoid multiple sentences for a single offense and to eliminate the prejudice which such indictments may generate in the eyes of a jury . . . For when an indictment charges numerous offenses arising from the same conduct it may falsely suggest to a jury that a defendant has committed not one but several crimes. *United States v. Clarridge*, 811 F. Supp. 697, 702 (D.D.C. 1992) (internal citations omitted). "Under *Blockburger v. United* States . . . the relevant test for determining whether two counts of an indictment are multiplicitous is . . . whether each count requires proof of an additional fact which the other does not . . . However, the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *United States v. Morrow*, 102 F. Supp. 3d 232, 246–47 (D.D.C. 2015) (internal quotations and citations omitted).

A plain reading of the statutory text reveals that 18 U.S.C. § 1752(a)(1) and (2) contain different elements and therefore overcome the *Blockburger* test:

> (a) Whoever--
>
> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;
>
> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts

> the orderly conduct of Government business or official functions . . .
>
> or attempts or conspires to do so, shall be punished as provided in subsection (b).

18 U.S.C.A. § 1752(a) (internal citations omitted). The statute establishes five separate violations of Section 1752, each containing unique elements. *Id.* The use of "or" to separate the violations further demonstrates Congress's intent to create five separate charges.

**A. The Indictment provides sufficient notice to Defendant as to Counts Two and Three and sufficiency of evidence as to those Counts is not appropriately considered at this stage.**

As with Count One, Defendant moves to dismiss Counts Two and Three, arguing that the Indictment does not adequately specify Defendant's illegal conduct. ECF No. 140 at 16. As laid out above, whether an indictment is valid "is not a question of whether it could have been more definite and certain." *Verrusio*, 762 F.3d at 13 (internal citation omitted), and need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *Haldeman*, 559 F.2d at 124. Rather, the narrow analysis required is whether the indictment states an offense and provides fair notice to the defendant of the charge that he must defend. *See Resendiz-Ponce*, 549 U.S. at 108; *Haldeman*, 559 F.2d at 123. Here, Counts Two and Three include the date and location of the offense, and mirrors the statutory language, therefore providing Defendant sufficient notice of the charges levied. ECF No. 83. Nothing more is required.

**B. Defendant's arguments regarding the "restricted building or grounds" are baseless and have been addressed and rejected by this Court and other Judges.**

Defendant next contends that Counts Two and Three should be dismissed for failure to state a claim because (1) Vice President Mike Pence was not "temporarily visiting" the Capitol; and (2) the United States Secret Service ("Secret Service") did not restrict the Capitol or its grounds

pursuant to the statute. ECF No. 140 at 17-18. Both arguments have been recycled in several other cases arising from the events of January 6, 2021, and rejected consistently, including by this Court.

**1. Multiple Secret Service protectees were temporarily visiting the Capitol grounds on January 6, 2021.**

Section 1752 prohibits the unlawful entry into a restricted or otherwise cordoned off "building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). As the government intends to prove at trial, at the time of Defendant's relevant conduct on Capitol grounds on January 6, 2021, three Secret Service protectees—Vice President Pence and two immediate family members—were present. Accordingly, Defendant's conduct falls within the Section 1752's plain sweep when he entered the restricted area of the Capitol while the Vice President and his family were "temporarily visiting."

Defendant argues that Vice President Pence was not "temporarily visiting" the Capitol or its grounds because he "lived and worked in D.C. at his official residence, and actually worked at the Capitol Building and grounds" and that he had a permanent office within the Capitol. ECF No. 140 at 17. First, Defendant makes no mention of Vice President Pence's two immediate family members—both Secret Service protectees—who were with the Vice President on January 6th. The existence of that fact renders whether Vice President Pence was "temporarily visiting" a moot point. Regardless, the Court should reject Defendant's argument because it defies Section 1752's plain terms, purpose, and structure—as both this Court and other Judges previously found. [2]

---

[2] *E.g., United States v. Puma*, 596 F.Supp.3d 90, 113 (D.D.C. 2022) (rejecting the same argument as "not supported by the statutory text and … out of step with the statutory context); *McHugh*, 583 F. Supp. 3d at 35 ("None of McHugh's arguments about the meaning of 'temporarily visiting' sway the Court from the commonsense conclusion, founded on ordinary usage, dictionary

To determine the meaning of a statute, a court "look[s] first to its language, giving the words used their ordinary meaning." *Levin v. United States*, 568 U.S. 503, 513 (2013) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)).  The verb "visit" means, *inter alia,* "to go to see or stay at (a place) for a particular purpose (such as business or sightseeing)" or "to go or come officially to inspect or oversee."[3]  Either definition describes the Secret Service protectees' activities on January 6, 2021.  Vice President Pence was physically present at the U.S. Capitol for a particular purpose: he presided over Congress's certification of the 2020 Presidential Election, first in the Joint Session, and then in the Senate chamber.  Similarly, the Vice President's family members came to the U.S. Capitol for a particular purpose: to observe these proceedings.  Finally, as President of the Senate, Vice President Pence oversaw the vote certification.  Given the presence of the Vice President and his family members, the Capitol qualified as a building where "[a] person protected by the Secret Service [was] . . . temporarily visiting."  18 U.S.C. § 1752(c)(1)(B).

Defendant emphasizes that Vice President Pence worked and lived in the District of Columbia, and was working on January 6th when he presided over the electoral vote count.  ECF 140 at 17-18.  However, Section 1752 does not require that the location temporarily visited be outside of the District of Columbia.  Moreover, it does not follow from a plain reading of the statute that maintaining an office in the Capitol building renders a visit to said office non-temporary.  Section 1752(c)(1)(B) defines the restricted area by reference to the location of the protectee—not his office.  When Vice President Pence and his family members traveled to the Capitol on January 6th to oversee and observe the certification, they were "visiting" the building.

---

definitions, and judicial interpretations, that Vice President Pence was 'temporarily visiting' the Capitol on January 6, 2021."); *United States v. Rodriguez*, No. 21-cr-0246 (ABJ), 2022 WL 3910580, at *16 (D.D.C. Aug. 31, 2022) ("This strained interpretation is inconsistent with both the text and the structure of the statute.").

[3] https://www.merriam-webster.com/dictionary/visit.

Because they intended and ultimately did leave at the close of the session, the visit was "temporar[y]." This Court agreed with that plain reading of the statute in *United States v. Seitz*. No. 21-cr-279 (DLF), ECF No. 51 at 9-11 (D.D.C. Aug. 17, 2022).

In addition to contradicting the plain reading of the statute, Defendant's interpretation of "temporarily visiting" would leave a curious gap in Section 1752. The statute defines "restricted grounds" not only as "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting," but as "any posted, cordoned off, or otherwise restricted area . . . of the White House or its grounds, or the Vice President's official residence or its grounds." 18 U.S.C. 1752(c)(1)(A). It would be nonsensical to read Section 1752 as affording the Vice President protection at his official residence, on the White House grounds (where his offices were located),[4] and when he traveled outside Washington, D.C., but to carve out a gap for areas that fall in between this definition. *United States v. Rodriguez*, No. 21-cr-0246 (ABJ), 2022 WL 3910580, at *17 (D.D.C. Aug. 31, 2022) ("Defendant's reading of [Section 1752] would result in a large, entirely illogical gap in its coverage, and it is not supported by the text or by the application of common sense."). Indeed, under Defendant's proposed construction, Section 1752(c)(1)(B) would not apply where the President or Vice President temporarily stayed at their permanent residences in Delaware or California—on the view that such a trip would not qualify as "visiting." No support exists for Defendant's effort to insert such large and irrational exceptions into the statute's sweep. *See Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020) (noting that courts will avoid a "statutory outcome . . . if it defies rationality by rendering a statute nonsensical

[4] *See United States v. McHugh*, 583 F. Supp. 3d 1, 35 (D.D.C. 2022) ("[T]he Vice President's working office is in the West Wing of the White House, and she also maintains a ceremonial office in the Eisenhower Executive Office Building."), *citing The Vice President's Residence & Office*, https://www.whitehouse.gov/about-the-white-house/the-grounds/the-vice-presidents-residence-office/ (last accessed Jan. 31, 2022).

or superfluous or if it creates an outcome so contrary to perceived social values that Congress could not have intended it") (internal citation omitted).

At bottom, Defendant's position defies Section 1752's clear purpose. In drafting Section 1752, Congress sought to protect "not merely the safety of one man, but also the ability of the executive branch to function in an orderly fashion and the capacity of the United States to respond to threats and crises affecting the entire free world." *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016) (quoting *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1528 (D.C. Cir. 1984)). To that end, the statute comprehensively deters and punishes individuals who seek unauthorized access to the White House grounds and the Vice President's residence—fixed locations where the President and Vice President live and work, 18 U.S.C. 1752(c)(1)(A); and also any other "building or grounds" where they happen to be "temporarily visiting," 18 U.S.C. 1752(c)(1)(B). All the relevant metrics—plain language, statutory structure, and congressional purpose—foreclose the defendant's illogical reading of Section 1752(c)(1)(B). This Court should reject Defendant's argument as it did in *Seitz*.

**2. Section 1752 does not require the government to prove that the restricted area was restricted at the Secret Service's direction.**

Nothing in the express language of Section 1752 requires that the Secret Service create the "restricted area", and Defendant's attempt to add an implicit requirement, ECF No. 140 at 18-19, goes against the commonsense reading of the text and its legislative history.

Section 1752 provides, in relevant part, that a "restricted building or grounds" "means any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting[.] 18 U.S.C. § 1752(c)(1)(B). Section 1752 also defines "restricted building or grounds" to include any posted, cordoned off, or otherwise restricted area "of the White House or its grounds, or the Vice

President's official residence or its grounds" or "of a building or grounds so restricted in conjunction with an event designated as a special event of national significance."  18 U.S.C. §§ 1752(c)(1)(A), (C).  The statute contains no express requirement that, for a violation to occur, the "restricted buildings or grounds" must be restricted *by* the Secret Service.  Nonetheless, Defendant argues that the legislative history of the statute and statutory authorization of 18 U.S.C. § 3056 "make it clear that only the [Secret Service] can restrict areas for temporary visits by the President or Vice President."  ECF No. 140 at 18.  Because the plain language of the statute is clear and unambiguous, "the judicial inquiry is complete."  *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (internal quotation omitted).  But even looking beyond the plain language, the legislative history of Section 1752 weighs against Defendant's interpretation.

Section 1752 plain language prohibits certain conduct in and around "any restricted building or grounds," 18 U.S.C. § 1752(a), and provides three definitions for the term "restricted buildings and grounds."  18 U.S.C. § 1752(c)(1).  Through a cross-reference, Section 1752 makes clear—and Defendants do not appear to dispute—that "person[s] protected by the Secret Service" include the Vice President.  18 U.S.C. § 1752(c)(2); 18 U.S.C. § 3056(a)(1).  Even though the statutory language is unambiguous, Defendant urges the Court to look beyond that plain meaning to the legislative history.  ECF No. 140 at 18.

The legislative history of Section 1752 affirms the plain reading that Defendant resists.  When Section 1752 was first enacted in 1970, the Secret Service fell under the umbrella of the Treasury Department.  The original version of the statute explicitly incorporated regulations promulgated by the Treasury Department governing restricted areas.  *See United States v. Bursey*, 416 F.3d 301, 306-07 (4th Cir. 2005) (noting that definition of restricted area required interpreting Treasury regulations).  Specifically, subsection (d) of Section 1752 authorized Treasury, which

oversaw the Secret Service, to "prescribe regulations governing ingress or egress to such buildings and grounds and to posted, cordoned off, or otherwise restricted areas where the President is or will be temporarily visiting." Pub. L. 91-644, Title V, Sec. 18, 84 Stat. 1891-92 (Jan. 2, 1971). However, Congress revised Section 1752 in 2006, striking subsection (d) and eliminating the requirement that "restricted building or grounds" be defined or designated by the Secret Service or any other particular law enforcement agency. Pub. L. 109-177, Title VI, Sec. 602, 120 Stat. 192 (Mar. 9, 2006). In 2012, Congress reinforced this interpretation by adding the definitional subsection (c), which provides the current definition of "restricted building or grounds." Pub. L 112-98, Title I, Sec. 2, 126 Stat 263 (March 8, 2012). Contrary to Defendant's contention, the legislative history shows that Congress deliberately excised any requirement that a restricted area depend on any definition or determination by the Secret Service.

Significantly, other Judges in this district found no requirement, express or implied, that an area be restricted by a particular law enforcement agency. *See United States v. Grider*, No. 21-cr-022 (CKK), 2022 WL 3016775, at *7 (D.D.C. July 29, 2022) (collecting cases) (internal quotations omitted) ("[N]othing in the statutory text requires the Secret Service to be the entity to restrict or cordon off a particular area, nor does Grider point to any provision in the statute in support of such a proposition."); *United States v. Bingert*, No. 21-cr-91 (RCL), 2022 WL 1659163, at *14 ("[D]efendants fashion a bizarre requirement, seemingly out of thin air: that only the Secret Service can designate an area as restricted [for the purposes of 18 U.S.C. § 1752]."). The Defendant's contention that such a requirement exists should therefore be rejected.

**3. Section 1752 is not unconstitutionally vague.**

Defendant next argues that the straightforward interpretation described above is unconstitutionally vague as applied to Defendant. ECF No. 140 at 19-22.

A statue is impermissibly vague where it (1) fails to give ordinary people fair notice of the conduct it punishes; or (2) is so standardless that it invites arbitrary enforcement. *Johnson v. United States*, 576 U.S. 591 (2015). Neither is true of Section 1752. The plain language of the statute is clear about the conduct it punishes. The defendant's argument that the indictment fails to allege facts about postings and warnings, ECF No. 140 at 21, again seeks to import civil summary judgment standards that do not apply to indictments, which are notice pleadings. *See Hamling*, 418 U.S. at 117 (explaining that an indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend").

Defendant further argues that arbitrary enforcement of 18 U.S.C. § 1752 "is manifested here" because: (1) the government has "never prosecuted a violation of [the] statute with the allegation that the accused entered an area restricted by some government agency other than the [Secret Service]"; and (2) the government has chosen not to charge other individuals engaged in the same conduct as Defendant with violations of Section 1752. ECF No. 140 at 21-22.

Neither argument holds water. First, as explained above, there is no explicit or implicit requirement within Section 1752 that the Secret Service be the agency to restrict the area. Thus, whether the government has previously prosecuted cases where the Secret Service or another agency has restricted an area is of no moment. Further, Judges of this district have rejected attempts to cast Section 1752 as "ambiguous," finding instead that "Section 1752 'is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement.'" *United States v. Bozell*, No. 21-cr-216 (JDB), 2022 WL 474144, at *9 (D.D.C. Feb. 16, 2022) (citing *United States v. Nordean*, No. 21-cr-175 (TJK), 2021 WL 6134595, at *19 (D.D.C. Dec. 28, 2021)); *see also Griffin*, 549 F. Supp. 3d at 57 ("this law is no trap awaiting the unwary.")). While Defendant's view may be that other rioters who acted similarly have not been prosecuted

under Section 1752, "[d]iscretionary prosecutorial decisions cannot render vague as applied a statute that by its plain terms provides fair notice." *United States v. Caldwell*, 581 F. Supp. 3d 1, 16 (D.D.C. 2021); *see also United States v. Nordean*, 579 F. Supp. 3d 28, 51 (D.D.C. 2021) (holding that charging decisions and plea negotiations as to January 6th defendants do not constitute arbitrary enforcement because "the presence of enforcement discretion alone does not render a statutory scheme unconstitutionally vague.")

**4. Section 1752 is not ambiguous and therefore the rule of lenity does not apply.**

In a last-ditch effort, Defendant argues that, even if the Court decides in the government's favor on the other arguments pertaining to Section 1752, "any ambiguities in the statute should be resolved in [Defendant's] favor under the rule of lenity." ECF No. 140 at 23. The Defendant's insistence that the Court should apply the rule of lenity is misplaced.

"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 83 (1955). That principle underlies the "venerable rule of lenity," *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (opinion of Souter, J.), which ensures that "legislatures and not courts" define criminal activity given the "seriousness of criminal penalties" and the fact that "criminal punishment usually represents the moral condemnation of the community." *United States v. Bass*, 404 U.S. 336, 348 (1971); *see Liparota v. United States*, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability.").

The rule of lenity is not applied when a law merely contains some degree of ambiguity or is difficult to decipher. The rule of lenity "only applies if, after considering text, structure,

history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal quotation and citation omitted); *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998); *Young v. United States*, 943 F.3d 460, 464 (D.C. Cir. 2019). In short, some ambiguity is insufficient to trigger the rule of lenity; instead, a court must find "grievous ambiguity" that would otherwise compel guesswork. *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (internal quotation marks omitted).

As explained *supra* at 10-15, Section 1752(a) is unambiguous. Therefore, the Court need not resort to the rule of lenity. Judge McFadden explained last year when rejecting similar arguments that the rule of lenity should not apply to Section 1752:

> [Defendant] invokes the doctrine of lenity and the "novel construction principle." Neither applies. Lenity is "a sort of junior version of the vagueness doctrine." It comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve "grievous ambiguity."
>
> As the Court has explained, Section 1752 is capacious, not ambiguous. [Defendant's] "ability to articulat[e] a narrower construction" of the statute does not trigger lenity. Nor has there been an "unforeseen judicial enlargement" of a longstanding criminal statute so that it operates like an ex post facto law. [Defendant] has allegedly violated a rarely charged statute, but that does not mean the *construction* of the statute unfairly blindsided him. There was no prevailing practice of courts foregoing or rejecting the interpretation that the Government now advances.

*United States v. Griffin*, 549 F. Supp. 3d 49, 57-58 (citations omitted).

## III. The Court should deny Defendant's motion as to Count Four because the Indictment states an offense and puts the Defendant on notice of the charge.

Defendant argues that the Court should dismiss Count Four, alleging a violation of 40 U.S.C. 5104(e)(2)(D), because the Indictment: (1) "is silent" as to what conduct of Defendant's was disorderly and disruptive; and (2) does not explain how Defendant's actions impeded, disrupted, or disturbed the orderly government business and official functions. ECF No. 140 at

24. As explained above, sufficiency-of-evidence arguments are not appropriately considered on motions to dismiss. *See McHugh*, 583 F. Supp. 3d at 10. The Indictment is valid if it states a claim and puts the defendant on notice of the charge. *See Resendiz-Ponce*, 549 U.S. at 108. Count Four has fulfilled those requirements by providing the date/location of the violation, and alleging the elements laid out by the statute. ECF No. 83.

## IV. The Court should also deny the motion as to Count Five.

Lastly, Defendant moves to dismiss Count Five, arguing that: (1) the charge "severely conflicts" with the First Amendment; and (2) the government fails to provide factual allegations supporting the charge. ECF No. 140 at 25.

### A. Count Five sufficiently states a violation of 40 U.S.C. § 5104(e)(2)(G) and gives fair notice to the Defendant of the charge.

Count Five "clears th[e] low bar" required by Rule 7 and case law. *See United States v. Sargent*, No. 21-cr-258 (TFH), 2022 WL 1124817, at *1 (D.D.C. Apr. 14, 2022). First, Count Five includes the essential elements of Section 5104(e)(2)(G) by alleging that (1) Defendant engaged in certain prohibited conduct (parading, demonstrating, and picketing in any Capitol Building), and (2) he did so with the requisite mental state (willfully and knowingly). Count Five further alleges that the offense was committed on or about a specific date (January 6, 2021), and in a specific geographic area (the District of Columbia). As this Court stated in *Seitz*, "[t]hat is adequate to put him on notice of the charge against him." *Seitz*, No. 21-cr-279 (DLF), ECF No. 51 at 18. In rejecting the defendant's argument in *Seitz*, this Court further explained:

> Mr. Seitz's indictment tracks the language of Section 5104(e)(2)(G) and tells him when and where he committed the offense. That is adequate to put him on notice of the charge against him. No factual allegations are required when the statutory language itself allows the defendant to prepare a defense to the charge. See *U.S. v. Sargent*, 2022 WL 1124817 at 3. In that case Judge Hogan rejected a challenge to the indictment for a civil disorder charge, finding that

>   the indictment did not need to specify how the defendant obstructed, impeded, or interfered with a law enforcement officer. It was enough that the indictment tracked the plea or statutory terms. The same holds true for these terms, paraded, demonstrated, or picketing.

When faced with the same issue as to nearly identical charging language, Judge Bates explained:

>   [A]lthough the information is pithy, it "contains the elements of the offense charged"—that Nassif "paraded, demonstrated, or picketed" within a Capitol building—and "fairly informs" Nassif of the charge against which he must defend—that he violated the statute on January 6, 2021, in the District of Columbia. Hamling, 418 U.S. at 117. No more is required, and hence the Court concludes that Count Four of the information states an offense.

*United States v. Nassif*, No. 21-cr-421 (JDB), 2022 WL 4130841, at *8 (D.D.C. Sept. 12, 2022).

    **B.    Charging Defendant with a violation of 40 U.S.C. § 5104(e)(2)(G) does not violate Defendant's First Amendment rights.**

Lastly, Defendant urges the Court to find that 40 U.S.C. § 5104(e)(2)(G) impermissibly curtails protected First Amendment activity. ECF No. 140 at 26-32. This Court addressed a similar issue in *Seitz*. In denying that defendant's motion to dismiss the violation of 40 U.S.C. § 5104(e)(2)(G), this Court determined that the statute is not unconstitutional on its face because it does not cover a substantial amount of protected expressive activity. *Seitz*, No. 21-cr-279 (DLF), ECF No. 51 at 14. Citing *Bynum*, this Court explained that the statute only prohibits conduct that would disrupt the orderly business of Congress, not activities such as quiet prayer. *Id.* at 14 (citing *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 53 (D.D.C. 2000)). And that only knowing and willful demonstration—not inadvertent—is covered by the statute. *Id.* This Court agreed with Judge Friedman in *Bynum*, finding that "Capitol buildings are nonpublic for a such that the government may restrict First Amendment activity in the Capitol so long as the restrictions are viewpoint neutral and reasonable in light of the purpose served by the forum." *Id.* Section

5104(e)(2)(G) is viewpoint neutral and reasonable in regulating conduct and expressive activity. *Id.* Thus, the Court should deny this Defendant's motion to dismiss on the same grounds.

**CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court deny Defendant Motion to Dismiss.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ *Sarah C. Martin*
SARAH C. MARTIN
D.C. Bar No. 1612989
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
202-252-7048
Sarah.Martin@usdoj.gov

CHRIS BRUNWIN
CA Bar No. 158939
Assistant United States Attorney Detailee
United States Attorney's Office
Central District of California
312 N. Spring Street
Los Angeles, California 90012
(213)894-4242
christopher.brunwin@usdoj.gov