# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 1:21-cr-00116-DLF** |
| | **:** | |
| **WILLIAM MCCALL CALHOUN, JR.,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## UNITED STATES' TRIAL BRIEF

The United States, by and through its attorneys, submits this trial brief to summarize the facts of this case and issues for trial.

## I.      STATEMENT OF FACTS

On January 6, 2021, the day the Joint Session of Congress convened to certify the results of the 2020 Presidential Election, rioters attacked the United States Capitol, assaulted police officers, and forced members and staff to flee the halls of Congress.  They overtook the Capitol building and shut down the Joint Session.  The defendant was one of them.  After attending the Stop the Steal Rally by the Washington Monument, the defendant made his way to the Capitol. He approached from the West side, traversed under the scaffolding of the Inauguration stage, and to the Upper West Terrace.  By his own account, this defendant was among the first to overtake the Capitol Building.  He entered the Capitol through the broken doors of the Senate Wing Building, between two shattered windows.  He made his way through to the Crypt and to the Rotunda before exiting the building.

The defendant is charged with the Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. 1512(c)(2), and 2; Entering or Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C §§ 1752(a)(1); Disorderly and Disruptive Conduct

in a Restricted Building or Grounds, in violation of 18 U.S.C. 1752(a)(2);  Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 18 U.S.C. § 5014(e)(2)(G).  The defendant is guilty of each of the crimes charged and the government will prove so beyond a reasonable doubt.

## II.     TRIAL PROCEDURE AND EVIDENCE

By unopposed defense motion, the parties are proceeding with a bench trial in this case. The Court has directed that trial will commence without opening statements, directly to the government's case-in-chief.  The government is aware that this Court has heard multiple trials pertaining to January 6th.  To streamline the presentation of evidence, the government prepared stipulations concerning the basic and undisputed facts about January 6, 2021, including the fact that the Capitol building and grounds were restricted and closed to the public on January 6, 2021. The parties are largely in agreement as to the authenticity of the government's evidence, but anticipate the defense will argue the relevance of certain exhibits, including many social media posts.

In addition to the stipulated facts, the government will offer testimony from two witnesses: (1) United States Capitol Police ("USCP") Captain Carneysha Mendoza; and (2) Federal Bureau of Investigation ("FBI") Special Agent Timothy Armentrout.  Captain Mendoza will provide an overview of the circumstances of the riot, putting the defendant's movements into the context of the larger event.  Special Agent Armentrout, the primary case agent, will testify about how the FBI became aware of the defendant's involvement on January 6th and his subsequent investigation into the defendant, which resulted in the discovery of social media posts, physical evidence, and evidence from the defendant's cellphone.

Through its case-in-chief, the government will establish that the defendant traveled to D.C. on January 6th with the intent to obstruct the electoral vote count.  Significantly, as early as November 7, 2020, the defendant commented on Facebook: " . . . the communists are trying to steal the election-it's obvious. We go to bed and Trump is winning, then wake up to magically find hundreds of thousands of 'only Biden' votes. Normally a candidate who is honest wants transparency. We are on the verge of civil war snd the battleground will be ATL. We're going to go door to door and execute the fucking communists. I want to make that clear."  On December 9, 2020, the defendant posted on Parler: "Stop The Steal: Biden lost. Accordingly, the 80 million Americans who voted for Trump aren't going to agree, follow, acquiesce to, and we damn sure aren't going to obey any policy coming from a fraudulent Biden/-Harris administration. Trump is going back for four more years anyway based on massive and compelling evidence. These are the facts of life."  These posts make clear that the defendant wanted to resist the transfer of power to a new administration.  By *at least* December 22, 2020, the defendant had decided to travel to Washington, D.C., for the certification of the electoral college vote. His posts from that day forward, taken together, make clear his intent to obstruct the Join Session.

By at least December 22, 2020, the defendant decided to travel to Washington, D.C., for the certification of the electoral college vote. That day, he posted on Parler: "See you in Washington on Jan. 6!"  He followed up on December 29, 2020 with: "Being physically present in Washington on January 6 is of key importance. We the People have no other realistic option to communicate our unwavering intent to demand fair elections now and forever - or else. I'll see you there!"  On January 4, 2021, the defendant posted on Parler[1]:

---

[1] The defendant is not charged with possession of a weapon on January 6th.  However, the defendant's rhetoric leading up to January 6th, including his reference to weapons, sheds light on why he traveled to Washington, D.C., and the nature of the confrontation he anticipated.  His

> Headed to D.C. to give the GOP some back bone - to let them know this is their last chance to Stop the Steal - or they are going to have bigger problems than these coddled Antifa burning down their safe spaces. DC announced it is "banning guns" when we storm the Capitol tomorrow. LoL - guns are already banned in DC. Very illegal. Whether the police can enforce their gun laws depends on how many armed Patriots show up. Ironically, in the long list of firearms and weapons banned by the DC ordinance, tomahawks are not mentioned, meaning there is no prohibition against carrying a tomahawk as long as it is not used offensively! The tomahawk revolution- real 1776!

Through context, it is clear that when the defendant wrote "giv[ing] the GOP some backbone," he meant that he and others would storm the Capitol Building and try, by their presence, to coerce the electoral result they preferred. The defendant's knowledge of the electoral vote count and intent to influence the process is further supported by a Facebook post from January 5, 2021, in which he describes the history of the 1800 presidential election and issues with the certification of Georgia's electoral votes.  In relevant part, the defendant wrote, "[T]his is a precedent for Pence being authorized to count disputed votes in his own election . . . The VP isn't just performing a clerical function, judgment and discretion has to be exercised where the votes are contested . . . The evidence of a stolen election is overwhelming- there is more than enough evidence."

It is undisputed that the defendant travelled to D.C. on January 6th and entered the Capitol during the riot.  The defense does not contest his presence, including his presence on CCTV footage inside the Capitol, and in open-source footage inside and outside of the Capitol.  Moreover, the defendant himself confirmed his presence when he testified at the March 5, 2021 motion hearing.  Specifically, the defendant testified: "I posted photographs, and I posted videos because

---

statements, therefore, are relevant to his intent as to all charges, and specifically are relevant to his corrupt intent to obstruct an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

I did not do anything wrong. Okay? Maybe I trespassed. Big deal. Don't steal elections next time." March 5, 2021 Transcript at 45:13-15. Additionally, in answer to a question from the Court, the defendant responded: "If I had it to do all over again, I would probably have not gone into the Capitol . . . I probably committed a misdemeanor trespass, and I know that was wrong . . . I would plead guilty to that." *Id.* at 58:6-12.

While the government's evidence will establish the elements of all five charges in the Superseding Indictment, the government anticipates that the defense will focus its argument on Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) and 2. The defense may argue that the defendant did not commit obstruction because he did not assault police officers or destroy property. Such argument would be misplaced. The defendant is not charged with assaulting law enforcement or destroying property—and § 1512 does not require that the government establish such assaultive conduct. Instead, the defendant's words and actions make clear that he decided to unlawfully occupy the Capitol building—and did occupy the Capitol building—with the intent to interfere with the certification of the electoral college vote, which he knew to be taking place in Congress on that day. Thus, the defendant (1) attempted to or did obstruct an official proceeding; (2) did so with the intent to obstruct or impede the Official Proceeding; (3) acted knowingly; and (4) acted corruptly. ECF. 133-1 at 2.

In addition to the defendant's social media posts leading up to January 6th, his posts and cellphone videos created contemporaneously while he was on restricted Capitol grounds and inside the Capitol on January 6th demonstrate he acted corruptly to obstruct the electoral vote count. First, the defendant was immediately put on notice that his presence was unlawful due to the significant number of police and police efforts to repel the rioters. Importantly, he posted on both Facebook and Parler shortly after 2:00 p.m. that cops were using mace on "us" in front of the

Capitol.  In a cellphone video taken by the defendant as he was walking up the West side, smoke can be seen rising from the crowd.  Additionally, the defendant progressed up the West side of the Capitol and entered through the Senate Wing Door at approximately 2:19 p.m.—only 7 minutes after the windows and doors of the Senate Wing were broken by rioters.  Broken glass littered the floor and loud alarms were apparent upon his entry.  At approximately 2:39 p.m., the defendant posted to Parler: "We're[sic] have busted through into the Capitol and taken it[.]"

A sampling of the defendant's other posts from January 6th show that he knew he was involved, in his own words, a "hostile takeover" of the Capitol:

- "Patriots have taken the Capitol building. We **overran multiple police barricades** and busted through.  After we had overrun that last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members.  Then we stormed upstairs through the rotunda . . . ." (Emphasis added);

- "Today the American People proved that we have the power.  We physically took control of the Capitol building in a hand to hand hostile takeover.  We occupied the Capitol and shut down the Government – **we shut down their stolen election shenanigans** . . . ." (Emphasis added).

This and other evidence bely the defendant's claim that he is a mere victim being prosecuted for what he deems permissible political speech.  *See* March 5, 2021 Transcript at 39:12-13 ("It was civil disobedience"), 51:5 ("Yes, I am the victim").  The government will establish that the defendant traveled to Washington, D.C. with the intent to, in his own words, "stop the steal." And that he viewed his entry into the Capitol as an unlawful "hostile takeover."  After the

6

government presents its evidence, the Court will be left with no doubt that the defendant is guilty of all five charges.

## III.   JURY INSTRUCTIONS AND THE ELEMENTS OF THE CRIMES

The elements of the charged offenses are as set forth in the Proposed Jury Instructions, which the Court included with its Pre-Trial Order on November 3, 2022.   ECF 133-1.   The government does not object to the elements of the offenses, as set forth in the Court's Order.

## IV.   PARTIES' EXHIBITS

The government has conferred with defense counsel about the evidence the government plans to present.   The government has provided its exhibit list and proposed exhibits.   The parties also reviewed the list and exhibits together to narrow objections and argument at trial.   The government expects that most exhibits will be admitted without objection, or subject to a defense objection based on relevance.

The defendant has not identified any exhibits or witnesses.   The defendant has also not identified any affirmative defenses that would be required under Rule 12.1, 12.2 or 12.3.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney

By:   *s/ Christopher Brunwin*
CHRISTOPHER BRUNWIN
California State Bar No. 158939
Trial Attorney, Detailee
312 N. Spring Street
Los Angeles, California 90012
Christopher.Brunwin@usdoj.gov
(213)894-4242

_s/ Sarah Martin_
SARAH MARTIN
D.C. Bar No. 1612989
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20001
Sarah.Martin@usdoj.gov
(202) 538-0035