IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Case No. 21-cr-00116 |
| ) | |
| WILLIAM MCCALL CALHOUN, JR ) | |
| *Defendant.* ) | |

_____

**DEFENDANT'S POST- TRIAL BRIEF**
_____

COMES NOW, Defendant, William McCall Calhoun, Jr., by and through counsel, Jessica N. Sherman-Stoltz, Esq., and respectfully files this Post-Trial Brief.

I.  STATEMENT OF FACTS

Defendant's charges before this Court arise out of the events that took place at the United States Capital on January 6, 2021. On January 15, 2021 a complaint, affidavit in support, arrest warrant and motion for detention were filed against Mr. Calhoun in the U.S. District Court for the Middle District of Georgia (Macon). The complaint charged Mr. Calhoun with one count of entry to Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a), one count of Violent Entry or Disorderly Conduct in violation of 40 U.S.C. § 5104(e)(2), and one count of Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2). Mr. Calhoun was arrested that same day, and he made his first appearance before the U.S. District Court for the Middle District of Georgia (Macon).

The Defendant was subsequently charged by Indictment in the District of Columbia in

the instant matter on February 12, 2021, and arraigned before this Court on Monday, March 1, 2021.

On January 12, 2022, the Government filed a superseding Indictment in the District of Columbia, charging Mr. Calhoun with one count of obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2, one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2), one count of disorderly conduct in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(D), and parading demonstrating, or picketing in a Capital Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

On March first and second of 2023, the Defendant appeared in the United States District Court for the District of Columbia in front of the Honorable Dabney Friedrich for a 2-day bench trial. The Government's evidence included testimony from United States Capitol Police Captain Carneysha Mendoza, and Federal Bureau of Investigation Special Agent Timothy Armentrout. The Defendant, William McCall Calhoun, testified on his own behalf.

## II.   INDICTMENT COUNTS

A.  Obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) and 2

The Government must prove that Mr. Calhoun attempted to or did obstruct or impede an official proceeding, and that Mr. Calhoun acted with the intent to obstruct or impede the official proceeding. The Government must also show that Mr. Calhoun acted

knowingly, with the awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceedings, and that Mr. Calhoun acted corruptly.

Mr. Calhoun testified that his intent in going to Washington, DC, on January 6th was to attend the "Trump speech." 229:5-6. His friend and co-defendant, Mr. Nalley, called him after Trump announced the January 6th rally and told him they were going to DC. 211:12-14. He believed that Trump announced this speech (rally) on Twitter, on December 19, 2020. 201:20-22. He then filed for a leave of absence from work on or around December 22, 2020. 211:4-5. Prior to his call with Mr. Nalley, he had no plans to go to Washington DC on January 6, 2021. Mr. Calhoun testified that he "didn't even know there was going to be a rally at the Capitol" until Trump told everyone to go over to the Capitol. 229:6-12. Mr. Calhoun further testified that he did not know what was going on inside the Capitol at the time he was walking over, but he was under the impression from things he was hearing around him, from other people, that the vote had already been certified. 235:23-25, 236:2-3 and 236:8-10.

Mr. Calhoun testified that he did not enter into the Capitol with the intent to impede the orderly conduct of a session of Congress. 298:18-20. He testified that he did not enter the Capitol with the intent of disrupting the orderly conduct of a session of Congress. 299:1-4. He testified that he did not go into the Capitol with the intent to disturb Congress. 299:5-11. And he testified that he did not enter the Capitol with the intent to impede any session of Congress. 299:12-14.

The Government entered as exhibits numerous social media posts from Mr. Calhoun's social media accounts that he posted well in advance of former President Trump announcing the rally in DC on Twitter, as evidence that Mr. Calhoun corruptly intended to go to Washington DC on January 6th specifically to obstruct or impede the certification of the electoral vote. However, one flaw in the Government's argument is that they can't establish that Mr. Calhoun corruptly intended to obstruct or impede the certification of the electoral vote by his free speech social media posts that were posted well before former President Trump had even announced the Washington DC rally, and before Mr. Calhoun had made a conscious decision to attend the rally. As he testified, Mr. Calhoun had no plans of even going to the Capitol Building until former President Trump told the crowd to go there.

The evidence entered during Mr. Calhoun's bench trial did not show that he obstructed or impeded a session of Congress. In fact, based on the Government's own evidence, both the House and the Senate had been gaveled into recess and evacuated prior to Mr. Calhoun's entry into the Capitol building. Government's Exhibit 301, 6:53 – 7:55. Mr. Calhoun entered into the Capitol Building at 2:19 PM, 7 minutes after the initial breach of the door he entered through. Government's Exhibit 302. He exited the Capitol Building at 2:43 PM (Government's Exhibit 307), while there were still hundreds, if not thousands of people still inside the Capitol Building, for many more hours after he had exited, and even left Washington, DC.

The evidence shows that while inside the Capitol Building, Mr. Calhoun did not commit a crime. He made no steps towards disrupting Congress, and his acts did not aid, assist, facilitate, or encourage others to commit an offense while inside the Capitol. Specifically, the offense of disrupting or impeding an official proceeding, the certification of the electoral vote.

The Government did not prove beyond a reasonable doubt that Mr. Calhoun's mental state passed beyond the stage of thinking about the crime to actually intending to commit it. Additionally, the Government did not prove beyond a reasonable doubt that Mr. Calhoun took some firm, clear, undeniable action to accomplish his intent to commit obstruction of an official proceeding. The Government did not prove beyond a reasonable doubt that Mr. Calhoun's acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The Government did not prove beyond a reasonable doubt that Mr. Calhoun in some way participated in the offense committed by others as something that he wished to bring about and to make succeed.

B. Entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1)

The government must show that Mr. Calhoun knowingly entered or remained in a restricted area. A person acts knowingly if he realizes what he is doing and is aware of the nature of his conduct and does not act through ignorance, mistake, or accident.

Mr. Calhoun did not go to the Capitol Building on January 5th, or even the morning of

January 6th, and he did not witness all the barriers (bike racks) that had been set up in a perimeter around the Capitol. He had only been to the Capitol once before, when he was very young, and prior to the current entrance protocols that are in place now. 242:25 – 243:1-2.

    Mr. Calhoun testified that at the conclusion of the Trump Rally, former President Donald Trump told everyone to head over to the Capitol. 229:19 and 231:11-13. Mr. Calhoun and his co-defendant, Mr. Nalley, went first from the Trump Rally to the Robert Taft Memorial area to get internet access and sit down for a few minutes. 229:21-23. From there they went over to the Capitol grounds, where they entered the Capitol grounds through an area where there were no barriers (bike racks). In fact, Mr. Calhoun testified that where there were sections of the bike racks removed, that's where he thought you were supposed to walk through, to gain entry onto the Capitol grounds. 230:13-21. The Government provided no contradictory evidence, nor did they provide evidence of how Mr. Calhoun got to the Capitol grounds, the path he took, where he entered, and whether there were bike racks, fencing, or signs on the path he took and where he entered, and if there were any, what state those bike racks, fencing, or signs may have been in. Mr. Calhoun further testified that he saw no "Do Not Enter" or "Closed" signs where he was walking thru to the grounds of the Capitol Building, or anywhere else. 231:5-8, 231:19-34 and 232:2-3. The Government produced no evidence showing that he crossed any barriers or bike racks blocking the sidewalks and/or walkways on the path that he took to get to the

Capitol grounds. Mr. Calhoun testified that he thought everyone was entitled to be on the grassy area outside of the Capitol steps, where he was. 233:16-18. Given the presence of thousands of people milling about on the Capitol grounds, that would appear to be a reasonable assumption. By the time Mr. Calhoun arrived from the Robert Taft Memorial, no one was trying to prevent them from being on the grounds. 233:18-19.

    As Mr. Calhoun later approached the bottom of the steps to the Capitol Building, he testified that he saw no police anywhere. 237:10-14. As he's going up the Capitol steps towards the door that he walked through, he still does not see any police or law enforcement presence. 238:1-2 and 297:20-21. Mr. Calhoun walked into the Capitol through an open door (specifically testifying that he did not see the broken windows to his left and right, or evidence of the broken windows on the ground) with his cell phone held slightly up in the air as he's recording his surroundings. 238:5-14 and Govt's Exhibit 302 at 8:10. Only at that point did Mr. Calhoun see a police presence, straight down the hall in front of him when he entered, watching everyone as they walked in. 238:22-25 and 239:1. He testified that the officers weren't saying anything to anyone nor directing them to turn around and leave, or that they shouldn't be there. 239:6-10 and 298:12-17.

    Throughout all the video and photographic evidence, the Government showed of Mr. Calhoun inside or outside of the Capitol, nothing shows him confronting law enforcement or engaging with law enforcement. The closest that Mr. Calhoun got to law enforcement is seen in Government's Exhibit 607, and Mr. Calhoun is several rows back from the law

enforcement officers and making no contact with them or engaging with them in any way. There was no police officer or official person that told Mr. Calhoun that he wasn't allowed to be there. The Government's own Capitol Police witness testified that she never saw Mr. Calhoun outside or inside the Capitol Building. 68:1-3. The Government's evidence showed that while inside the Capitol Building, Mr. Calhoun did not go anywhere where the public generally was not allowed to go. He was inside for 24 minutes (Govt's Exhibit 302 showing Mr. Calhoun enter the Capitol at 2:19 PM, and Exhibit 307 showing him exit at 2:43 PM), and a good portion of that time he was trying to find a non-congested way to get out. 246:4-6 and 247:4-5.

    C. Disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2)

Disorderly conduct occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another person by jostling against or unnecessarily crowding that person. Disruptive conduct is a disturbance that interrupts an event, activity, or the normal course of a process. This requires more than a mere presence in a restricted building as this Court so found in the *Griffin* case. The statute requires disorderly or disruptive conduct, in addition to presence in a restricted building or grounds. However, as it has been charged to Mr. Calhoun, it requires disorderly *and* disruptive conduct. It requires that the accused, Mr. Calhoun, must knowingly, and have intent to impede or disrupt the orderly conduct of government business in a restricted building or

grounds. It further requires that the conduct of the accused does in fact impede or disrupt the orderly conduct of Government business and official functions.

The Court was presented with evidence of Mr. Calhoun's conduct inside of the restricted building or grounds of the Capitol. Mr. Calhoun's actions on the Capitol grounds and inside the Capitol did not constitute disorderly or disruptive conduct.

Mr. Calhoun testified that he did not know what was going on inside the Capitol, but he was under the impression from things he was hearing around him, from other people, that the vote had already been certified. 235:23-25, 236:2-3 and 236:8-10. He testified that he did not enter into the Capitol with the intent to impede the orderly conduct of a session of Congress. 298:18-20. He testified that he did not enter the Capitol with the intent of disrupting the orderly conduct of a session of Congress. 299:1-4. He testified that he did not go into the Capitol with the intent to disturb Congress. 299:5-11. And he testified that he did not enter the Capitol with the intent to impede any session of Congress. 299:12-14.

The Government has failed to prove that Mr. Calhoun knowingly impeded the orderly conduct of government business in a restricted building or grounds. And they have also failed to show that Mr. Calhoun's personal conduct disrupted or impeded the orderly conduct of government business.

D. Disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D)

Again, as we discussed for count three, disorderly conduct occurs when a person is unreasonably loud and disruptive under the circumstances or interferes with another

person by jostling against or unnecessarily crowding that person. Disruptive conduct is a disturbance that interrupts an event, activity, or the normal course of a process. This requires more than a mere presence in a restricted building as this Court so found in the *Griffin* case. The statute requires disorderly or disruptive conduct, in addition to presence in a Capitol Building. However, as in count three, and as this count has been charged to Mr. Calhoun, it requires disorderly *and* disruptive conduct. It requires that the accused, Mr. Calhoun, must willfully and knowingly, and have intent to impede or disrupt the orderly conduct of government business in a Capitol Building. It further requires that the conduct of the accused does in fact impede or disrupt the orderly conduct of a session of Congress and either House of Congress.

    The statute requires Mr. Calhoun to have been voicing loud, threatening, or abusive language, or engaging in disorderly or disruptive conduct, in addition to the presence of being in the Capitol. Mr. Calhoun testified that at no point was he chanting, or yelling, and he stated that he didn't raise his voice the whole day. 245:18-20. Mr. Calhoun's well-documented and visualized actions within the Capitol clearly show that his presence alone did not make any one law enforcement officer's job more difficult. Mr. Calhoun's behavior outside and inside the Capitol is outlined and thoroughly discussed within counts two and three, and he submits to the Court that his conduct does not constitute what is required for a conviction of count four.

    E.  Parading demonstrating, or picketing in a Capital Building, in violation of 40

U.S.C. § 5104(e)(2)(G)

While there is little guidance on the exact meaning of these terms, Mr. Calhoun's actions while in the Capitol Building are not consistent with any of them. He spent almost his entire time in the Capitol Building videoing the surroundings and what others were doing. He did not shout, he did not waive a flag, he did not confront officers, he did not engage in violence or disruptive behavior. That can be seen clearly in the Government's Exhibits 302 – 308B, 311, 600 – 608, and 611 – 632. There were many people outside and inside of the Capitol Building, while Mr. Calhoun was there, that were chanting at the police, yelling at the police, waiving signs and flags, but none of that is conduct that Mr. Calhoun engaged in. Mr. Calhoun testified that he brought no weapons to DC or inside the Capitol, he had no chemicals like bear spray, he did not have a flag like many others did, he was not wearing and did not have any military gear, and he did not have a helmet or body armor. 240:3-25.

### III. CONCLUSION

Mr. Calhoun respectfully submits to the Court that the Government has not met its legal burden in his case. The evidence and testimony presented to the Court shows that Mr. Calhoun is not guilty of the charges outlined above, and we ask the Court to find him not guilty of all five counts.

Dated: March 9, 2023.

Respectfully Submitted,
WILLIAM MCCALL CALHOUN, JR.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslg.law

## CERTIFICATE OF SERVICE

I hereby CERTIFY that on this the 9th day of March 2023, a true and correct copy of the foregoing *Defendant's Post-Trial Brief* was filed with the Clerk of Court via the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.