IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 1:21-cr-116 (DLF) |
| | : | |
| v. | : | |
| | : | |
| WILLIAM MCCALL CALHOUN, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' RESPONSE TO DEFENDANT'S POST-TRIAL BRIEF**

The United States, by and through its attorneys, respectfully submits this Response to the defendant's Post-Trial Brief (ECF No. 160), as the Court ordered on March 12, 2023. This Response will address each element of the charges, which the government proved beyond a reasonable doubt at trial. Accordingly, the government requests the Court return guilty verdicts on all counts.

**DISCUSSION**

The government disagrees with the defendant's portrayal of the facts and evidence in its Post-Trial Brief. In arguing for acquittal, the defendant relies purely on his own conclusory denial of the elements of the charges. ECF No. 160 at 3. In doing so, he ignores his trial testimony's incredible nature and the contradictions between his testimony and earlier, contemporaneous statements. ECF No. 160 at 3. Moreover, the defendant misstates a critical standard involving the government's proof. *Id.* at 8 ("However, as it has been charged to Mr. Calhoun, it requires disorderly ***and*** disruptive conduct."). In this Response, the government relies on its recitation of the testimony and evidence as laid out in its initial Post-Trial Brief, but expands on those to address how the evidence applies to each charge in the Superseding Indictment.

I.      OBSTRUCTION OF AN OFFICIAL PROCEEDING (18 U.S.C. § 1512(c)(2))

Count I of the Superseding Indictment charges the defendant with Obstruction of an Official Proceeding and Aiding and Abetting in violation of 18 U.S.C. § 1512(c)(2), 2. ECF No. 83 at 1. To establish such a violation, the government must prove beyond a reasonable doubt that the defendant: (1) attempted to or did obstruct an official proceeding; (2) acted with the intent to obstruct or impede the official proceeding; (3) acted knowingly, with awareness that the natural and probable effect of his conduct would obstruct the official proceeding; and (4) acted corruptly. ECF No. 133 at 2. The government thoroughly addressed the second and fourth elements in its prior brief. ECF No. 159 at 11-14.

The record and the Court's instruction make clear that Congress's certification of the Electoral College vote, as set out in the Twelfth Amendment to the Constitution, is an official proceeding. Here, the government proved the existence of the certification as the official proceeding through exhibits 300, 301, the testimony of United States Capitol Police ("USCP") Captain Carneysha Mendoza, and the stipulation of the parties (exhibit 702). This Court also previously found that the certification qualifies as an "official proceeding" in other January 6th trials. *United States v. Sandlin*, 575 F. Supp. 3d 16, 23 (D.D.C. 2021); *United States v. Reffitt*, 602 F. Supp. 3d 85, 92 (D.D.C. 2022).

The defendant obstructed the official proceeding by unlawfully entering restricted Capitol grounds and the Capitol building on January 6th. Captain Mendoza testified that the entry of unauthorized persons, including any single individual, compelled the evacuation of Congress and stopped the official proceeding. ECF No. 156 at 54:2-13 ("A: So Capitol Police gave the order to evacuate both the chambers of the House and the Senate. So that basically means that we would relocate our dignitaries, meaning members of Congress and the vice-president, to a separate

location . . . Q: And the order to evacuate the chambers of Congress, if I describe that correctly, did that impact the official proceeding that was being conducted on January 6th?  A: Yes. It temporarily stopped the official proceeding."); 56:9-12 ("Q: Captain Mendoza, you testified that the chambers of Congress were evacuated in response to the rioters in the building; is that right? A: Yes.").  Captain Mendoza further testified that the certification could not restart until every unauthorized individual was removed from the building.  *Id.* at 76:19-77:3 ("So regardless of when you came in, if you were there at any moment, you were preventing the certification of the electoral votes.").

The government's evidence also proves that the defendant acted knowingly when he went to the Capitol to stop the certification.  Specifically, surveillance and open-source footage (exhibits 302-308, 311), as well as the defendant's social media posts (exhibits 400-423, 500-512) and cellphone videos (exhibits 600-608) show that the defendant planned to "storm the Capitol" on January 6th and that he carried out his plan.  *E.g.,* Ex. 408 ( . . . when we storm the Capitol tomorrow."), Ex. 603.  His words and conduct prove that he was aware of his actions and did not act through ignorance, mistake, or accident.  Notably, in certain cellphone videos, the defendant narrated his movement up to and through the Capitol, and documented his participation in the effort to "stop the steal" and "shut down the government."  *E.g.,* Ex. 603, 607.  And, as explained in the government's initial brief, the defendant knew that his actions would stop the certification – that was his intention.  ECF No. 159 at 6-11.

In his brief, the defendant claims that he did not know he was going to the Capitol, or what was going on inside.  ECF No. 160 at 3.  That nonsense argument is belied by the voluminous evidence presented at trial, including the defendant's own testimony.  ECF No. 159 at 6-11.  For example, on January 6th, the defendant said, "We occupied the Capitol and shut down the

3

Government[.]" Ex. 506. The defendant's statements prior to and on January 6th illuminate his intent and knowledge, and the Court should disregard his self-serving testimony to the contrary.

While the government has proved actual obstruction in violation of 18 U.S.C. § 1512(c)(2), the Superseding Indictment also alleges attempt and aiding and abetting as to Count I. ECF No. 83 at 1. The Court's instructions set forth the elements of each theory, all of which have been met here. ECF No. 133 at 3-6. First, as explained above, the defendant communicated his intent to commit obstruction of an official proceeding through his social media posts and contemporaneous statements. Further, the defendant carried out numerous "substantial steps" toward committing obstruction, including entering restricted Capitol grounds, progressing up the West side of the Capitol grounds, entering the Capitol building itself, confronting a police line in the Crypt, and roaming the halls of Congress "looking for people." *E.g.,* Ex. 603, 605, 607, and 608.

Moreover, the defendant aided and abetted others to obstruct the official proceeding. Before January 6th, the defendant posted on social media about the "importance" of being physically present in Washington, D.C. on January 6th, knowing he had a significant social media following. ECF No. 157 at 215-216, Ex. 406 ("See you in Washington on Jan. 6!"), Ex. 407 ("Being physically present in Washington on January 6 is of key importance."), and Ex. 408 ("Headed to D.C. to give the GOP some back bone"). Once he arrived at the Capitol on January 6th, he joined others who "stormed across the barricade", Ex. 603, and "storm[ed] the Capitol", Ex. 604. He consistently acknowledged the intent of the mob once inside the Capitol building and continued to push further inside, necessitating the evacuation of Congress and a stop to the official proceeding. *E.g.,* Ex. 607 ("Looks like we're about to push through these cops . . . the crowd is really pissed"), Ex. 608 ("We're looking for people . . . it's on."). His social media statements corroborate that he joined the crowd and knew other rioters intended to obstruct the proceeding.

*E.g.,* Ex. 414 ("After we had overrun that last police barricade, the momentum caused a bad crush at one point, but carried the Vanguard through several smaller doors and down halls as we swarmed Congress yelling the names of various members."), Ex. 506 ("We occupied the Capitol and shut down the Government – we shut down their stolen election shenanigans.  I was there and saw it all.  My buddy Andy Nalley and I were in the first two hundred to rush up the steps and inside after the Vanguard had clashed hard with the police and made them retreat.").  The government has therefore met its burden as to Count I under any of the aforementioned theories.

## II.    ENTERING AND REMAINING IN A RESTRICTED BUILDING OR GROUNDS (18 U.S.C. § 1752(a)(1))

Count II alleges that the defendant violated 18 U.S.C. § 1752(a)(1).  To prove such a violation, the government must show that the defendant: (1) entered or remained in a restricted building or grounds without lawful authority to do so; and (2) knew that the building or grounds were restricted and that he lacked the authority to enter or remain there.  ECF No. 133 at 7.

The government's evidence proves that the defendant knowingly entered and remained on restricted grounds and in the Capitol building without lawful authority.  Captain Mendoza testified that a restricted perimeter was established on January 6th in anticipation of the certification, and that the restricted area and Capitol building were closed to the public.  ECF No. 156 at 18-19. Surveillance and open-source footage, as well as the defendant's own videos, portray him on restricted grounds and inside of the Capitol building—facts that the defendant does not dispute. Ex. 209 at 34:3-6 ("Q: . . . you testified that you were at the Capitol on January 6th.  That's correct; right?  A: Correct."), Ex. 302-308, 311, 600-632.

In its prior brief, the government outlined the many ways the defendant knew the area was restricted.  ECF No. 159 at 6-11.  That evidence includes the conspicuous presence of barriers, signage, and police officers across the restricted area.  ECF No. 156 at 19:17-24, 23:9-19.

5

Moreover, smoke, police officers, and alarms were apparent to the defendant as he progressed up the West side of the Capitol to the Senate Wing Door. *E.g.,* Ex. 411, 506, 602-603, 605. The defendant's own testimony confirms that he saw fencing/barricades, smoke, and police using mace. ECF No. 159 at 8-11. The government has therefore met its burden as to both elements of Count II.

### III.    DISRUPTIVE AND DISORDERLY CONDUCT IN A RESTRICTED BUILDING AND GROUNDS (18 U.S.C. § 1752(a)(2))

The defendant is also charged with violating 18 U.S.C. § 1752(a)(2), which requires the government to show that: (1) the defendant knowingly engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds; (2) did so with the intent to impede or disrupt the orderly conduct of Government business or official functions; and (3) the defendant's conduct in fact impeded or disrupted the orderly conduct of Government business or official functions. ECF No. 133 at 8.

Disorderly conduct occurs when a person (1) acts in a manner that causes another to be in reasonable fear that a person/property in their immediate possession is likely to be harmed or taken; (2) uses words likely to produce violence by others; (3) is unreasonably loud or disruptive; or (4) interferes with another person by jostling or unnecessarily crowding. ECF No. 133 at 8. The defendant's unlawful entry into the Capitol and confrontation with police was undoubtedly disorderly. In exhibit 607, the defendant appeared at the front, or "vanguard", of a group of rioters in the Crypt who are opposite a line of USCP officers. Other rioters were yelling at police, and the defendant said, "looks like we're about to push through these cops." Ex. 607. At the beginning of the video, the defendant was directly behind his co-defendant Nalley, who was directly opposite a USCP officer. *Id.* Rioters then began to push past the defendant toward the police line. *Id.* Captain Mendoza testified that those officers were overrun. ECF No. 156 at 52:15-16. From the

video and Captain Mendoza's testimony, the Court can infer that the defendant, along with the other rioters, put the USCP officers in the Crypt in reasonable fear that they were likely to be harmed and/or that they were unnecessarily crowded by the rioters who continued to push against, and ultimately overran, the police line.

The evidence also supports that the defendant was engaging in disruptive conduct, *i.e.,* conduct that interrupts an event, activity, or the normal course of process. ECF No. 133 at 8. As explained *supra* Part I, the defendant's conduct *did* interrupt the certification, which is an event or activity pursuant to the definition. The defendant's only counterargument is a recitation of his self-serving denial of the offense elements at trial. ECF No. 160 at 9. It is well-established in the record that the defendant's presence on the restricted grounds and in the Capitol building caused the certification to be halted, and the certification could not resume until the defendant and every unauthorized individual inside the Capitol was removed. ECF No. 156 at 76:19-77:3. Further, the defendant knew that his entry into and presence inside of the building would be disruptive, as he crowed about on Parler and Facebook. Ex. 408, 410-412, 414, 506-509.

While it is accurate that the government charged Count III in the conjunctive, ECF No. 83, "it is well established that if a criminal statute disjunctively lists multiple acts which constitute violations, the prosecution may in a single count of an indictment or information charge several or all of such acts in the conjunctive and under such charge make proof of any one or more of the acts, proof of one alone, however, being sufficient to support a conviction." *United States v. Brown*, 504 F.3d 99, 104 (D.C. Cir. 2007). Per the Court's instructions, the government need only prove "disorderly *or* disruptive conduct", as required by the statute. ECF No. 133 at 8 (emphasis added); 18 U.S.C. § 1752(a)(2). Though only proof of either disorderly or disruptive conduct is

required, the government presented ample evidence supporting both. The defendant's assertion to the contrary, ECF No. 160 at 8, is legally incorrect and unsupported by citation to any authority.

The defense also erroneously avers that this Court held that mere presence is insufficient to establish a violation of § 1752(a)(2). ECF No. 160 at 8. Without citation, the defendant cites to the *Griffin* case; likely referring to *United States v. Couy Griffin* (21-cr-92), which was not decided by this Court, did not render a decision regarding whether presence in the Capitol on January 6th was disruptive as a matter of law,[1] and indeed did not involve entry into the Capitol building. *See* March 22, 2022 Transcript, *United States v. Couy Griffin* (21-cr-92) (TNM), at 335-337 (declining to find a violation of 18 U.S.C. § 1752(a)(2) where the defendant only entered the restricted grounds, and not the Capitol building, and "was trying to calm people down, not rile them up.").

## IV.     DISORDERLY CONDUCT IN A CAPITOL BUILDING (40 U.S.C. § 5104(e)(2)(D)

Count IV charges the defendant with Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D), which requires the government to prove that the defendant: (1) engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings; and (2) did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and (3) acted willfully and knowingly. ECF No. 133 at 10.

As laid out *supra* Part III, the evidence proves that the defendant engaged in disorderly and disruptive conduct inside the Capitol building. That same evidence proves the first element of

---

[1] Indeed, other January 6th defendants have been convicted of 18 U.S.C. § 1752(a)(2) based on a finding that "mere" presence in the Capitol building was disorderly and disruptive given the circumstances of January 6th. *E.g.*, *United States v. Jesus Rivera*, 21-cr-060 (CKK); *United States v. Matthew Bledsoe*, 21-cr-204 (BAH); *United States v. Russell Dean Alford*, 21-cr-00263 (TSC); *United States v. John Nassif*, 21-cr-421 (JDB).

Count IV.  The government also established that the defendant intended to stop the certification—which qualifies as a "session of Congress or either House of Congress" for purposes of this count.  ECF No. 133 at 10; 40 U.S.C. § 5104(e)(2)(D).  Moreover, the evidence established many times over that the defendant acted willfully and knowingly on January 6th.  *E.g.,* Ex. 302-308, 311, 600-608.  The defendant both discussed his intent on social media to "storm the Capitol" and narrated his unlawful entry onto restricted grounds and into the Capitol building.  *E.g.,* Ex. 408, 603, 608.  The defendant knew what he was doing was wrong, ECF No. 160 at 6-11, and therefore acted willfully and knowingly pursuant to the statute.

## V.    PARADING, DEMONSTRATING, OR PICKETING IN A CAPITOL BUILDING (40 U.S.C. § 5104(e)(2)(G))

Finally, Count V charges the defendant with Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  To prove this charge, the government must show that the defendant: (1) paraded, demonstrated, or picketed in any of the U.S. Capitol Buildings; and (2) acted willfully and knowingly.  ECF No. 133 at 11.

The evidence proves beyond a reasonable doubt that the defendant paraded, demonstrated, or picketed in the U.S. Capitol on January 6th.  As defined by this Court, "demonstrate" means to "disrupt the business[s] of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying."  *Id.*  The defendant's unlawful entry into the Capitol building undeniably impeded and/or obstructed passageways and impeded the orderly business of Congress, *i.e.,* the certification.  As stated by Captain Mendoza at trial, "[F]or you to remain in that building at any point, even if you came in at 7:00 p.m., at any point, we could not start the – restart the certification of the electoral votes[.]"  ECF No. 156 at 76:20-23.  Further, the defendant's cellphone videos show that he impeded passageways.  For example, he and other rioters (1) filled the hallways of the Capitol that led to congressional offices

9

and were "looking for people", Ex. 608; and (2) crowded into the Crypt and confronted a line of police officers, who were subsequently overrun, Ex. 607.  Surveillance footage also depicts the defendant crowding hallways with other rioters.  *E.g.,* Ex. 304.

The defendant argues that he is absolved because he "did not shout, he did not waive a flag, he did not confront officers, he did not engage in violence or disruptive behavior."  ECF No. 160 at 11.  The defense misstates the law.  The statute does not require yelling, flag waiving, or violence – it requires that the defendant paraded, demonstrated, and picketed.  ECF No. 133 at 11; 40 U.S.C. § 5104(e)(2)(G).  The defendant did that.  The government has proven the offense and the Court should find him guilty on Count V.

**CONCLUSION**

The government has proved every element of each charge against the defendant beyond a reasonable doubt. For the above reasons and any articulated during oral argument, the government asks the Court to return verdicts of guilty on all counts.

                    Respectfully submitted,

                    MATTHEW M. GRAVES
                    UNITED STATES ATTORNEY
                    D.C. Bar Number 481052

By:    *s/ Sarah Martin*
         SARAH MARTIN
         D.C. Bar No. 1612989
         Assistant United States Attorney
         601 D Street, N.W.
         Washington, DC 20001
         Sarah.Martin@usdoj.gov
         (202) 538-0035

         *s/ Christopher Brunwin*
         CHRISTOPHER BRUNWIN
         California State Bar No. 158939
         Trial Attorney, Detailee
         312 N. Spring Street
         Los Angeles, California 90012
         Christopher.Brunwin@usdoj.gov
         (213) 894-4242