IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA       )
                                  )

v.                            )          **Case No. 21-cr-00116**
                                  )

**WILLIAM MCCALL CALHOUN, JR**       )
    *Defendant.*                 )

_____

**DEFENDANT'S REPLY TO THE UNITED STATES' POST-TRIAL BRIEF**
_____

COMES NOW, Defendant, William McCall Calhoun, Jr., by and through counsel,

Jessica N. Sherman-Stoltz, Esq., and respectfully files his reply to the United States' post-trial

brief.

## I.      BACKGROUND

Mr. Calhoun has never contested that he went inside the Capitol Building on January

6, 2021. He never contested it because he didn't do anything illegal while inside the

Capitol. He didn't have anything to hide. Additionally, Mr. Calhoun never said that he

didn't think he was allowed on the Capitol grounds. In fact, he has said just the opposite,

that he headed to the Capitol grounds, along with thousands of other Americans, for what

he believed was a second rally. Mr. Calhoun has never said that he went inside the Capitol

on January 6, 2021, to stop the electoral vote, because he did not go inside the Capitol to

stop the electoral vote, and once inside the Capitol, he may no action to do so.

Mr. Calhoun was transparent and testified honestly on March 2, 2023, and the

Government's own evidence does not but further prove that Mr. Calhoun is not guilty of

the crimes he has been charged with.

## II.      ADMISSIBILITY OF CERTAIN GOVERNMENT EXHIBITS

A. Exhibits 300 and 301

1. Exhibit 300

The Government's exhibit 300 was a 22-minute United States Capitol Police montage

video, much of which isn't relevant to Mr. Calhoun's case. Mr. Calhoun admittedly entered

the Capitol Building at 2:19 PM (Government's Exhibit 302), which is a little after the 7:43

minute mark on exhibit 300. However, at the time that Mr. Calhoun entered, the montage

video is focusing on an area and activities within the Capitol Building that he wasn't close to,

or participating in. The video is showing the camera views of the exterior and interior Senate

Carriage Door. Government's Exhibit 300, 7:50. The next portion of the montage video, at

2:25 PM, shows activity taking place in the Crypt, facing North. There's certainly no evidence

in brief clip that Mr. Calhoun was present in the Crypt at 2:25 PM.

The next portion of video in the montage again takes place at 2:25 PM, on the second

floor, East Foyer area. Government's Exhibit 300, 8:34. This 44 second clip (8:34 – 9:18) shows

individuals attempting to, and successfully opening a door to the outside, and numerous

individuals begin rushing inside the Capitol, and several are confronting at least one law

enforcement officer. We know from the Government's on evidence that Mr. Calhoun wasn't

in that portion of the video, or even in that section of the Capitol Building at 2:25 PM. Next

the video montage moves on to 2:26 PM, the Small House Rotunda on the first floor, facing East. Government's Exhibit 300, 9:29. This less than 30 second clip shows individuals confront and pushing past Capitol Police. And again, we know from the Government's own evidence that Mr. Calhoun was not there and not one of those individuals confronting and pushing police officers.

The video montage moves on to 2:28 PM (Government's Exhibit 300, 10:30), at the House Wing Door on the first floor. This clip again shows individuals coming into contact with, and confronting Capitol Police. However, we know from the Government's Exhibits 303A and 303B, that Mr. Calhoun crossed through that exact area at 2:20 PM, and he did not come into contact with, or confront any Capitol Police. At 2:20 PM on the video montage (11:04), we are seeing footage from the Capitol Visitor Center Connector on the first floor. This is a very chaotic portion of the video montage, primarily focusing on aggressive acts against law enforcement, and law enforcement appears to be trying to run to safety. However, and incredibly important to Mr. Calhoun's case, he was not in that area at that time, and was not a part of the behavior we are seeing depicted in that portion of the video. It is absolutely not relevant to his case.

The video montage resumes at 2:32 PM in the House Offices Hallway, on the first floor. We already know from the Government's Exhibit 305, at 2:34:32 PM, Mr. Calhoun enters the Rotunda. It is very unlilkely that Mr. Calhoun is in the House Office Hallway at 2:32 PM, and then the Rotunda at 2:34 PM. It's safe to assume that since we can clearly see him in the

Rotunda at 2:34, he's not in the House Office Hallway in portion of the video montage. In fact, Government Exhibit 304 shows him at the Memorial Door at 2:31 PM. At 2:33 PM on the video montage (12:42) we are seeing outside of the Capitol Building. It's a video clip of hundreds of Americans confronting and pushing up against Capitol Police. Once again we know that Mr. Calhoun was not outside at that time, therefore it is not relevant to his case.

2:34 PM (13:11) on the second floor, the Speaker of the House Office Suite, is the next clip of video montage. Though the Government admitted exhibits showing Mr. Calhoun in this area (Government Exhibit 632), he was not there at 2:34 PM, and this portion of the video montage does not relate to his case. Next in the video montage we see the House Chamber Corridor (facing West), on the second floor at 2:35 PM, and the East Rotunda Door and East Foyer, on the second floor at 2:36 PM (14:05). We know that Mr. Calhoun was in the Rotunda at 2:34 PM (Government's Exhibit 305), walking around taking videos and pictures.

The video montage next turns to the Upper House Door, on the second floor, at 2:41 PM. Based on the Government's Exhibits 308A and 308B, Mr. Calhoun was in the Rotunda at 2:41 PM, and exiting the Capitol Building at 2:43 PM from a set of doors off the Rotunda. In fact, Mr. Calhoun was either in the Rotunda, or immediately around the Rotunda, searching for a way to exit the Capitol Building from 2:34 PM until 2:43 PM (Government's Exhibits 305 – 308B).

It is Mr. Calhoun's position that none of the 22-minute video montage is relevant to his case. He is not seen in the video, and no portion of the video montage shows what was going

on inside the Capitol Building from 2:19 PM – 2:43 PM specifically where Mr. Calhoun was.

Additionally, the portions of the video prior to the 7:43 minute mark and after the 16:36

minute mark, when Mr. Calhoun wasn't even inside of the Capitol Building, have no bearing

on his case, and offer no additional evidence of Mr. Calhoun's actions and behavior in and

around the Capitol Building. The video is prejudicial towards Mr. Calhoun, as it shows

actions, behavior and conduct that was not displayed by Mr. Calhoun, to include

confrontation and aggression towards the Capitol Police officers. Exhibit 300 is not relevant

to Mr. Calhoun, and is prejudicial to his case, and offers no probative value.

2. Exhibit 301

The Government's Exhibit 301 is a video montage of the congressional record. Once

again, the entirety of this Exhibit is not relevant to Mr. Calhoun's case. The small portion that

might have any relevancy shows that the Senate recessed at 2:13 PM (5:19 minute mark), and

the House stood in recess at 2:18 PM (7:03 minute mark). Both the Senate and the House

were in recess when Mr. Calhoun entered the Capitol Building at 2:19 PM. This corroborates

that Mr. Calhoun did not interfere with a session of Congress. Additionally, we see at the

7:15 minute mark that the House was called back to order at 2:26 PM, convened for 3 more

minutes, before recessing again at 2:29 PM (7:42). So, though Mr. Calhoun was inside of the

Capitol Building during the short three minutes that the House reconvened and then

recessed again, Mr. Calhoun did not interfere with the session of Congress, specifically he

did not interfere with the certification of the electoral vote.

Everything in the congressional record video montage after the 7:55 minute mark is not relevant to Mr. Calhoun's case as he was no longer in the Capitol Building, and had in fact left Washington, DC and was well into his return trip home to GA.

B.  Exhibit 310

Mr. Calhoun objects that the entire 29-minute recorded call between himself and District Attorney Lewis Lamb is not relevant to his case. In portions of the call Mr. Calhoun is discussing some of his social media posts, some of which the Government did not seek to introduce in their case as exhibits. What Mr. Calhoun "admits" to is no different than he admitted to in his post-January 6th social media posts, and his interview with media a couple days after his return home. Mr. Calhoun testified on March 2nd to his narrative style of writing, and his videoed and well documented activity inside of the Capitol show that he truly was writing in a narrative format, and had not really seen or participated in the things he wrote about in his posts.

The recorded call in its entirety is not relative to Mr. Calhoun's case, its prejudicial value outweighs its probative value, and nothing that the Government speaks to as being essential to their case (though Mr. Calhoun objects that any part of the call is essential), hasn't already been addressed by other Government exhibits.

C.  Exhibits 505- 507

Upon the request of Mr. Calhoun, the Government facilitated subpoena duces tecums for his authentic social media records from both his Facebook and Parler accounts. Exhibits

505 – 507 were not authenticated in those SDT returns. Mr. Calhoun objects to the entry of those Exhibits due to the lack of authenticity, and specifically that they are screenshots provided to the FBI by outside sources that were/are at odds with Mr. Calhoun. The fact that those Exhibits could not be authenticated should be reason enough that they are not admitted.

### III.    DISCUSSION

A.  The evidence does leave doubt that Mr. Cahoun knew he was not allowed to be on restricted Capitol grounds or in the Capitol building on January 6th.

Prior to the trial Mr. Calhoun said "**maybe I trespassed**." This was during a March 5, 2021 bail hearing, wherein Mr. Calhoun was incarcerated, and had been incarcerated since a few days after January 6, 2021. All he knew about the aftermath of January 6th, and all the people that were being arrested and what they were being arrested for, he was hearing from inside of jails and correctional facilities. He testified on March 2, 2023 that "it was unclear," and he "wasn't sure whether" he "was trespassing or not." March 2, 2023, Transcript of Proceedings, p. 249:7-10. That statement is very consistent with him saying that "maybe I trespassed."

Also, and as the Court may remember, Mr. Calhoun testified to the treatment he had been receiving for his prostrate cancer prior to his arrest, which of course he was not receiving while being incarcerated. Government's Exhibit 209, p. 29:6 – 31:9. On March 5, 2021, Mr. Calhoun had far bigger things on his mind than understanding every element of

every charge pending against him, and whether his actions on January 6th amounted to

trespass or not. Additionally, Mr. Calhoun testified on March 2, 2023 that "up until very

recently, really, I really didn't understand how it could be anything other than that. I really

still don't understand it. But, I mean, when – I didn't see how it could be anything worse

than a ticket." March 2, 2023, Transcript of Proceedings, p. 252:8-10. He went on to testify

that "I thought even when the FBI arrested me that day -- even then, I thought, well, I'm

probably going to be taken down and given a citation to appear in court and set free. I mean,

that's literally what I thought." *Id*. 251:12-15.

Additionally, in that same March 5, 2021 bail hearing, Mr. Calhoun testified under oath

that the majority of the social media posts/exhibits that the Government was using to keep

him detained, had been posted well before he even decided to go to Washington, DC.

Government's Exhibit 209, p. 26:6-9, 27:15-18, and 28:4-8. All of his testimony on March 5,

2021 is consistent with his testimony to this Court on March 2, 2023, almost 2 years later.

The evidence, including Mr. Calhoun's testimony, leaves no doubt that he proceeded

to the Capitol Building upon invitation and encouragement of the former President Trump,

and he saw or passed by no "Do Not Enter" signs. He did not move any bike racks or

fencing and testified that he walked onto the Capitol Grounds through an open area (not

restricted) and there were already thousands of people on the lawn of the Capitol Building.

*Id.* at 230:13-21, 231:5-8, and 231:19-34. Though Capitol Police Captain Mendoza testified that

barriers, signage and police officers were in place on January 6th (March 1, 2023, Transcript of

Proceedings, p. 19:17-24), she also testified that she never walked the perimeter at any point to confirm if those things were still visible. *Id*. at 79:24-25 – 80:1.

Mr. Calhoun testified that by the time he got to the steps of the Capitol Building, there were no police officers in sight, and he didn't see anyone break the windows beside the door he entered through, nor did he even notice they were broken, or see any glass. *Id.* at 237:10-14, 238:1-2, 238:5-14, and 297:20-21. He's clearly seen walking into the Capitol Building with his phone held above his head and his eyes focused on what he was recording. *Id.* at 238:5-14 and Govt's Exhibit 302 at 8:10.

At no point of time in the Government's evidence against Mr. Calhoun, or even in his own video recordings, do you hear him say that he's going to stop the certification, or that he's going to stop Congress. He refers to "storming the Capitol" and "taking the Capitol" as in Americans are occupying the Capitol Building. They are inside of the Capitol Building.

Throughout the Government's cross-examination of Mr. Calhoun, and in their post-trial brief, they continually try to conflate what Mr. Calhoun said he was observing, with his own actions. A person can observe law enforcement using tear gas or smoke bombs, but not be close enough to be a part of the reason the tear gas and/or smoke bombs are being used. A person can observe individuals confront law enforcement, but not confront law enforcement themselves. As Capitol Police Captain Mendoza testified, not everyone present on the Capitol grounds or in the Capitol Building was participating in civil disorder. Many were just standing around. March 1, 2023, Transcript of Proceedings, p. 72:12-16 and 74:7-14.

B.  Mr. Calhoun knew the electoral certification was occurring on January 6th, but he believed it had been certified prior to his entry into the Capitol Building.

1.  The Government's evidence does not prove beyond a reasonable doubt that Mr. Calhoun went to the Capitol on January 6th to stop the electoral vote.

Mr. Calhoun testified specifically that he went to Washington DC to participate in the Trump rally, and that he went to the Capitol Building because former President Trump told everyone at the rally to go over to the Capitol. March 2, 2023, Transcript of Proceedings, p. 229:5-12 and 211:12-14. Mr. Calhoun "didn't even know there was going to be a rally at the Capitol" until former President Trump told everyone to go over to the Capitol. 229:6-12. He testified that he did not enter the Capitol with the intent to impede the orderly conduct of a session of Congress. 249:15-20 and 298:18-20. He testified that he did not enter the Capitol with the intent of disrupting the orderly conduct of a session of Congress. 299:1-4. He testified that he did not go into the Capitol with the intent to disturb Congress. 299:5-11. And he testified that he did not enter the Capitol with the intent to impede any session of Congress. 299:12-14. Mr. Calhoun further testified that he did not know what was going on inside the Capitol at the time he was walking over, but he was under the impression from things he was hearing around him, from other people, that the vote had already been certified. 235:23-25, 236:2-3 and 236:8-10.

Most importantly, once inside of the Capitol Building, Mr. Calhoun took no steps to interrupt, interfere, disrupt, disturb, or impede Congress. And you don't hear him speak to

doing so on any of the videos the Government admitted as exhibits. He took no actions to interfere with the certification of the electoral vote.

    **C.** The Government's evidence did not establish that Mr. Calhoun used unlawful means, acted with an unlawful purpose, and with consciousness of guilt, because he did not obstruct the electoral vote count.

    As discussed in Mr. Calhoun's post-trial brief, the Government's argument can't establish that Mr. Calhoun corruptly intended to obstruct or impede the certification of the electoral vote by his free speech social media posts that were posted well before former President Trump had even announced the Washington, DC rally, and before Mr. Calhoun had made a conscious decision to attend the rally. As he testified, Mr. Calhoun had no plans of even going to the Capitol Building until former President Trump told the crowd to go there. A person can't intend to corruptly impede something before they even make a conscious decision to go the place they are accused of impeding. Mr. Calhoun testified that had there not been a Trump rally on January 6, 2021, he would not have gone to Washington, DC. 293:14-19. The Trump rally wasn't announced by former President Trump until December 19th, 2020. 201:20-21.

    Neither the House nor the Senate were in session when Mr. Calhoun entered the Capitol. Though the House went back into session for an additional three minutes after Mr. Calhoun entered the Capitol Building, that additional three minutes wasn't impeded upon by any one person, let alone Mr. Calhoun. Occupying the Capitol Building does not shut down

the Government. Prior to the pandemic, people regularly went in and out of the Capitol

Building while Congress was in session.

Mr. Calhoun testified that he went to the Capitol, as in, Washington, DC, because he

believed that the election had been stolen, not that he went to the Capitol Building, as the

Government would have you believe. *See* ECF Document No. 159, p. 16, *See also* March 2,

2023, Transcript of Proceedings, p. 294:23-25.


IV.   CONCLUSION

Mr. Calhoun again respectfully submits to the Court that the Government has not

met its legal burden in his case. The evidence and testimony presented to the Court shows

that Mr. Calhoun is not guilty of the charges he is facing, and we reiterate that the Court

find him not guilty of all five counts.

Dated: March 15, 2023.


Respectfully Submitted,
WILLIAM MCCALL CALHOUN, JR.

*/s/ Jessica N. Sherman-Stoltz*
Jessica N. Sherman-Stoltz, Esq.
Virginia State Bar #90172
Sherman-Stoltz Law Group, PLLC.
P.O. Box 69, Gum Spring, VA 23065
Phone: (540) 451-7451 / Fax: (540) 572-4272
Email: jessica@sslg.law

# CERTIFICATE OF SERVICE

I hereby CERTIFY that on this the 15th day of March 2023, a true and correct copy

of the foregoing *Defendant's Reply to the United States' Post-Trial Brief* was filed with the

Clerk of Court via the CM/ECF system, which will automatically send an email

notification of such filing to all counsel of record.


<u>/s/ *Jessica N. Sherman-Stoltz*</u>

Jessica N. Sherman-Stoltz, Esq.

Virginia State Bar #90172

Sherman-Stoltz Law Group, PLLC.